```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - X
                                    :
UNITED STATES OF AMERICA            :
                                    :
            - v.-                   :      S1 06 Cr. 357 (KMW)
                                    :
                                    :
IRVING STITSKY,                     :
                                    :
                                    :
            Defendant.              :
- - - - - - - - - - - - - - - - - - X
```

**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

**PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
of America.**

**MARC P. BERGER
Assistant United States Attorney
    - Of Counsel -**



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 1, 2010

BY HAND

The Honorable Kimba M. Wood
United States District Judge
Southern District of New York
500 Pearl Street, Room 1610
New York, New York 10007

    Re:    United States v. Irving Stitsky
            S1 06 Cr. 357 (KMW)

Dear Judge Wood:

       The Government respectfully submits this brief letter, and proposed orders of restitution and forfeiture in connection with the sentencing of Irving Stitsky, scheduled for July 6, 2010, at 12:00 p.m.

1.      The Proper Loss Amount Under The Guidelines Is $23,152,235

       In his reply memorandum, Stitsky contends that he should not be held accountable for a loss amount over $20,000,000 principally because Cobalt "owned properties that had been legitimately purchased with investors money." (Stitsky Reply Mem. at 2). He also attempts to distinguish United States v. Byors, 586 F.3d 222 (2d Cir. 2009), from his case, and argues that his facts are more analogous to United States v. Leonard, 529 F.3d 83 (2d Cir. 2008). The Government maintains that the Byors analysis controls. Even where some money may have been used "for precisely the purpose . . . promised investors," those amounts cannot be deducted where investors, as was the case here, "were left with nothing of value when the fraud was uncovered." Byors, 586 F.3d at 226.

       Leonard was a case about "fraud involving misrepresentation of the value of an item or product substitution." 529 F.3d at 92. Unlike Leonard, the securities that Cobalt investors purchased, units of CMFI or CCP, were not merely sold at a misrepresented value; here, they conferred no value to the investors. The Cobalt business, which was a fraud at its core, stands in

stark contrast to the securities purchased in the motion pictures in Leonard, which had some actual value. The few buildings that Cobalt purchased – the Texas properties, and the Trio and Madison in Florida – were all highly leveraged, with multiple mortgages attached. (Tr. 1448; GX 767a).[1] In addition, Cobalt did not have the funds or capabilities to renovate these properties. (Tr. 1468-74). It therefore never created any value for its shareholders. Investor money was often used to purchase options to keep multiple sales contracts open. These options and down-payments were routinely forfeited because Cobalt could not pay to close the deals, while at the same time management was taking excessive profits.

Moreover, here, investors would not have purchased the securities from the outset had they known of Stitsky's involvement. See United States v. Kelley, 305 Fed. Appx. 705, 709 (2d Cir. Jan. 5, 2009) (Summary Order) (where clients purchased securities without having been informed of the defendant's interests in the company, "although the securities at issue may have been subject to market forces, the purchase of the securities and the resulting losses are a direct result of [the defendant's] actions, and all of the losses suffered by the victims are therefore attributable to him"). Here, the purchase and resulting losses were a direct result of the defendants' actions.

The proper loss amount for Guidelines purposes is the amount set forth in the Presentence Report: $23,152,235. The loss amount should not be reduced by any monies seized or secured by the Government, the SEC, or the Receiver, since those monies were neither returned prior to the detection of the fraud, nor did they constitute collateral pledged by the defendant. U.S.S.G. § 2B1.1, Application Note 3(E). The Government notes that it had previously miscalculated the loss amount by improperly offsetting certain credits. (See Government Memorandum, p.9-10).

2.   The Proper Restitution Amount Is $22,075,631

The Government has attached the most recent Receiver's accounting of the Cobalt assets, dated July 31, 2009. (Ex. A). As the Court can see, the Receiver has returned a total of $1,076,604 to the U.S. District Court's Court Registry Investment System (CRIS) account, which holds money that can ultimately be paid to victims. (Ex. A, p.2). In its restitution order, therefore, the Government seeks $22,075,631, which represents the total net loss to the victims ($23,152,235) reduced by the money that has been sent to the Court and available to be paid to victims ($1,076,604). We have included a proposed order along with a list of the names and restitution amounts due to be paid to the victims. (Ex. B).

---

[1] Indeed the Receiver reports indicate that when the Trio and the Madison were ultimately foreclosed, the Receiver did not receive any money (but for a $125,000 payment from the senior mortgage holder of the Madison representing a release in a default judgment) since the multiple mortgages on each property exceeded its sale proceeds.

3. The Proper Forfeiture Amount Is $23,152,235

For forfeiture, the Government seeks an order that the defendant forfeit a total of $23,152,235, which represents the proceeds of the fraud. A proposed order is attached. (Ex. C).

Respectfully submitted,

PREET BHARARA
United States Attorney

By:_____
Marc P. Berger
Assistant United States Attorney
(212) 637-2207

cc: Denis Kelleher, Esq. (via ECF)