UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                        :

IRVING STITSKY,
                        :     15 Civ. 7889 (KMW)

             *Petitioner,*    :     S2 06 Cr. 357 (KMW)

                        :

       - v. -
                        :

UNITED STATES OF AMERICA,
                        :

            *Respondent.*
                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN
OPPOSITION TO PETITIONER IRVING STITSKY'S MOTION UNDER 28 U.S.C.
§ 2255 TO VACATE, SET ASIDE, OR CORRECT HIS SENTENCE**

 

JOON H. KIM
Acting United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Jilan J. Kamal
Assistant United States Attorney
*Of Counsel*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................... 1

I.        BACKGROUND ........................................................................................ 3

     A.     THE GOVERNMENT'S CASE ................................................................. 4
     B.     THE VERDICT AND SENTENCING ......................................................... 8
     C.     DIRECT APPEAL ................................................................................ 11
     D.     THE PETITION .................................................................................. 13

II.      ARGUMENT ....................................................................................... 14

     A.     GROUNDS ONE AND TWO ARE ALREADY BRIEFED AND PENDING BEFORE THE COURT 14
     B.     STITSKY'S *STRICKLAND* CLAIMS ARE MERITLESS ......................... 16

         *1.*     *Applicable Law* ............................................................................. 16

         *2.*     *Stitsky Received Effective Assistance of Counsel During Plea Negotiations* ........... 17

         *3.*     *Stitsky Received Effective Assistance of Counsel at Trial* ....................... 22

     C.     STITSKY IS NOT ENTITLED TO A HEARING ..................................... 32
     D.     STITKSY'S SENTENCE DOES NOT VIOLATE HIS FIFTH AMENDMENT RIGHT TO A TRIAL BY JURY……………………………………………………………………………………..33

III.     CONCLUSION ................................................................................... 356

# TABLE OF AUTHORITIES

*Aeid v. Bennett*, 296 F.3d 58, 63 (2d Cir. 2002) ......................................................... 18

*Bell v. Cone*, 535 U.S. 685 (2002) ............................................................................... 16

*Boria v. Keane*, 99 F.3d 492, 497 (2d Cir. 1996) ................................................... 17, 20

*Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) ......................... 22, 23, 27, 33

*Coppedge v. United States*, 369 U.S. 438 (1962) ........................................................ 33

*Crisci v. United States*, 108 Fed. Appx. 25, 27 (S.D.N.Y. 2004) .......................... 18, 21

*Cromwell v. Keane*, 98 Civ. 0013 (JSR)(AJP), 2002 U.S. Dist. LEXIS 8317, at *84 (S.D.N.Y. May 8, 2002) .................................................................................................................. 31

*Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999) .................................... 17, 20

*Dukes v. McGinnis*, 99 Civ. 9731 (KMW) (AJP), 2000 U.S. Dist. LEXIS 8809, at *31-33 (S.D.N.Y. Apr. 17, 2000)........................................................................... 23, 28, 29, 31

*Flayward v. Brown*, No. 09 Civ. 6495 (LAK) (AJP), 2010 U.S. Dist. LEXIS 65860, at *22 (S.D.N.Y. July 1, 2010)) ........................................................................................... 27

*Gonzalez v. United States*, 722 F.3d 118 (2d Cir. 2013) ................................. 16, 17, 32

*Hill v. Lockhart*, 474 U.S. 52 (1985) ........................................................................... 17

*Kassar v. United States*, 2014 U.S. Dist. LEXIS 49179, at *19-21 (S.D.N.Y. Apr. 8, 2014) 23, 27

*Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) ............................................... 17, 18, 20

*Machibroda v. United States*, 368 U.S. 487 (1962)...................................................... 32

*Mark Shapiro v. United States,* 15 Civ. 7891 ....................................................... 2, 14

*Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012) ................................................... 17, 20

*Morales v. United States*, 635 F.3d 39 (2d Cir. 2011)................................................. 32

*Puglisi v. United States*, 586 F.3d 209 (2d Cir. 2009)................................................. 32

*Purdy v. United States*, 208 F.3d 41, 44-45 (2d Cir. 2000).................................... 17, 20

*Purdy v. Zeldes*, 337 F.3d 253, 259 (2d Cir. 2003) ..................................................... 18

*Quinones v. McClellan*, 1996 U.S. App. LEXIS 4377, *1; *Eisen*, 974 F.2d at 265 .................... 23

*Reese v. United States*, No. 12-CR-0629 (VM), 2016 U.S. Dist. LEXIS 23273, at *6-7 (S.D.N.Y. Feb. 24, 2016) ....................................................................................................... 18

*Speed v. United States*, Nos. 12 Civ. 7777 (PKC), 10 Civ. 3333 (PKC), 2013 WL 416026, *3 (Feb 4, 2013)..................................................................................................................... 20

*Strickland v. Washington*, 466 U.S. 668 (1984) ................................................... 16, 27

*Tankleff v. Senkowski*, 135 F.3d 232 (2d Cir. 1998)................................................... 36

*United States v. Aguirre*, 912 F.2d 555, 562 (2d Cir. 1990)....................................... 28

*United States v. Aiello*, 814 F.2d 109 (2d Cir. 1987)................................................... 32

*United States v. Best*, 219 F.3d 192, 301 (2d Cir. 2000) ................................. 21, 24, 27

*United States v. Eisen*, 974 F.2d 245, 265 (2d Cir. 1992) ..................................... 22, 29

*United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004)........................................ 16

*United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998)................................. 17, 20

*United States v. Johnson*, 135 S.Ct 2551 (2015) ........................................................ 13

*United States v. Kelley*, 551 F.3d 171 (2009) .............................................................. 19

*United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998)...................................... 22

*United States v. Peirce*, No. 06 Cr. 1032, No. 06 Cr. 1032 (RJS), 11 Civ 2526 (RJS), 2011

WL4001071, at *3 (S.D.N.Y Aug. 30, 2011) ...................................................... 14, 15

*United States v. Reiter*, 897 F.2d 639, 645 (2d Cir. 1990)................................................ 29, 31, 32

*United States v. Shapiro,* Nos. 10-2767, 10-4426, 10-4096 (2d Cir. 2013) ................................. 11

*United States v. Smith*, 198 F.3d 377, 386 (2d Cir. 1999) ............................................................ 22

*United States v. Stitsky*, 536 Fed App'x 98, 110-119 (2d Cir. 2013) ............................................ 2

*United States v. United States v. Figueroa* , 2010 WL2710514, at * 2 (W.D.N.Y. July 7, 2010)27

*Venice v. United States*, 98 Civ. 5732 (AGS), (94 Cr. 379 (AGS)), 1999 U.S. Dist. LEXIS 9943, at *3 n.1 (S.D.N.Y. July 1, 1999) ........................................................................................... 28

*Venice v. United States*, 98 Civ. 5732, 1999 WL 459934 at *1 n.1 (S.D.N.Y. July 2, 1999) ...... 23

*Washington v. Superintendent, Otisville Correctional Facility*, No. 6 Civ. 2729, 1997 WL 178616 at *7 (S.D.N.Y. April 11, 1997)) ............................................................................... 23

*Yick Man Mui* v. *United States*, 614 F.3d 50 (2d Cir. 2010) ....................................................... 14

ii

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                            :
IRVING STITSKY,
                                            :      15 Civ. 7889 (KMW)
                    *Petitioner,*           :      06 Cr. 357 (KMW)
                                            :
        - v. -
                                            :
UNITED STATES OF AMERICA,
                                            :
                    *Respondent.*
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN
OPPOSITION TO PETITIONER IRVING STITSKY'S MOTION UNDER 28 U.S.C.
§ 2255 TO VACATE, SET ASIDE, OR CORRECT HIS SENTENCE**

The Government respectfully submits this memorandum of law in opposition to the

petition of Petitioner Irving Stitsky to vacate, set aside, or correct his sentence pursuant to 28

U.S.C. § 2255 filed on October 1, 2015.

## PRELIMINARY STATEMENT

Stitsky's Section 2255 petition (the "Petition") seeks to vacate, set aside, or correct his

sentence by asserting that he received ineffective assistance of counsel during plea negotiations,

trial, and sentencing; that the four enhancements to his sentence pursuant to the advisory U.S.

