UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IRVING STITSKY, | ) | |
| *Petitioner,* | ) | |
| | ) | 15-cv-07889 (KMW) |
| -against- | ) | 06-cr-0357 (KMW) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent*. | ) | |

**REPLY OF PETITIONER IRVING STITSKY TO UNITED STATES' OPPOSITION
TO MOTION UNDER 28 U.S.C. § 2255**

This Court imposed an effective life sentence on Irving Stitsky by directing that he be imprisoned for 85 years with consecutive 5-year and four 20-year terms. This extraordinary incarceration for a defendant who was, at the time of his sentencing, a recidivist violator of the federal laws against securities fraud, wire fraud, and mail fraud may have seemed justifiable when imposed.

But Irving Stitsky is today a totally changed human being. This conclusion is graphically demonstrated by the extensive materials attached as an Appendix to this Memorandum that prove that Irving Stitsky has been a model prisoner and has assisted very significantly in rehabilitating prisoners and conducting programs at FCI Otisville. The many commendations he has received cannot be summarized in a Reply Memorandum limited by the Court's Rules to 10 pages.

This is the truly unusual case in which a District Court should re-examine the premises on which sentence was initially imposed and enable the defendant to leave prison during his lifetime because of his significant change of attitude and his demonstrated ability and desire to assist in prisoner rehabilitation.

1

We have filed this motion for post-conviction relief presenting legal arguments that will enable the Court to vacate the earlier sentence and re-examine the justice of Mr. Stitsky's lifetime incarceration in light of his current attitude and the record he has established while in federal prison. Following the Supreme Court's decision in *Pepper v. United States*, 131 S. Ct. 1229 (2011), the Court of Appeals for the Second Circuit has held that in a resentencing, a District Court must consider evidence of post-sentence remorse and rehabilitation. *United States v. White*, 655 Fed. Appx. (2d Cir. 2016) (Summary Order); *United States v. Wallace*, 617 Fed. Appx. 22 (2d Cir. 2015) (Summary Order). The facts of Mr. Stitsky's case justify reduction of his sentence under what has popularly come to be known as the "Holloway Doctrine" following Judge Gleeson's decision in *United States v. Holloway*, 68 F. Supp. 3d 310 (E.D.N.Y. 2014).

In our initial motion we challenged the constitutionality of Mr. Stitsky's sentence under the then-recent Supreme Court's opinion in *United States v. Johnson*, 135 S. Ct. 2551 (2015). We contended that an 85-year prison sentence for Mr. Stitsky's offenses was "substantively unreasonable." We also argued that Mr. Stitsky's trial counsel failed to afford him effective assistance before and during his trial.

The Government's response to the ineffective-assistance-of-counsel claim relies largely on the Affirmation dated February 10, 2016, of Dennis Kelleher, Mr. Stitsky's trial counsel. Mr. Kelleher denied allegations made by Mr. Stitsky in the original Section 2255 Motion. We append hereto Mr. Stitsky's Affidavit in which he contests his trial counsel's factual assertions. Under binding Second Circuit law, the conflicts cannot be resolved without an evidentiary hearing.

Mr. Stitsky also adopts the argument to be made for co-defendant Shapiro in a Reply Shapiro will file to the Government's Memorandum opposing his Section 2255 motion.

I.  THE DISTRICT COURT SUBSTANTIALLY INCREASED PETITIONER'S SENTENCE ON THE BASIS OF UNCONSTITUTIONALLY VAGUE SENTENCING GUIDELINES STANDARDS

In our Section 2255 Motion (pp. 2-8) we asserted that four sections of the Sentencing Guidelines are constitutionally invalid under the standard applied by the Supreme Court in *Johnson v. United States*, 135 S. Ct. 2551 (2015). When we filed the motion, the Supreme Court had not yet decided either *Welch v. United States*, 136 S. Ct. 1257 (2016), or *Beckles v. United States*, 137 S. Ct. 886 (2017). In *Welch* the Court held "that *Johnson* announced a substantive rule that has retroactive effect in cases on collateral review." 136 S. Ct. at 1268. And in *Beckles* the Court held "that the advisory Sentencing Guidelines are not subject to a vagueness challenge under the Due Process Clause . . . ." 137 S. Ct. at 895.

*Welch* means that Mr. Stitsky's sentence, albeit imposed before *Johnson* was decided, may be tested by the *Johnson* standard. *Beckles* does not, we submit, prevent a sentencing court from vacating a sentence under *Johnson* pursuant to a post-conviction motion.