Sentencing Commission Guidelines Manual (the "Guidelines" or "U.S.S.G.") are

unconstitutionally vague; and that the severity of the sentence imposed violates his right to

proceed to a jury trial under the Fifth Amendment.   With respect to Stitsky's challenges to

counsel's performance at sentencing—chiefly counsel's purported failure to challenge

adequately the facts and methods adopted by the Court to calculate loss—Stitsky joins in the

arguments briefed at length by his co-defendant, Mark Shapiro. Shapiro alleges the same deficiencies with respect to his counsel in his Section 2255 Petition. *See*, *Mark Shapiro* v. *United States,* 15 Civ. 7891 (KMW) (the "Shapiro 2255 Petition"). The parties have fully briefed Shapiro's challenges to the Court's loss calculation and the Government hereby incorporates by reference its memorandum in opposition to those claims, attached as Exhibit A. (Exhibit A, Memorandum of Law of the United States of America in Opposition to Petitioner Mark Alan Shapiro's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct His Sentence ("Gov't Opp. to Shapiro 2255 Petition").)

In brief, Stitsky and Shapiro have repackaged as deficiencies of counsel their challenges to the loss calculation previously raised on direct appeal. The Second Circuit affirmed the loss calculation and all other aspects of the defendants' sentences, including the very challenges to the loss calculation advance here. *United States* v. *Stitsky*, 536 Fed App'x 98, 110-119 (2d Cir. 2013), cert. denied. 135 S.Ct. 188 (2014). Because the Second Circuit has already rejected the petitioners' challenges to the loss calculation advanced here, the mandate rule bars re-litigation of these claims under the guise of trial counsel's purportedly ineffective assistance at trial. Moreover, as a result of the Second Circuit's ruling on appeal, the defendants cannot show prejudice under *Strickland*. The Court should therefore deny relief based on Stitsky's claims arising from the loss calculation at sentencing.

Stitsky's remaining challenges to his counsel's performance during plea negotiations and trial are similarly without merit, as is his claim that the statutory maximum sentence imposed

violates his Fifth Amendment right to a trial by jury.    Accordingly, the Petition should be
denied in all respects without a hearing.

I.    **BACKGROUND**

A thorough account of the background in this case was set forth in the Government's
Opposition to Shapiro's 2255 Petition, and is hereby incorporated by reference.    What follows
is a streamlined account that focuses on those aspects of the prior proceedings most relevant to
Stitsky's Petition.

Indictment S1 06 Cr. 357 (KMW), filed on August 31, 2009, charged Shapiro and co-
defendants Irving Stitsky and William Foster in five counts: (1) conspiracy to commit securities
fraud, wire fraud, and mail fraud, in violation of 18 U.S.C. §§ 371, 1343, and 1341; 15 U.S.C. §§
78j(b) and 78ff; and 17 C.F.R. § 240.10b-5 (Count One); (2) securities fraud, in violation of 15
U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. § 240.10b-5 (Counts Two and Three); (3) wire fraud, in
violation of 18 U.S.C. § 1343 (Count Four); and (4) mail fraud, in violation of 18 U.S.C. § 1341
(Count Five).    Count One charged the defendants with participating in a conspiracy to commit
securities fraud, mail fraud, and wire fraud in connection with a scheme to raise capital for a real
estate investment company owned and managed by Stitsky, and his co-defendant Mark Shapiro
and William Foster.    Specifically, the Indictment charged that from on or around January 2003
until on or about March 27, 2006, the defendants agreed to defraud investors through the sale of
"Units" that the Cobalt Capital Companies ("Cobalt") offered for sale.    Count Two charged that
each defendant committed securities fraud by engaging in a scheme to defraud investors in
connection with the purchase of Units of Cobalt Capital Partners I, LLC, or ACCP-LLC "Units."
Count Three charged that each defendant engaged in a scheme to defraud investors in connection

3

with the purchase of Units of Cobalt Multifamily Investors I, LLC, or ACMFI "Units."   Count Four charged each defendant with committing wire fraud in connection with the scheme to defraud arising from email sent by a Cobalt employee to an unnamed victim regarding the status of her investment.   Count Five charged each defendant with committing mail fraud in connection with the scheme to defraud arising from the use of the mails to send materials to complete an additional investment to a victim.

Trial commenced against all three defendants on November 2, 2009 and ended on November 23, 2009.   After less than two hours of deliberations, the jury convicted Stitsky and his co-defendants on all counts.

## A.  The Government's Case

The Government's evidence at trial consisted of several categories of proof that overwhelmingly demonstrated a concerted effort among the defendants to defraud investors who purchased "units" in Cobalt's private offerings.

First, the evidence at trial showed that Stitsky and Shapiro first engaged in discussions about forming Cobalt between July 2002 and April 2003.   (GX 1911).[1]   By this time, both Stitsky and Shapiro had prior felony convictions for fraud offenses.   Stitsky had twice been convicted of conspiracy to commit securities fraud in 2002, once in the Eastern District of New York and once in the Southern District of New York, in connection with different funds.   (GX 1911).   In fact, Shapiro's and Stitsky's initial discussions about forming Cobalt took place while the two men were serving prison sentences together.[2]   Their nominal business plan for

---

[1]  "GX" refers to a Government exhibit admitted at trial; "Tr." refers to the trial transcript.
[2]  The jury did not learn that Shapiro and Stitsky were in prison during these early discussions.

Cobalt was to buy residential properties, renovate those properties, and then sell or rent them.

(Tr. 148).   Shapiro was the de-facto head of Cobalt and Stitsky headed the fundraising arm of

Cobalt and was responsible for training the callers, making hiring decisions in that area, and

frequently spoke directly with investors.   (Tr. 900, 1138-39, 1225; GX 887). Under Stitsky's

supervision, there were approximately twenty Cobalt salespeople calling potential investors on a

given day to pitch real estate investment opportunities.   (Tr. 153, 1220).   These "callers" used

"scripts" that were reviewed and approved by Stitksy.   (Tr.1220).

During the trial, Cobalt employees testified that Stitsky and his co-defendants ran Cobalt,

making critical business decisions in Cobalt's Massachusetts, New York, and Florida offices.

(GX 1-3).   Stitsky was the Managing Partner of the Great Neck, New York office.   (GX 887).

However, because Shapiro and Stitsky were concerned about the negative light that their

criminal histories could cast on Cobalt, co-defendant William Foster was held out to the

investing public as the owner, president, and CEO of Cobalt.   (Tr. 358-59; GX 1 at 21, GX

1911, GX 2006). Nevertheless, testimony from Cobalt's chief operating officer and a human

resource employee proved that Foster held these titles in name only.   (Tr. 162, 1462).

Second, the Government also presented evidence showing that Stitsky was a partner in

the venture. He asserted his partner status in an email to a human resources employee: "Last I

checked I am a partner in all these companies."   (GX 430-A).   Documents from Foster's

computer demonstrated how the equity of certain Cobalt entities was divided between Stitsky

---

Instead, a stipulation was admitted that neutrally stated that "Between July 2002 and April 2003,
Mark Shapiro and Irving Stitsky had discussions about forming Cobalt."   (GX 1911).

(40%), Shapiro (40%), and Foster (20%). (GX 113, GX 2119).    This information was contrary

to the facts reported to an outside law firm to obtain an opinion letter regarding the scope and

legality of Stitsky's employment at Cobalt (GX 119-A, GX 119-B, GX 2247, GX 2119).

Stitsky instructed the office manager of the Great Neck office not to reveal to the FBI that he was

a Cobalt partner. (Tr. 1230).    Stitsky was also directly involved in soliciting and meeting with

potential new investors (Tr. 737, 900-10, 1139-41; GX 2008, GX 2019).

      At trial, Cobalt employees uniformly described how Shapiro and Stitsky ran Cobalt and

made the critical business decisions in Cobalt's Massachusetts, New York, and Florida offices,

notwithstanding the fact that the defendants disclosed only Foster as a member of Cobalt's

"Senior Management" in the PPMs that were sent to Cobalt investors, in order to avoid

disclosing the prior criminal convictions of Shapiro and Stitsky.    (GX 1-3).    In addition,

Cobalt's in-house accountants, Steven Garth and Kimberly McPherson, described how Shapiro

and Stitsky "borrowed" large sums of investor money from Cobalt entities contrary to the terms

of the Private Placement Memorandum ("PPM"); and how Foster and Shapiro took management

fees far in excess of what was allowed under the terms of the PPMs.    (Tr. 1012-18, 1028-30,

1354-72, 1376-78).

      Third, investors who lost money because of the defendants' scheme testified about the

defendants' misrepresentations.    For example, Stitsky falsely told Patricia Zebrowski that

Cobalt owned the Simone Hotel and that Zebrowski's investment would generate returns over

the course of many years by virtue of the profits generated from the "front-desk" at the Simone.

(Tr. 903-17).    These investors, among many others who testified at trial, provide examples of

steps that Stitsky and his co-defendants took in furtherance of the scheme to defraud.