We note that the Solicitor General advised the Court in *Beckles* that the "United States, as respondent, agrees with petitioner that the Guidelines are subject to vagueness challenges." 137 S. Ct. at 892. See Reply Brief for the United States, No. 15-8544, 2016 WL 6873026 (filed Nov. 21, 2016). Although a Supreme Court majority rejected the Solicitor General's concession, the arguments presented in the Solicitor General's Reply Brief are relevant and should be considered by this Court in evaluating, for Section 2255 purposes, the continued validity of an 85-year sentence substantially influenced by enhancements that were arguably vague.

Moreover, Federal Courts of Appeals have held that *Beckles* does not foreclose a vagueness challenge to a sentence imposed before the Supreme Court held in *United States v. Booker*, 543 U.S. 220 (2005), that the Guidelines were advisory only. *Moore v. United States*,

3

871 F.3d 72 (1st Cir. 2017); *In re Hoffner*, 870 F.3d 301 (3d Cir. 2017). See also the pre-*Beckles* decisions in *In re Hubbard*, 825 F.3d 225, 231 (4th Cir. 2016); *In re Patrick*, 833 F.3d 584, 589 (6th Cir. 2016). The constitutional holding of *Johnson* should govern cases in which a sentencing Court knows that even after *Booker* the Court was substantially, even if not technically, bound to impose a sentence prescribed by the Sentencing Guidelines. See also the Second Circuit's decision in *Vargas v. United States*, 2017 WL 3699225 (2d Cir. 2017).

  Mr. Stitsky was, to be sure, sentenced in July 2010, after *Booker* was decided. The Court noted during the sentencing that the Guidelines were advisory (Stitsky Sentencing Tr., July 6, 2010, p. 14). But a District Judge who has sentenced a defendant and must, years after sentencing, rule on a Section 2255 motion knows the extent to which the Guidelines calculation influenced a defendant's severe punishment. Even if the Guidelines were, by the date of sentencing, advisory only, a sentencing Court may acknowledge that vague enhancements substantially increased the sentence that Court itself imposed and may, on this account, vacate and re-sentence.

  The expansive construction given by the Court to four vague Guidelines may have encouraged the Court to conclude that it should impose ***consecutive 20-year terms of imprisonment*** on Counts Two to Five. The offenses allegedly committed by petitioner in these four counts were essentially identical. Imposing consecutive terms of imprisonment for the same conduct because that conduct constituted securities fraud, mail fraud, and wire fraud (each of which carried maximum terms of imprisonment of 30 years) might not have been contemplated by the Court if it had not included Guideline enhancements that were vague.  In short, the rationale of *Johnson* empowers this Court to re-open the sentence it imposed on Mr. Stitsky if, for the reasons elaborated in Section V of this Memorandum, the Court were now to find that

4

Mr. Stitsky's conduct over the past eight years in FCI Otisville demonstrates that the Court's 2010 evaluation of him warrants reconsideration.

## II. THE 85-YEAR PRISON SENTENCE WAS "SUBSTANTIVELY UNREASONABLE" UNDER CURRENT SECOND CIRCUIT STANDARDS

On first glance, 85 year' imprisonment for conduct that simultaneously constituted securities fraud, mail fraud, and wire fraud appears to be a judgment that is "outside the range of permissible decisions." *United States v. Park*, 758 F.3d 193, 200 (2d Cir. 2014). See also *United States v. McGinn*, 787 F.3d 116, 120 (2d Cir. 2015); *United States v. Douglas*, 713 F.3d 694, 700 (2d Cir. 2013); *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009).

At the time of sentencing Mr. Stitsky the Court expressed its belief that "[i]t is doubtful . . . that any sentence will provide sufficient individual deterrence to Mr. Stitsky." The Court viewed its goal as "to provide general deterrence to criminal conduct, as well as to protect the public from further crimes of Mr. Stitsky." Sentencing Transcript, July 6, 2010, p. 16. We demonstrate in Section V of this Reply that, in this particular case, the Court erred in its prediction. Mr. Stitsky is now a very different individual than he was when sentenced. He has demonstrated during his eight years in federal prison that his imprisonment has resulted, notwithstanding the Court's prediction, in very significant individual deterrence and that the Court need not "protect the public from further crimes by Mr. Stitsky."

Nor can this extreme sentence be justified today because petitioner had two prior securities fraud convictions, thereby placing him in Category IV under the Sentencing Guidelines. Because the convictions concerned pleas entered almost contemporaneously for securities offenses in the Eastern and Southern Districts of New York, the two prior convictions should have been combined for one plea under Rule 20 of the Federal Rules of Criminal Procedure. See Sentencing Transcript, pp. 7, 14.