Fourth, emails and documents seized during the searches of the Cobalt offices provided powerful evidence of the defendants' participation in the scheme.   As noted above, Foster's computer contained documents demonstrating how the equity of certain Cobalt entities was shared between Shapiro (40%), Stitsky (40%), and Foster (20%).   (GX 113, GX 2119).   This information, as Foster well knew, was contrary to the facts that the defendants reported to an outside law firm, Certilman Balin, for the purpose of securing an opinion letter regarding the scope and legality of Stitsky's employment at Cobalt.   (GX 119-A, GX 119-B, GX 2247).   Stitsky's computer contained emails between himself and his co-defendants discussing Stitsky's equity partnership in Cobalt (GX 430-A); an email in which Stitsky directed his son to falsify his professional biography for purposes of Cobalt's marketing materials (GX 2120); a PowerPoint presentation that Stitsky sent to Cobalt's Florida office, which contained a fraudulent chart purporting to show Cobalt's impressive prior track record (GX 431); and an email forwarding a script, filled with material misrepresentations, that Cobalt fund-raisers were to read to potential investors (GX 2125).

Fifth, bank records, Cobalt's own internal accounting records, and summary financial analysis showed that Foster, Shapiro, and Stitsky took a larger percentage of investor funds than the 12% that was permitted by the terms of the PPM. (GX 702-20, 755, 900-02, 903-26, 928-37). Charts showed how, at the direction of Foster and Shapiro, this excess investor money was transferred into personal trusts of the defendants, or, in other cases, how the money was used to pay for certain luxury items on behalf of the defendants. (GX 900-02, 903-26, 928-37).

Finally, additional evidence submitted for the jury's consideration made it clear that the

defendants made and caused to be made false representations in marketing materials and letters

to Cobalt's investors. For example, on Cobalt's "Affiliated Professionals" insert, Cobalt

misrepresented the entities with which it conducted business.    (GX 110, GX 1300-F, GX 2200).

The marketing materials falsely claimed Shapiro received degrees from Harvard University and

the University of Miami. (GX 3, GX 1900). And testimony from individuals who actually owned

and managed the Mercury Hotel and the Simone Hotel clearly established that at no time did

Cobalt have an interest in the Mercury and that Cobalt did not own the Simone Hotel,

notwithstanding the representations that Shapiro, Stitsky, and Foster made to investors either

orally or through Cobalt marketing materials. (Tr. 674-87, 962-67, 1617-27; GX 431, GX 2100).

Finally, Phillip Chapman, Cobalt's outside legal counsel, testified that: (i) the defendants issued

the July 2004 PPM without Chapman's knowledge or approval (Tr. 2065-69); (ii) in approving

the December 2003 PPM, Chapman relied upon false representations made by Foster and

Shapiro about Shapiro's limited role at Cobalt (Tr. 2084-86); and (iii) in approving the

December 2004 PPM, Chapman relied upon false representations made by Foster and Shapiro

about Stitsky's limited role at Cobalt (Tr. 2077-78).

## B. The Verdict and Sentencing

The jury received the case for deliberations on November 23, 2009. (Tr. 2420).    Less

than two hours later, it returned guilty verdicts as to all three defendants on all counts.

(Tr. 2422).

In advance of sentencing, the United States Probation Office (the "Probation Office")

prepared a pre-sentence report for Stitsky (the "Stitsky PSR"). Applying the November 1, 2009

Guidelines Manual, the Probation Office found that the five counts of conviction should be grouped, pursuant to U.S.S.G. § 3D1.2(d), and calculated an offense level of 43 based on: a base offense level of seven, pursuant to U.S.S.G. § 2B1.1(a)(1); a 22-level increase, pursuant to U.S.S.G. § 2B1.1(b)(1)(L), because the loss amount was more than $20,000,000 but less than $50,000,000; a six-level increase, pursuant to U.S.S.G. § 2B1.1(b)(2)(C), because the offense involved more than 250 victims; a two-level level increase, pursuant to U.S.S.G. § 2B1.1(b)(9)(C), because the offense involved sophisticated means; a four-level increase, pursuant to U.S.S.G. § 3B1.1(a), based on Stitsky's leadership role; and a two-level increase, pursuant to U.S.S.G. § 3B1.3, because Stitsky abused a position of private trust. (Stitsky PSR ¶¶ 76-89).

The PSR included a chart prepared by a Court-appointed receiver (the "Receiver") setting forth the loss amount and the number of victims. The chart reflected the net amounts invested by the victims based on the Receiver's accounting, which was generated using Cobalt's accounting software.   The chart listed 352 victims of the fraud, including both individuals and entities associated with individual victim-investors, and calculated a loss amount of $23,152,235. (Stitsky PSR, Attachment at 9.).

With respect to Stitsky's criminal history, the Probation Office identified three prior convictions. First, a 2001 conviction for conspiracy to commit securities and wire fraud and conspiracy to use interstate facilities to commit bribery, with respect to which Stitsky was sentenced to 21 months' imprisonment and three years' supervised release. (Stitsky PSR ¶ 96). The conviction resulted from a "pump and dump" scheme, with ties to organized crime, in which

9

Stitsky recruited stock brokers and promoters to inflate the value of securities by generating investor interest through material misrepresentations. (Stitsky PSR ¶ 97).

Second, another 2001 conviction, for conspiracy to commit securities fraud, with respect to which Stitsky was sentenced to 33 months' imprisonment and three years' supervised release. (Stitsky PSR ¶ 92). This conviction involved a scheme to inflate the stock prices of at least eight companies by distributing an internet newsletter that misstated the companies' performance, and purchasing large blocks of the companies' stock to manipulate the price. (Stitsky PSR ¶ 94).

Third, another 2001 conviction (entered by plea at the same time as the preceding one), for making false statements, with respect to which Stitsky was sentenced to 21 months' imprisonment and three years' supervised release. (Stitsky PSR ¶¶ 92, 96). This conviction arose from false statements Stitsky made to FBI agents regarding separate negotiations relating to the purchase of two stores. (Stitsky PSR ¶ 95).

Applying U.S.S.G. § 4A1.1, the Probation Office calculated nine criminal history points, resulting in Criminal History Category IV, as follows: three points for the first conviction (Stitsky PSR ¶¶ 96-97); three points for the combined second and third convictions (Stitsky PSR ¶¶ 92-93); two points because Stitsky committed the instant offenses while he was on supervised release for the earlier convictions (Stitsky PSR ¶ 99); and one point because Stitsky committed the instant offenses less than two years after being released from prison (Stitsky PSR ¶ 99). With an offense level of 43 and a Criminal History Category of IV, the Probation Office determined that the applicable Guidelines range was life imprisonment. (Stitsky PSR at 32). The Probation Office recommended an 85-year term of imprisonment, which was the statutory maximum based

10

on consecutive sentences for all counts. (Stitsky PSR at 32).

In his sentencing submission, Stitsky objected to the Probation Office's calculation of the loss amount and its application of enhancements based on sophisticated means, aggravating role, and abuse of trust. (Exhibit E, Stitsky Brief on Appeal, at 282-87). Stitsky also argued that the Probation Office's calculation would result in a "[f]undamentally [u]nreasonable and [i]rrational [s]entence." (Exhibit E at 287).

On July 6, 2010, this Court sentenced Stitsky principally to 85 years' imprisonment, the statutory maximum, comprised of five years' imprisonment for Count One and four terms of 20 years' imprisonment for Counts Two through Five, with each term to be served consecutively. The Court imposed the identical sentence on Shapiro three months later.

## C.  Direct Appeal

Stitsky appealed his conviction and sentence. On appeal, he joined in all the arguments raised by Shapiro pursuant to Federal Rule of Appellate Procedure 28(i), in particular, as relevant here, various challenges to his sentence, including the facts and method of loss calculation adopted by the Court. *United States* v. *Stitsky*, 536 Fed App'x 98, 1, n.1 (2d Cir. 2013), cert. denied. 135 S.Ct. 188 (2014) ("Although Stitsky and Shapiro submitted separate briefs on appeal, Stitsky has joined in Shapiro's briefs. See Fed. R. App. P. 28(i). Thus, our resolution of Shapiro's arguments applies to Stitsky as well.").