To be sure, the Court of Appeals for the Second Circuit has, in a number of Summary Orders, rejected the contention that a sentence was "substantively unreasonable." [1] In *United States v. Jenkins*, 854 F.3d 181 (2d Cir. 2017), however, the Court of Appeals recently vacated, as "substantively unreasonable," a sentence of 225 months imprisonment and 25 years of supervised release entered against a defendant found guilty of possessing child pornography. See also *United States v. Genao,* 869 F.3d 136, 147 (2d Cir. 2017) (reserving decision on whether sentence of 46 months' imprisonment for illegally attempting re-entry to the United States was "substantively unreasonable.") Petitioner's 85-year sentence should be evaluated under the standards of this recent decision.

### III.  TRIAL COUNSEL'S FACTUAL ASSERTIONS REGARDING HIS AND PETITIONER'S CONDUCT ARE DISPUTED BY PETITIONER'S AFFIDAVIT SO THAT AN EVIDENTIARY HEARING IS REQUIRED

There are several conflicts between Mr. Stitsky's recollection and his trial counsel's account of the events preceding, during, and after the trial. Petitioner is submitting an Affidavit that specifies his current disagreements with his trial counsel. Compare *Puglisi v. United States*, 586 F.3d 209 (2d Cir. 2009). It is Appendix I to this Reply Memorandum.

Petitioner denies (1) that he was informed of critical plea discussions with the government and of the final offer made by the prosecutor and (2) that he received adequate advice regarding the prosecution's plea proposals from his trial counsel.

(a) His trial counsel declares that he conveyed to Mr. Stitsky "all my conversations with

---

[1] *E.g.*, *United States v. Hunter,* 2017 WL 5592284 (2d Cir. November 21, 2017) (48 months consecutive to undischarged state sentence); *United States v. Smith*, 697 Fed. Appx. 31 (September 5, 2017) (240 months imprisonment and supervised release for life on child pornography conviction); *United States v. Vickers*, 2017 WL 4005585 (2d Cir. Sept. 12, 2017) (life sentence for repeated sexual abuse of adolescent boys); *United States v. Hause*, 690 Fed. Appx. 68 (2d cir. May 10, 2017) (131 months imprisonment and supervised release for life on child pornography conviction).

the government . . . regarding any and all plea discussions." He claims that these were oral, not written, communications. Mr. Stitsky asserts that government proposals were not communicated to him.

(b) Trial counsel declares that he conveyed the government's 7-to-9-year offer to Mr. Stitsky, and Mr. Stitsky rejected it even though counsel told him "he would be convicted at trial" and "would get more time if convicted after trial." Mr. Stitsky asserts that (a) he was never told whether the government rejected his proposal of 5-to-7 years or that (b) the government's best offer was a plea of 7-to-9 years. Mr. Stitsky's trial counsel can cite no e-mail or other written communication in which he advised petitioner that a 7-to-9-year sentence was the best the prosecution would offer. Mr. Stitsky says that he would have accepted such a plea offer if he had been told that it was the "best [counsel] could do."

(c) Mr. Stitsky says that his trial counsel never told him that he might be sentenced to 85 years' imprisonment. His trial counsel does not assert that he anticipated so severe a sentence, but he declares that he frequently told Mr. Stitsky that "the Court could potentially give Stitsky a long sentence if convicted after trial."

The Court of Appeals for the Second Circuit said – even before the authoritative Supreme Court decisions that so held – that "there can be no doubt that counsel must always communicate to the defendant the terms of any plea bargain offered by the prosecution." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003), quoting *Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999). The United States Supreme Court later held in *Lafler v. Cooper*, 566 U.S. 156 (2012), that counsel's failure to communicate a plea offer amounted to ineffective assistance of counsel. See also *Missouri v. Frye*, 566 U.S. 134 (2012).

In *Lafler* the defendant was sentenced after trial to imprisonment three-and-one-half times greater than the prosecution's plea offer. In this case, the sentence was ten times the 7-to-9 year offer that the prosecution made and that Mr. Stitsky alleges was not communicated to him as the best the prosecution would accept.

In *United States v. Gordon*, 156 F.3d 376 (2d Cir. 1998), and in *Carrion v. Smith*, 644 F. Supp. 2d 452 (S.D.N.Y. 2009), trial counsel allegedly "grossly underestimated" the sentence that could be imposed on his client, and that conduct was held to constitute ineffective assistance of counsel. If petitioner is believed, both the alleged failure to tell Mr. Stitsky that the prosecution would not accept less than a 7-to-9-year plea and trial counsel's failure to advise how severe a sentence could be imposed would amount to ineffective assistance.