First, Stitsky and Shapiro claimed that the loss amount was not a "reasonable estimate of the loss" amount as required by the Application Note to U.S.S.G. §2B1.1 because: (a) it included investments made after "necessary disclosures were made"—and, purportedly, the fraudulent scheme had ended—on December 1, 2005; (b) it included legitimate expenses such employee

11

salaries, federal and state taxes; (c) the Court had not authorized an appraisal of the Cobalt properties in March 2006 prior to their decline as a result of market forces and this value allegedly should have been subtracted from the loss calculation.   (Exhibit F, Appellant's Opening Brief, *United States* v. *Shapiro,* Nos. 10-2767, 10-4426, 10-4096 (2d Cir. 2013), at 20, 23-24). Second, the defendants argued that the loss amount was factually erroneous because it included in its calculation (a) investments made after December 1, 2005, the date upon which the defendants purportedly made "necessary disclosures" in the December 2005 PPM (thereby allegedly ending the fraudulent scheme) and (b) investments made pursuant to joint venture agreements and not purchases of the "Units."   *Id.* at 24.   Third, the defendants argued that, contrary to allegedly binding Second Circuit precedent, the loss amount had not been discounted by losses caused by factors other than fraud.   *Id.* at 24-27.   Fourth, the defendants argued that the loss had not been offset by credits for legitimate expenses, and the fair market value of the properties owned by Cobalt (and not their value at the time of sale by the receiver), as allegedly required under the Application Note to U.S.S.G. § 2B1.1.   *Id.* at 29.

The defendants further claimed that the Court failed to consider the sentencing factors at 18 U.S.C. § 3553(c) because their sentences were grossly disproportionate to allegedly similarly situated defendants according to both a general disparity analysis and money-to-ratio analysis. The defendants also challenged the application of all four Guidelines enhancements to their sentences for number of victims, leadership role, use of sophisticated means, and abuse of trust. *Id.*

The Second Circuit denied the defendants' claims in their entirety and affirmed the defendants' sentences in all respects.   *See generally Stitsky*, 536 Fed App'x at 110-119.

### D.  The Petition

On October 1, 2015, Stitsky filed the instant Petition.    First, Stitsky contends that he received ineffective assistance of counsel in violation of the Sixth Amendment during sentencing (Ground One), the plea negotiation and trial (Ground Three). Second, he claims that the sentencing enhancements for the number of victims, leadership role, use of sophisticated means, and abuse of trust, applied under the Guidelines, are unconstitutionally vague under *United States* v. *Johnson*, 135 S.Ct 2551 (2015) (Ground Two).    Third, Stitsky further asserts that the severity of his sentence is an unconstitutional infringement of his Fifth Amendment right to plead not guilty and proceed to trial (Ground Four).

With respect to Ground One, Stitsky joins the factual and legal challenges to the loss calculation (repackaged as counsel's alleged ineffectiveness) advanced in Shapiro's 2255 Petition.    Shapiro joined Stitsky's claim that the sentencing enhancements were unconstitutionally vague (Ground Two) and the Government addressed this challenge in its opposition to Shapiro's 2255 Petition. Because both Grounds One and Two have been fully briefed and are pending before the Court, they are addressed only briefly below.

With respect to Ground Three, Stitsky contends that he received ineffective assistance of counsel in violation of the Sixth Amendment because his counsel: failed to communicate the outcome of plea negotiations with Stitsky (Pet. Mot. at 8-9); failed to convey to the jury before closing that Mr. Stitsky was not a "partner" in Cobalt, received less in proceeds, and played a minor role compared to his co-defendants (Pet. Mot. at 10-11); did not call any defense witnesses

13

despite the defendant providing a list of available witnesses to counsel (Pet. Mot. at 10-11); did

not seriously discuss with Stitsky whether he should testify, given that the jury knew from the

indictment and Government's opening statement that Stitsky had two criminal convictions (Pet.

Mot. at 10-11); presented no defense during trial (Pet. Mot. at 10-11); and, failed to prepare for

the cross-examination of government witnesses (Pet. Mot. at 10-11).

With respect to Ground Four, the defendant claims that the 85-year sentence imposed, in

contrast to the 7-9 year plea offer he was initially offered by the Government, operates as a

constitutionally impermissible "deterrant" to his right to a trial by jury under the Fifth

Amendment.

## II.   **ARGUMENT**

### A. Grounds One and Two Are Already Briefed and Pending Before the Court

With respect to Ground One, Stitsky joins the factual and legal challenges to the loss

calculation—repackaged as counsel's alleged ineffectiveness—advanced by his co-defendant

Shapiro, alleging that "[t]hese grounds apply equally to Mr. Stitsky's counsel . . . ." (Def. Pet.,

Attachment A at 1, adopting and incorporating by reference Shapiro's First, Second, Third, and

Fourth grounds for relief; *see generally*, *Mark Alan Shapiro* v. *United States*, 15 Civ. 7891

(KMW) (challenging the facts and methods adopted to determine the loss amount in claims one

through four).

Briefly, the mandate rule bars consideration of these claims concerning trial counsel's

purported failures to challenge the facts and methods used to calculate the loss amount because

they were raised on direct appeal and rejected by the Second Circuit.   *Yick Man Mui* v. *United*

*States*, 614 F.3d 50 (2d Cir. 2010) (citing *United States* v. *Pitcher*, 559 F.3d 120, 124 (2d Cir.

14

2009) (rejecting petitioner's Section 2255 ineffective assistance claims because they were "premised on the same facts and rest on the same legal ground" as the argument made on direct appeal); *United States* v. *Peirce*, No. 06 Cr. 1032 (RJS), 11 Civ. 2526 (RJS), 2011 WL4001071, at *3 (S.D.N.Y Aug. 30, 2011) ("[A]lthough Peirce did not bring an ineffective assistance claim on direct appeal, the merits of her ineffective assistance claims with respect to the foregoing evidentiary issues were effectively adjudicated by the Second Circuit. Simply repackaging these rejected lines of reasoning as ineffective assistance claims cannot circumvent the mandate rule or entitle her to habeas relief.").

Relatedly, because the defendants raised these issues on direct appeal and the Second Circuit affirmed this Court's loss calculation at sentencing in all respects, Stitsky and Shapiro cannot prove prejudice under the *Strickland* standard governing claims of ineffective assistance of counsel.   *United States* v. *Peirce*, No. 06 Cr. 1032 (RJS), 11 Civ. 2526 (RJS), 2011 WL4001071, at *3, n. 2 ("Put another way, even if the mandate rule did not apply here, the substantive rulings of the Second Circuit would prevent any showing of prejudice.").

Moreover, and contrary to the defendants' assertions, the record reveals that trial counsel for each defendant *did*, in fact, advance many of the challenges to the loss calculation in connection with sentencing and they were unavailing.   (*See* Exhibit A at 19 to 23; Exhibit B, Sentencing Submission of Irving Stitsky; Exhibit C, Reply Sentencing Submission of Irving Stitsky; Exhibit D, Transcript of July 6, 2010, Sentencing Proceeding of Irving Stitksy; Exhibit E, Appellant's Brief on Appeal).

With respect to Ground Two, Shapiro joined in Stitsky's vagueness challenge to the four

sentencing enhancements applied to both Shapiro and to Stitsky. The Government addressed this claim in its Memorandum in Opposition to Shapiro's 2255 Petition.   (*See* Exhibit A at 25 to 28.)

Because Grounds One and Two have been fully briefed, are pending before the Court, and Stitsky's Petition raises no additional arguments to support these claims, the Government relies on its Memorandum in Opposition to Shapiro's 2255 Petition, incorporated by reference and attached as Attachment A, and does not address these claims further.

### B.  Stitsky's *Strickland* Claims Are Meritless

####    1.    Applicable Law

"A defendant in criminal proceedings has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages in the proceedings, which include entry of a plea of guilty."   *Gonzalez* v. *United States*, 722 F.3d 118, 130 (2d Cir. 2013).   To establish a claim of ineffective assistance of counsel, a petitioner must show that (1) the performance of his attorneys fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) that the petitioner suffered prejudice as a result of that representation. *Strickland* v. *Washington*, 466 U.S. 668, 687-88, 693-94 (1984).   Only where both prongs of the *Strickland* test are satisfied may a court conclude that "counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment."   *Id.* at 687.   The Supreme Court has instructed that "if it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

A petitioner bears a "heavy burden" under the *Strickland* test.   *United States* v. *Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004).   As to the first prong, courts must apply the "strong

16

presumption" that counsel's representation was within the "wide range of reasonable professional assistance."   *Strickland*, 466 U.S. at 689; *see Bell* v. *Cone*, 535 U.S. 685, 698 (2002).   "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."   *Strickland*, 466 U.S. at 690.   To demonstrate prejudice under the second prong, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Id*. at 694.