The present posture of the conflicting factual versions is similar to the record that was before the District Court in *Raysor v. United States*, 647 F.3d 491 (2d Cir. 2011), where the Second Circuit held that the statutory directive in Section 2255(b) to "grant a prompt hearing" and "make findings of fact" required the District Court to hold an evidentiary hearing.  Mr. Stitsky's Section 2255 motion states a "plausible claim for relief" under recent decisions of the Supreme Court and the Second Circuit. *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009)

In order to resolve the factual issue presented by the conflicting accounts of Mr. Stitsky and his trial counsel regarding notification to the client of all plea negotiations and counsel's failure to advise that an extremely severe sentence could be imposed, this Court must conduct an evidentiary hearing. See, *e.g.*, *Meszaros v. United States*, 201 F. Supp. 3d 251, 260-267 (E.D.N.Y. 2016); *Vargas v. United States*, 951 F. Supp. 2d 531, 538 (S.D.N.Y. 2013) ("We granted an evidentiary hearing, however, with respect to Vargas's claim that Schmukler was

ineffective based on his failure to convey the Government's plea offer and failure to provide a full understanding of the risks of going to trial.")

**IV.     TRIAL COUNSEL DID NOT PROVIDE EFFECTIVE ASSISTANCE**

At pages 10-11 of petitioner's Section 2255 Motion we have summarized the various grounds on which Mr. Stitsky relies for his claim that his trial counsel was ineffective during trial. In this Reply we cannot repeat these factual assertions within the Court's page limits. We note, however, three particular points: (1) Before Mr. Stitsky was sentenced, counsel received a letter from William Foster, a co-defendant, in which Mr. Foster called Mr. Stitsky a "victim" and said that the impression the jury had of Mr. Stitsky's role in Cobalt "was highly inaccurate." A copy of Mr. Foster's letter is appended to this Reply as Appendix II. Trial counsel failed to present this letter to the Court at the time of Mr. Stitsky's sentencing. (2) Government Exhibit 900 demonstrated that Mr. Stitsky was not a true partner. His trial counsel failed to utilize this Government Exhibit at trial. (3) Although the Court declared that the prosecution would not be permitted to cross-examine three potential defense witnesses about Mr. Stitsky's prior convictions if they were to testify (Trial Tr. 1959), trial counsel chose not to call the witnesses because, he says, their testimony would "enhance the government's theory . . . ."

**V.     IF PETITIONER'S CONVICTION IS VACATED UNDER SECTION 2255, HIS SENTENCE SHOULD BE REDUCED BECAUSE OF HIS EXEMPLARY RECORD IN PRISON AND HIS JOB OPPORTUNITIES OUTSIDE THE FINANCIAL INDUSTRY**

Extensive documentation of the change in Mr. Stitsky appears in documents contained in Appendix III. The Aleph Institute – which knows and evaluates Jewish prisoners across the United States – says that Mr. Stitsky's communications "demonstrate an astounding transformation of character." Page 11 of the "Progress Report" submitted on December 11, 2017, by the prison authorities at FCI Otisville declares that Mr. Stitsky "has displayed eagerness and

9

willingness in learning and has completed all tasks asked of him." Appendix IV to this Reply has copies of 45 Certificates of Appreciation, Achievement, and Completion that Mr. Stitsky has received during his incarceration. In April 2015, Warden Monica Recktenwald at Otisville commended Mr. Stitsky for "seek[ing] out additional programming to further his knowledge and practice in living a responsible lifestyle." She documented "Mr. Stitsky's commitment to change and desire to successfully re-enter society." Rabbi Judah Tabak, who regularly visits Mr. Stitsky on a weekly basis, says, "There is no question in my mind that Irving has rehabilitated himself and has every intention of being a good and caring citizen to the community and a good father and husband to his family."  See Appendix III. The letters from his family regarding the change they have seen in him since he began service of his sentence are compelling.

Mr. Stitsky has four offers for employment if he were released from prison outside the financial sector. If the Court were to reduce his sentence and enable him to return to society, he would, in addition to providing for his family, engage in teaching others what he has learned and has greatly influenced him in the Victim Impact Workshops.

## CONCLUSION

For the foregoing reasons and those presented in our Section 2255 Motion, the Court should (a) grant an evidentiary hearing and (b) vacate the 85-year sentence imposed on Irving Stitsky, and (c) set the case for re-sentencing.

Dated:  December 11, 2017

Respectfully submitted,

s/Nathan Lewin

_____
NATHAN LEWIN (NL-3424)
ALYZA D. LEWIN (AL-2284)
LEWIN & LEWIN, LLP
888 17th Street NW, 4th Floor
Washington, DC  20006
(202) 828-1000
nat@lewinlewin.com

*Attorneys for Petitioner*