> 2.   Stitsky Received Effective Assistance of Counsel During Plea Negotiations

The Supreme Court has held that a defendant's right to effective assistance of counsel applies at the plea bargaining stage. *See Lafler* v. *Cooper*, 132 S. Ct. 1376, 1384 (2012); *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012). "As a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye,* 132 S. Ct. at 1408; *see also Boria* v. *Keane*, 99 F.3d 492, 497 (2d Cir. 1996) (counsel has a duty to provide professional advice to a client on whether or not to accept a plea deal); *Cullen* v. *United States*, 194 F.3d 401, 404 (2d Cir. 1999) (same). Counsel should also communicate to the defendant the strengths and weakness of the case against him and the potential sentences he will likely face at trial. *See, e.g., Purdy* v. *United States*, 208 F.3d 41, 44-45 (2d Cir. 2000); *Cullen* 194 F.3d at 404; *United States* v. *Gordon*, 156 F.3d 376, 380 (2d Cir. 1998); *Boira*, 99 F.3d at 496-97.

With respect to the second *Strickland* prong, the defendant must prove prejudice in the context of plea bargaining by showing that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the

defendant would have accepted the plea and the prosecution would not have withdrawn it in light

of intervening circumstances), that the court would have accepted its terms, and that the

conviction or sentence, or both, under the offer's terms would have been less severe than under

the judgment and sentence that in fact were imposed." *Lafler*, 132 S. Ct. at 1385; *accord Aeid* v.

*Bennett*, 296 F.3d 58, 63 (2d Cir. 2002) (the defendant must demonstrate that a reasonable

probability exists that but-for his counsel's errors, he would have accepted the government's

offer). Generally, a defendant's post-trial, self-serving testimony is unlikely to be credible.   *See*

*Purdy* v. *Zeldes*, 337 F.3d 253, 259 (2d Cir. 2003). Thus, the Second Circuit requires "some

objective evidence other than defendant's self-serving assertions" to establish that the defendant

was prejudiced. *Reese* v. *United States*, No. 12-CR-0629 (VM), 2016 U.S. Dist. LEXIS 23273, at

*6-7 (S.D.N.Y. Feb. 24, 2016) (citing *Pham* v. *United States*, 317 F.3d 178, 182 (2d Cir. 2003);

*Crisci* v. *United States*, 108 Fed. Appx. 25, 27 (S.D.N.Y. 2004)).

Here, Stitsky's claims that his counsel did not communicate with him about the results of

Stitksy's counteroffer of five-to-seven years and never discussed plea negotiations with him in

the year that elapsed between their October 2008 conversations and his November 2009 trial, is

self-serving, unsupported, and contradicted by defense counsel's detailed affidavit.   Stitsky can

establish neither deficient performance by counsel nor actual prejudice on this record.

As an initial matter, the October 2008 email that Stitsky attached to his petition provides

no support for his claim that counsel's performance was deficient. (*See* Pet. Mot. Attachment to

Question 12 ("Pet. Mot. Attachment"). If anything, it attests to the fact that in October 2008,

Stitsky and defense counsel were in communication about matters relating to plea negotiation. It

does not follow from this that there were no further communications from counsel regarding plea

negotiations. On the contrary, Stitsky avers that, after he received the email, the plea offer was

subsequently reduced to "7-9 years" and that he instructed defense counsel to advocate for an

offer with a still-lower range. (Pet. Mot. Attachment at 8).    Stitsky does not claim that he had no

further contact with defense counsel in the year before trial, or that counsel unresponsive or

neglectful to his case.    He merely asserts, without support, that counsel failed to inform him of

the outcome of plea negotiations and they never discussed the issue again, notwithstanding that

the defendant had an entire year before trial to inquire further about the outstanding plea offer of

seven-to-nine years that had already been communicated to him (Pet. Mot., Attachment at 8).

Stitsky's silence on this point erodes his credibility.

Stitsky's credibility on this point is further undermined by trial counsel's affidavit, in

which he affirms that he engaged in extensive plea negotiations with the Government and that he

communicated all offers to the defendant, who rejected them. (Kelleher Aff. ¶¶ 6-10).

Specifically, defense counsel informed the defendant of the Government's offer of seven-to-nine

years, and the Government's subsequent rejection of defendant's requested five-to-seven year

deal. (Kelleher Aff. at ¶¶ 7-8). Defense counsel also advised the defendant that he would likely

be convicted at trial, that "he would get more time if convicted after trial," and that there was a

possibility that he would receive a long sentence upon conviction. (Kelleher Aff. at ¶¶ 8-10).    In

particular, Kelleher discussed with the defendant the case of *United States v. Kelley*, 551 F.3d

171 (2009), describing the similar fact pattern, conviction, and sentence received in that case.

(Kelleher Aff. at ¶ 10). Despite his counsel's repeated and clear advice to the contrary, Stitsky

19

chose to reject the plea offer and proceed to trial. (Kelleher Aff. at ¶¶ 7-10).

Further, even if defense counsel did fail to communicate the Government's rejection of the defendant's five-to-seven year counteroffer to the defendant, this fails to rise to the level of deficient performance. According to Kelleher's affidavit, he presented the Government with the terms of the defendant's counteroffer, but the Government refused.    (Kelleher Aff. at ¶ 7). Stitsky points to no evidence that such an offer was ever forthcoming and it is uncontested that defense counsel did inform Stitsky of the seven-to-nine year offer (Pet.'s Mot. at 8; Hogan Aff. ¶ 5; Kelleher Aff. ¶ 7). Stitsky points to nothing that undermines defense counsel's detailed affirmation concerning his communication of the Government's last and best plea offer, the evidence against Stitsky, his risk of conviction, and his sentencing exposure after trial, (Kelleher Aff. at ¶¶ 6-10), in accordance with the responsibilities of counsel under Second Circuit case law.   *See, e.g., Purdy*, 208 F.3d at 44-45; *Cullen* 194 F.3d at 404; *Gordon*, 156 F.3d at 380; *Boira*, 99 F.3d at 496-97. The failure to communicate a non-existent plea offer cannot constitute deficient performance.

Even assuming that defense counsel failed to communicate the Government's rejection of Stitksy's counteroffer, the defendant has not met his burden of demonstrating that, but-for the ineffective assistance of counsel, there is a reasonable probability that he would have pleaded guilty.   *See Lafler*, 132 S. Ct. at 1385. Stitsky puts forward no evidence—and the record otherwise evinces none—that the Government was inclined to extend to Stitksy the five-to-seven year plea he sought. Thus, the allegedly omitted communication had no prejudicial effect. *Speed* v. *United States*, Nos. 12 Civ. 7777 (PKC), 10 Civ. 3333 (PKC), 2013 WL 416026, *3 (Feb 4,

2013)("counsel had no duty to inform petitioner of any plea offer when no such offer existed")

citing *Missouri* v. *Frye,* 132 S.Ct. 1399 1408-10 (2012).

The defendant's further claim that, had he known that seven-to-nine months was the "best

offer for him," he "*might* have pleaded guilty" is similarly insufficient. (Pet. Mot. at 9, emphasis

added). Although the disparity between the plea offer and the sentence he ultimately received

provides some objective support for Stitsky's claim now that he "might" have pleaded guilty,

other facts in the record belie this conclusion.    Defense counsel avers that the defendant refused

to accept a plea deal on multiple occasions, and specifically rejected the seven-to-nine year plea

deal, claiming it was "basically a 'life sentence'" and that "he [Stitsky] would plead guilty if he

had done something wrong, but he did not do anything wrong." (Kelleher Aff. ¶¶ 7-8, 10).   The

letter that the defendant provided to his lawyer for sentencing purposes stating, "my family said

how could you take a plea, so I counted on the justice system to prove my innosence [sic]..." and

"all I wanted to do was prove my innocence," further demonstrates the defendant's resolve in

proceeding to trial. (Kelleher Aff. ¶¶ 11).    This is consistent with *Crisci*, in which the Court

held that, notwithstanding the disparity between the defendant's expected sentence upon a plea

and expected sentence post-trial, the defendant could not establish prejudice because counsel's

affidavit clearly established that the defendant was unwilling to contemplate a guilty plea and

wanted to assert his innocence. *Crisci*, 108 F. App'x at 27-28.

As the foregoing makes clear, Stitsky cannot establish that counsel's performance was

deficient nor that he was prejudice by any purported deficiency, and his claim of relief on this

ground should be denied.

21

3.      Stitsky Received Effective Assistance of Counsel at Trial

It is well established that "actions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance. *Best*, 219 F.3d at 192 (quoting *Strickland*, 466 U.S. at 689); *see also United States v. Eisen*, 974 F.2d 245, 265 (2d Cir. 1992) (reasonably made decisions that may fall within the realm of trial strategy cannot constitute ineffective assistance). Strategic decisions such as "election to forgo an unsupported argument," and choices not to call certain witnesses – including those that may offer exculpatory evidence – fall into this category and are generally not viewed as "a lapse in professional representation." *Best*, 219 F.3d at 201-02 (citing *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997), cert. denied, 522 U.S. 846 (1997)); *see also Eisen,* 974 F.2d at 265 (quoting *United States v. Nersesian,* 824 F.2d 1294, 1321, *cert. denied*, 484 U.S. 957 (1987)) ("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial."); *United States v. Smith*, 198 F.3d 377, 386 (2d Cir. 1999) (same); *United States* v. *Luciano*, 158 F.3d 655, 660 (2d Cir. 1998)   ("The decision not to call a particular witness is typically a question of trial strategy that appellate courts are ill-suited to second-guess."). "Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are similarly strategic in nature." *Eisen*, 974 F.2d at 265 (quoting *Nersesian,* 824 F.2d at 1321).

Of course, certain decisions ultimately belong to the defendant, regardless of his counsel's preferred trial strategy. One such decision is the right to testify. "The burden of ensuring that the defendant is informed . . . of the right to testify . . . is a component of the

effective assistance of counsel." *Chang*, 250 F.3d at 84 (quoting *Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1997)). To satisfy the first prong of *Strickland* and prove deficient performance of counsel in regard to preventing a defendant from testifying, a defendant must "[be] able to show that counsel actually told [him] that he had no right to testify." *Chang*, 250 F.3d at 84. Such a showing requires overcoming a presumption that counsel was effective and provided proper advice on the right to testify. *Kassar v. United States*, 2014 U.S. Dist. LEXIS 49179, at *19-21 (S.D.N.Y. Apr. 8, 2014) (citing *United States v. Montilla*, 85 Fed. App'x 227, 230 (2d Cir. 2003); *Chang*, 250 F.3d at 84). Therefore, "[a] petitioner's unsupported assertions that defense counsel failed to inform him of his right to testify are insufficient." *Kassar*, 2014 U.S. Dist. LEXIS 49179, at *19-21 (quoting *Flayward v. Brown*, No. 09 Civ. 6495 (LAK) (AJP), 2010 U.S. Dist. LEXIS 65860, at *22 (S.D.N.Y. July 1, 2010)); *accord Chang*, 250 F.3d at 84 (defendant's "own blanket statements" that his attorney prevented him from testifying were insufficient to establish a deficiency in representation). It is, however, appropriate for counsel to provide recommendations or advice to a defendant on whether or not to testify as a product of sound trial strategy. *See, e.g., Dukes v. McGinnis*, 99 Civ. 9731 (KMW) (AJP), 2000 U.S. Dist. LEXIS 8809, at *31-33 (S.D.N.Y. Apr. 17, 2000) (citing *Luciano*, 158 F.3d at 660; *United States v. Green*, 96-1185, 1996 U.S. App. LEXIS 30027, *10 (2d Cir. Nov. 14, 1996); *Quinones v. McClellan*, 1996 U.S. App. LEXIS 4377, *1; *Eisen*, 974 F.2d at 265; *Venice v. United States*, 98 Civ. 5732, 1999 WL 459934 at *1 n.1 (S.D.N.Y. July 2, 1999); *Washington v. Superintendent, Otisville Correctional Facility*, No. 6 Civ. 2729, 1997 WL 178616 at *7 (S.D.N.Y. April 11, 1997)).

23

a. *Defense Counsel's Representations Regarding Stitsky's Role Were the Product Trial Strategy*

Stitsky alleges that defense counsel failed to emphasize to the jury that the defendant was not a partner in the venture, held a relatively minor position, and received far less proceeds and that this constitutes deficient performance. (Pet. Mot. at 10-11).    Stitsky is wrong.    In light of the evidence at trial, defense counsel's decision to forgo arguing that the defendant was not a partner was a reasonable strategic decision, comporting with *Best*, 219 F.3d at 201-02, and was therefore not deficient.    The trial record contained ample evidence that the defendant was a partner in the venture.    (Kelleher Aff. ¶¶ 13-14).    A witness testified that the defendant had told her he was a partner at Cobalt. (Tr. 158; Kelleher Aff. ¶¶ 13-14). This testimony was also corroborated by Gov. Ex. 430-A, an email in which the defendant stated ".I am a partner in these companies as well . . . . " (Kelleher Aff. ¶¶ 13-14; GX 430-A).    Two other witnesses testified at trial that the defendant represented to Cobalt employees that he was a partner. (Tr. 1215, 1463; Kelleher Aff. ¶¶ 13-14). Defense counsel thus made a reasonable, strategic trial decision, believing that suggesting such "witnesses were lying about Stitsky's statements to them would have been absurd." (Kelleher Aff. ¶ 14). In *Best*, the Court held on a similar record that defense counsel's decision not to argue a point because of a lack of proof and the presence of compelling evidence in the other direction was a reasonable strategic decision. *See* 219 F.3d at 201-02.

Further, the record belies the defendant's self-serving claim that his attorney failed to emphasize his purportedly minor role in the venture and receipt of fewer proceeds. During the trial, defense counsel tried as much as possible to distance the defendant from his co-defendants, blaming all the fraud on Shapiro, and introducing testimony that the defendant was manipulated

24

by his co-defendant. (Kelleher Aff. ¶ 14). Defense counsel diligently represented his client by obtaining a stipulation from the government that, if called to testify, one witness would testify that "Stitsky was a puppet for Shapiro and . . . Shapiro sent emails that told employees not to take any direction from Stitsky." (Kelleher Aff. ¶ 14; Tr. 2108-09). Defense counsel also pointed out to the jury disparities in the responsibilities and culpabilities of the co-defendants, such as by arguing that Stitsky lacked intent because he was tricked, had no access to the venture's financials, and lacked the signatory authority necessary to write checks. (Kelleher Aff. ¶ 15). Defense counsel informed the jury of the inequitable division of proceeds, stating in his summation: "Look at the numbers . . . just a small portion of it goes to Mr. Stitsky." (Tr. 2254; Kelleher Aff. ¶ 15). Defense counsel also stressed that the actual division of money did not match the 40-40-20 split that the Government alleged. (Kelleher Aff. ¶ 15).

   b.   *Defense Counsel Provided Stitsky with Appropriate Advocacy at Trial*

The defendant further asserts that defense counsel failed to present a defense during trial, and specifically failed to argue Mr. Stitsky's lesser role in the scheme as a defense. As set froth above, the defense employed by counsel is a strategic decision, and defense counsel did present a defense taking into account the evidence at trial and highlighting the defendant's lesser culpability. Defense counsel's strategy was to "affix blame on Shapiro...and [argue] that Stitsky lacked intent," which he sought to convince the jury of "throughout the cross-examination of witnesses and [the] summation." (Kelleher Aff. ¶ 15). He specifically emphasized that Stitsky made less money from the fraud than his co-defendants, and his lack of signatory authority to write checks. (Kelleher Aff. ¶ 15).   Kelleher's success in obtaining a stipulation from the

Government that, if called to testify, the witness would testify that Stitsky was a puppet for Shapiro" and "that employees were instructed by Shapiro not to follow Stitsky's directions." (Kelleher Aff. ¶ 14; Def. Ex. ISM; Trans. 2108-09). Based on this record, the defendant's assertion that defense counsel failed to mount a defense rings hollow and fails to meet the high bar required to establish deficient performance under *Strickland*.

### c. *Defense Counsel's Decision Not to Call Defense Witnesses Was Reasonable Trial Strategy*

Defense counsel's decision not to call defense witnesses was also a reasonable strategic decision.   Defense counsel interviewed "numerous witnesses over the years to potentially call" and ultimately "made the strategic determination that . . . these witnesses could do more harm than help." (Kelleher Aff. ¶ 16).   Defense counsel concluded that not one of the potential witnesses offered by the defendant "would have made a difference in the outcome" and Stitsky points to no particular benefit any particular witness would have offered.   (Kelleher Aff. ¶ 16). In his affidavit, Kelleher provides specific, well-reasoned reasons for not choosing to put potential witnesses on the stand.   He notes that the defendant "had hired some sales people with checkered pasts" and Kelleher was "concerned that might come out through . . . witnesses called from the Cobalt sales office." (Kelleher Aff. ¶ 16).   For example, one potential witness was a co-defendant in a former securities fraud indictment against Stitsky, in which they both pleaded guilty. (Kelleher Aff. ¶ 16).   Another potential witness "indicated that he never did or never would have [told potential investors about Stitsky's prior securities fraud convictions], because [the potential witness] knew that any potential investor would be scared off due to Stitsky's criminal past." (Kelleher Aff. ¶ 16).   Kelleher's strategic decision not to call this witness

reasonably contemplated that such testimony "would only enhance the government's theory that failure to disclose Stitsky's two securities fraud convictions was a material omission." (Kelleher Aff. ¶ 16).   Kelleher's affidavit demonstrates that his intent was to minimize opportunities for the Government to attack the defendant's conduct, which "is surely a tactical decision that cannot be second-guessed," *Best*, 219 F.3d at 202.   Finally, defense counsel did decide to call the lawyer who helped start Cobalt, agreeing that Shapiro's counsel would call him on the direct. (Kelleher Aff. ¶ 17).   This allowed Kelleher to cross-examine the witness, to try to establish that he approved of Stitsky working at Cobalt despite Stitsky's criminal past. (Kelleher Aff. ¶ 17).

Moreover, nowhere does Stitsky allege how these witnesses would have elicited helpful information to the defense.   Without specifying how these uncalled witnesses could have beneficial to him, it is insufficient for Stitsky to point to the mere fact that they were not called as the basis for deficient performance.   *United States* v. *United States* v. *Figueroa*, 2010 WL2710514, at * 2 (W.D.N.Y. July 7, 2010) (claim dismissed because petitioner failed to establish how any uninvestigated matters or witnesses "would have been helpful and beneficial to him").

### d.   *Defense Counsel Did Not Infringe on Stitsky's Right to Testify*

The defendant claim in conclusory fashion that defense counsel did not "seriously discuss" with him whether Stitsky should testify, and instead advised him not to do so.   (Pet. Mot. Attachment at 10). However, nowhere in his petition does the defendant specifically allege that his counsel prevented him from testifying or that he was unaware that he had a right to

testify.   Such a self-serving, unsubstantiated statement is insufficient to overcome the

presumption of effective assistance of counsel under the first prong of *Strickland*. *See, e.g.,*

*Chang*, 250 F.3d at 84; *Kassar*, 2014 U.S. Dist. LEXIS 49179 at \*19-21; *Flayward*, No. 09 Civ.

6495 (LAK) (AJP), 2010 U.S. Dist. LEXIS 65860 at \*22.   Moreover, defense counsel avers that

he did explain and discuss with the defendant that he had a right to testify, and that they had

mutually agreed he should not testify, and that the decision was grounded in trial strategy.

"Stitsky and I discussed the fact that he had the absolute right to testify on his own behalf even if

it was against my advice."   (Kelleher Aff. ¶ 18).   Stitsky never asked defense counsel to be put

on the stand, and counsel "completely agreed . . . that he should not testify." (Kelleher Aff. ¶ 18-

19).   Defense counsel advised Stitsky that he "was completely incredible on a number of topics

and would have made a terrible witness."   (Kelleher Aff. ¶ 18).   Counsel discussed with

Stitsky the risk that allowing Stitsky to testify would have "subjected [him] to withering cross-

examination," and would have opened the door to more prejudicial evidence, such as prior

allegations against the defendant in a federal securities fraud case, a prior conviction for false

statements, and evidence that Stitsky and Shapiro met and began to develop the venture while in

federal prison.   (Kelleher Aff. ¶ 18).   A recommendation not to testify based on such cogent

concerns falls within "the range of reasonable professional conduct" and cannot form a basis for

ineffective assistance of counsel claims.   *See Venice v. United States*, 98 Civ. 5732 (AGS), (94

Cr. 379 (AGS)), 1999 U.S. Dist. LEXIS 9943, at \*3 n.1 (S.D.N.Y. July 1, 1999); *accord United*

*States v. Aguirre*, 912 F.2d 555, 562 (2d Cir. 1990); *Dukes*, 99 Civ. 9731 (KMW) (AJP), 2000

U.S. Dist. LEXIS 8809, at \*33-34.

e.  *Defense Counsel Was Properly Prepared to Cross Examine Government Witnesses*

The defendant points to no specific evidence or instances to support his claim that counsel was unprepared for cross-examination, despite having access to all trial transcripts and exhibits. (Kelleher Aff. ¶ 20).   On the contrary, the record reveals that defense counsel was adequately prepared for cross-examination of government witnesses and counsel's assessment of how and to what extent to cross-examine the witnesses was grounded in trial strategy, *see, e.g., Eisen*, 974 F.2d at 265, and reasonably executed.   Kelleher testified that he "thoroughly prepared for each [cross-examination] and read the 3500 material extensively in preparation for their cross." (Kelleher Aff. ¶ 20).   He entered each cross-examination with a strategy to "affix blame on Shapiro" and demonstrate his client's lack of requisite intent for the conspiracy charge. (Kelleher Aff. ¶ 14).   Without more, the defendant's conclusory assertions fail to overcome the presumption that counsel's performance was effective.

Even assuming Stitsky could establish deficient performance, which he cannot, nothing in the record suggests that, in light of the overwhelming evidence against him, the outcome of his trial would have been different.   Nor does Stitsky allege any specific actions, testimony, or evidence that his counsel could have used to provide more effective representation.   When evidence of the defendant's guilt is so overwhelming such that errors of counsel would have had no effect on a guilty verdict, a claim of ineffective assistance fails. *See, e.g., United States* v. *Reiter*, 897 F.2d 639, 645 (2d Cir. 1990). The Second Circuit has specifically applied this rule in cases of deficient advice regarding a defendant's right to testify, *Dukes*, 99 Civ. 9731 (KMW) (AJP), 2000 U.S. Dist. LEXIS 8809, at *40 (finding that no prejudice resulted from an attorney's

advice that a defendant not take the stand, given it would not have provided an affirmative defense and would lead to admission of illegal conduct), and deficient cross-examinations, *Reiter*, 897 F.2d at 645 (finding no prejudice resulted from defense counsel's deficient cross-examination given overwhelming evidence of defendant's guilt).

The defendant also provides no evidence that the outcome of the trial would differ had defense counsel conveyed to the jury more clearly that Stitsky was not a partner at Cobalt, played a lesser role in the venture, and received less profits.   In fact, the record suggests that stressing these points more aggressively may actually have further disadvantaged the defendant, by opening the door to more damaging evidence. There was ample testimony in the record, including the statements of multiple witnesses and direct emails from the defendant, corroborating that the defendant was a partner in the venture.   (Kelleher Aff. ¶ 13-14). Opposing such evidence would have highlighted contradictory statements made by Stitsky about his specific role in the company, as well as required arguing that multiple witnesses were lying. (Kelleher Aff. ¶ 13-14).   Stitsky's claim that a more strenuous denial of Stitsky's role in the company is simply not credible.   Further, Stitsky points to nothing in the record or outside the record to suggest that exculpatory evidence existed that defense counsel could have marshaled to assert such a defense more aggressively and obtain a different outcome.

On the contrary, the evidence in the record suggests that, had Defense counsel decided to call defense witnesses the outcome not only would be unchanged, but it likely would "do more harm than help." (Kelleher Aff. ¶ 13-14). Calling witnesses from the Cobalt sales office ran the risk of exposing the jury to evidence of the defendant's hiring of "sales people with checkered

pasts" and suggesting that the decision not to disclose Stitsky's prior securities fraud convictions to potential investors was a material omission. (Kelleher Aff. ¶ 15-16). Moreover, the defendant provides no evidence to suggest that potential witnesses could have offered testimony of value. *See* v. *Keane*, 98 Civ. 0013 (JSR)(AJP), 2002 U.S. Dist. LEXIS 8317, at *84 (S.D.N.Y. May 8, 2002) (quoting *Ozuru*, No. 95 CV 2241, 1997 WL 124212, at *4) (conclusory assertions by the defendant about the value of uncalled witnesses' potential testimony are insufficient to demonstrate prejudice). Given the otherwise overwhelming evidence of guilt (Kelleher Aff. ¶ 10, 13-14), failing to call witnesses who were not expected to offer any exculpatory testimony cannot be seen as prejudicial to the defendant. *See Reiter*, 897 F.2d at 645.

Moreover, had the defendant testified at trial, it is likely that such testimony would have hindered his defense. Aside from Kelleher's testimony that the defendant appeared incredible and "would have made a terrible witness," allowing him to take the stand would have enabled additional prior allegations of securities frauds and a false statement conviction, as well as other unflattering evidence, to be entered into the record. (Kelleher Aff. ¶ 18).   Such information would only further discredit the defendant and thus the advice cannot be seen as prejudicial.

Lastly, there is nothing to suggest that, had defense counsel better prepared for the cross-examination, the outcome at trial would have been different.   The defendant claims that defense counsel should have presented impeachment materials, but provides no evidence that such materials existed.   He advances no specific claims about areas where counsel's lack of preparation resulted in failure to elicit or challenge specific comments from the Government's witnesses.   Further, given the overwhelming evidence against the defendant, the cross-

examination could not have actually prejudiced the defendant in a manner that would have affected the trial's outcome, *see Reiter*, 897 F.2d at 645.

### B.       Stitsky Is Not Entitled to a Hearing

The Second Circuit has interpreted § 2255 "as requiring a hearing in cases where the petitioner has made a *plausible* claim of ineffective assistance of counsel."   *Morales* v. *United States*, 635 F.3d 39, 45 (2d Cir. 2011) (quoting *Puglisi* v. *United States*, 586 F.3d 209, 213 (2d Cir. 2009)) (internal quotation marks omitted) (emphasis added).   But "[t]o warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief."   *Gonzalez*, 722 F.3d at 131.   "Airy generalities, conclusory assertions and hearsay statements" are insufficient.   *United States* v. *Aiello*, 814 F.2d 109, 113-14 (2d Cir. 1987); *see Gonzalez*, 722 F.3d at 130-31 ("[Section 2255] does not imply that there must be a hearing where the allegations are 'vague, conclusory, or palpably incredible.'") (quoting *Machibroda* v. *United States*, 368 U.S. 487, 495 (1962)).   Nor must the Court presume factual assertions are credible "where the assertions are contradicted by the record."   *Puglisi*, 586 F. 3d at 214.   Indeed, if it "plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion."   *Id.* at 213 (citations omitted).

The defendant requests an evidentiary hearing "if there is a factual dispute regarding Mr. Stitsky's allegation concerning the plea bargaining process." (Pet. Mot., Attachment at 10). Based on the record before the Court, it should not credit Stitsky's self-serving statements that counsel never apprised him of the outcome of plea negotiations.   The defendant's silence regarding any attempts of his own to follow-up with counsel regarding the outcome of plea

negotiations during the year that elapsed between the last plea offer and trial belies his assertion

that defense counsel, with whom he was otherwise in continuous communication, did not inform

him of the outcome.    The robust account of the communications between Stitsky and his counsel

regarding plea negotiations, as set forth in counsel's affidavit, further erodes the credibility of

Stitsky's conclusory assertions to the contrary.    *See Chang* v. *United States*, 250 F.3d 79, 86 (2d

Cir. 2001) (evidentiary hearing unwarranted where it "would add little or nothing to the written

submissions."). Case law makes clear that the Court may deny a hearing if it would not succeed in

providing additional material facts. *See*, *e.g.*, *Fermin* v. *United States*, 2012 WL 1632696, at *9

(S.D.N.Y. May 4, 2012) (petitioner's "failure to provide specific facts about any conversations to

support his claim suggests that a testimonial hearing would do nothing to reveal such facts").

That is the case here.

### C.    Stitsky's Sentence Does Not Violate His Fifth Amendment Right to a Trial by Jury

Stitsky also challenges his sentence on the ground that the statutory maximum imposed

so far exceeds the last plea offer he received of 110-135 months' imprisonment that it effectively

deprived Stitsky of his right to a trial by jury and will impermissibly deter future defendants from

exercising their rights.

As an initial matter, Stitsky has procedurally defaulted on this claim because he raises it

for the first time in a collateral challenge and has not shown cause or prejudice.    *Massaro* v.

*United States*, 538 U.S. 500, 504 (2003) (adhering to "general rule that claims not raised on

direct appeal may not be raised on collateral review unless the petitioner shows cause and

prejudice" while carving out an exception for claims of ineffective assistance of counsel).

33

Because this claim could and should have been raised on direct appeal, and Stitsky offers no

justification for failing to do so, the Court should not consider it now.

Even if Stitsky's claim were properly before the Court, he cites no authority in support of

his assertion that a post-trial, non-capital sentence of imprisonment, authorized by statute and

within the recommended Guidelines range, constitutes a deprivation of the right to trial by jury.

Courts are not permitted to "vindictive[ly]" sentence a defendant for exercising a

constitutional right, such as going to trial instead of accepting a plea bargain."    *See North

Carolina* v. *Pearce*, 395 U.S. 711, 725, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on

other grounds*, *Alabama* v. *Smith*, 490 U.S. 794 (1989).    Nevertheless, a post-trial sentence is

not unconstitutional merely because it is longer than a plea offer because "plea bargaining flows

from the 'mutuality of advantage' to defendants and prosecutors, each with his own reasons for

wanting to avoid trial." *Bordenkircher* v. *Hayes*, 434 U.S. 357, 363 (1978) (quoting *Brady* v.

*United States*, 397 U.S. 752 (1970)). Though the risk of a more severe punishment may

discourage a defendant from going to trial, "the imposition of these difficult choices is an

inevitable—and permissible—attribute of any legitimate system which tolerates and encourages

the negotiation of pleas." *Bordenkircher*, 434 U.S. at 364 (internal quotation marks omitted).

Further, "the mere fact that the sentence imposed following trial is greater than the offer made

during plea negotiations, does not indicate that a petitioner has been punished for exercising his

right to proceed to trial." *Walker* v. *Walker*, 259 F. Supp. 2d 221, 226 (E.D.N.Y. 2003); *see also*,

*e.g.*, *Brewster* v. *New York*, No. 08-CV-4653 (JFB), 2010 WL 92884, at *11 (E.D.N.Y. Jan. 6,

2010) ("The mere fact that the trial court, following conviction, imposed a higher sentence than

34

the plea offer does not, in and of itself, establish actual vindictiveness."); *Powell* v. *Phillips*, No. 05-CV-3537 (DLC), 2009 WL 929538, at *19 (S.D.N.Y. Apr. 7, 2009) ("When a sentence imposed at the conclusion of a trial is greater than the sentence a prosecutor had been willing to recommend as part of a plea offer, the disparity does not, without more, establish vindictiveness.").

Here, the defendant points to nothing more than the "mere fact" that a considerably longer sentence was imposed to demonstrate that the trial court punished him for proceeding to trial; this is not sufficient. *Walker*, 259 F. Supp. 2d at 226. The sentence imposed was authorized by statute, within the Guidelines range, and recommended by the Probation Office in the PSR. Moreover, the sentencing court provided detailed reasons for the severity of its sentence, dwelling on the large number of victims, their vulnerability as unsophisticated investors, the devastation that Stitsky's conduct had brought to their lives and families, the duration and sophistication of the scheme, and Stitsky's recidivist past. (*See* Exhibit D, Stitsky Sentencing Transcript.)

For the foregoing reasons, the defendant's petition for relief on this claim should be denied.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that Stitsky's petition be denied in its entirety without a hearing.   In addition, the Government requests that the Court include in its Order a finding that Stitsky has not made a substantial showing of a denial of a federal right, and that appellate review therefore is not warranted.   *Tankleff* v. *Senkowski*, 135 F.3d 235,

241-42 (2d Cir. 1998).    Finally, the Government further requests that the Court certify that,

pursuant to 28 U.S.C. § 1915(a)(3), any appeal from the Court's Order would not be taken in good

faith.    *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).


Dated:    New York, New York
          September 5, 2017

                                      Respectfully submitted,

                                      JOON H. KIM
                                      Acting United States Attorney


                              By: _____
                                      Jilan J. Kamal
                                      Assistant United States Attorney
                                      (212) 637-2192

36

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                    :
IRVING STITKSY,
                                                    :        15 Civ. 7889 (KMW)
                              *Petitioner,*                   06 Cr. 357 (KMW)
                                                    :
        - v. -
                                                    :
UNITED STATES OF AMERICA,
                                                    :
                              *Respondent.*
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

I, JILAN J. KAMAL, pursuant to 28 U.S.C. § 1746, declare as follows:

1.       I am an Assistant United States Attorney in the Office of the United States

Attorney for the Southern District of New York.   I make this declaration in support of the

Government's Memorandum of Law in Opposition to the Motion under 28 U.S.C. § 2255 of

Petitioner Irving Stitsky to Vacate, Set Aside, Or Correct His Sentence.

2.       Attached as Exhibit A is a true and correct copy of the Government's

Memorandum of Law in Opposition to Petitioner Mark Alan Shapiro's Motion Under 28 U.S.C.

§ 2255 to Vacate, Set Aside, or Correct His Sentence.

3.       Attached as Exhibit B is a true and correct copy of Petitioner Irving Stitsky's

sentencing submission in connection with this matter.

4.       Attached as Exhibit C is a true and correct copy of co-defendant Irving Stitsky's

reply sentencing submission in connection with this matter.

5.       Attached as Exhibit D is a true and correct copy of the transcript of co-defendant

37

Irving Stitsky's sentencing proceeding in this matter

      6.     Attached as Exhibit E is a true and correct copy of Shapiro's brief appealing his

conviction and sentence before the Second Circuit Court of Appeals

      I declare under penalty of perjury that the foregoing is true and correct.

Dated:   New York, New York
        September 5, 2017

 

_____
JILAN J. KAMAL
Assistant United States Attorney