A. Jeff Ifrah
N.Y. State Bar No. 2563575
IFRAH PLLC
1717 Pennsylvania Avenue, NW
Suite 650
Washington, DC 20006
(202) 524-4140 – Tel.
(202) 524-4141 – Fax

*Attorney for Amici Curiae Paul G. Cassell* et al.

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff/Respondent, <br><br> v. <br><br> MARK ALAN SHAPIRO, <br><br> Defendant/Petition. | CR-06-0357-2-KMW |

**BRIEF OF AMICI CURIAE PAUL G. CASSELL, BENNETT L. GERSHMAN, HAROLD J. KRENT, ARNOLD H. LOEWY, JAMES H. REYNOLDS, RONALD D. ROTUNDA, AND BRETT L. TOLMAN IN SUPPORT OF DEFENDANT/PETITIONER'S MOTION PURSUANT TO 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT JUDGMENT AND SENTENCE**

## INTEREST OF AMICI CURIAE

Amici are seven individuals with expertise in criminal law and sentencing procedures in the United States. The group consists of five law professors who regularly teach and write about matters touching on criminal law and sentencing, three former federal prosecutors, and a former district court judge.[1] As respected scholars in the area of criminal justice, amici are interested in promoting the fair, just, and impartial administration of justice. All are well-acquainted with the history of federal sentencing in the United States, sentencing law and policy, and the excessive sentences that have been imposed on white-collar defendants due to a rigid application of U.S.S.G. § 2B1.1. And all are well positioned to brief this Court on alternative approaches to white-collar sentencing that are more likely to produce a sentence that is proportional to the offense and consistent with historical sentencing patterns for such conduct.

## STATEMENT OF THE CASE

The undersigned counsel file this brief on behalf of Amici Curiae in support of Defendant/Petitioner Mark Alan Shapiro's motion for post-conviction relief under 28 U.S.C. § 2255. Our participation is limited to arguing that the Federal Sentencing Guidelines overstate the seriousness of Mr. Shapiro's offense conduct and, therefore, resulted in a sentence that is far greater than necessary to achieve the purposes of sentencing. Should Mr. Shapiro be granted post-conviction relief, his excessive sentence should be corrected. If the Court resentences Mr. Shapiro based on a loss calculation (as before), the Court should consider applying the alternative guideline drafted and proposed by the American Bar Association ("ABA") Criminal Justice Section Task Force on the Reform of Sentencing for Economic Crimes ("Task Force").

---

[1] Amici affirm that no counsel for any party authorized this brief in whole or in part and that no party or party's counsel made a monetary contribution to fund the preparation or submission of this brief.

The proposed alternative—endorsed by educators, practitioners, and federal judges—produces a recommended sentencing range that is consistent with historical sentences for financial fraud and, more importantly, proportional to Mr. Shapiro's offense conduct.

## SUMMARY OF ARGUMENT

If this Court grants Mr. Shapiro's request for collateral relief pursuant to 28 U.S.C. § 2255, the Court should also vacate his sentence of eighty-five years' imprisonment and impose a sentence proportional to the underlying offense, such as a sentence within the range recommended by the Task Force's alternative fraud guideline.

Mr. Shapiro received an eighty-five-year sentence on multiple counts involving securities fraud, mail fraud and wire fraud, but the sentence should be set aside because it is premised on a fundamentally flawed sentencing guideline, U.S.S.G. § 2B1.1. Section 2B1.1 is an unsound sentencing guideline because it relies almost solely on estimated loss as a proxy for culpability. As a result, the guideline often overstates the seriousness of offense conduct and results in guidelines ranges that are far greater than necessary to achieve the purposes of sentencing.

Not only is the fraud guideline inflexible with respect to loss enhancements, it also lacks persuasive weight because it is not premised on empirical sentencing data, as most other sentencing guidelines are. Indeed, the initial iteration of the fraud guideline was not rooted in empirical data; the Commission simply prescribed the sentencing ranges it deemed appropriate for white-collar fraud. Since then, the Commission has ratcheted up U.S.S.G. § 2B1.1 as directed by the Department of Justice and Congress, but the guideline remains untethered to any empirical data or historical sentencing practices.

In Mr. Shapiro's case, the guidelines resulted in an adjusted offense level of 43 with a recommended sentencing range of life in prison—a range that is comparable to or worse than the

range applicable to someone convicted of violent crime, such as assault with intent to commit murder, kidnapping, manslaughter, or the unauthorized acquisition of and threat to use nuclear and biological weapons and other weapons of mass destruction.

An alternative or shadow guideline drafted by the ABA Task Force mitigates the problems associated with § 2B1.1's over-reliance on loss amount—in part by reducing the number of loss levels and the enhancements associated with those levels. The alternative guideline also proposes an assessment of culpability that accounts for factors other than loss, such as the defendant's motive, the defendant's gain, the correlation between the two, the duration of the offense, extenuating circumstances, and any efforts the defendant made to mitigate harm caused by the offense.

Under the Task Force's alternative guideline, Mr. Shapiro's maximum adjusted offense level would be 37 with a sentencing range of 262–327 months. If the Court were to credit Mr. Shapiro's argument that the correct loss amount is between $2.5 million and $7 million, he would be a level 33 with a sentencing range of 168–210 months. A sentence within that range is sufficient but not greater than necessary to achieve the purposes of sentencing set forth in 28 U.S.C. § 3553(a)(2).

## ARGUMENT

On October 21, 2010, Defendant/Petitioner Mark Alan Shapiro was sentenced to eighty-five years in prison for nonviolent financial crimes. J. Crim. Case, *United States v. Shapiro*, Case No. 1:06-cr-00357-KMW-1 (S.D.N.Y. Oct. 21, 2010), ECF No. 324. This Court imposed consecutive sentences of sixty months on one count of conspiracy to defraud the United States (Count I) and 240 months on each of four counts (Counts II through V) involving securities fraud, mail fraud, and wire fraud. *Id.* at 1. Mr. Shapiro's extraordinary sentence was driven

4

primarily by this Court's finding that the loss amount attributable to the offense conduct was greater than $20 million and less than $50 million. Sent'g Tr. 4:19, Oct. 21, 2010 (ECF No. 345-37); *see also United States v. Stitsky*, 536 Fed. App'x 98, 110 (2d Cir. 2013) (unpublished) (noting that sentencing Court relied on court-appointed receiver's loss estimate of $23,152,235). As a result of that determination, the Court increased Mr. Shapiro's offense level by twenty-two levels as called for by the fraud guideline, U.S.S.G. § 2B1.1(b)(1)(L). *See Stitsky*, 536 Fed. App'x at 110.[2] Mr. Shapiro's loss enhancement gave him an adjusted offense level of 43. As a Criminal History Category III, Mr. Shapiro had a recommended sentencing range of life in prison. *Id.* The Court effectively adopted that recommendation and sentenced him to the statutory maximum of eighty-five years. *See* J. Crim. Case, *supra*, at 2.

If Mr. Shapiro had been sentenced without the loss enhancement, he would have had an adjusted offense level of 21 and a recommended sentencing range of 46 to 57 months. *See* U.S.S.G. ch. 5, pt. A (Sent'g Table). Put another way, Mr. Shapiro's loss enhancement—by itself—produced a sentence roughly eighteen times greater than the maximum otherwise recommended under the Guidelines. Indeed, the fraud guideline led to a grossly inflated sentence because (i) the guideline is flawed and arbitrary insofar as it relies almost exclusively on the loss calculation to serve as a proxy for culpability, and (ii) ignores other factors important for assessing culpability.

Courts have long recognized that the loss table can produce excessive sentences. *See, e.g.*, *United States v. Rostoff*, 53 F.3d 398, 412 (1st Cir. 1995) (acknowledging that loss amount

---

[2] Mr. Shapiro had a base offense level of 7 pursuant to U.S.S.G. § 2X1.1(a). The court added (i) twenty-two levels based on a loss calculation of $23 million, *see* U.S.S.G. § 2B1.1(b)(1)(L); (ii) six levels because the offense involved more than 250 victims, *see* U.S.S.G. § 2B1.1(b)(2)(C); (iii) two levels for use of sophisticated means, U.S.S.G. § 2B1.1(10)(C); (iv) four levels for role in the offense, U.S.S.G. § 3B1.1(a); and (v) two levels for abuse of position of trust, U.S.S.G. § 3B1.3. *See generally* Sent'g Tr.

can overstate culpability); *United States v. Rogers*, 39 F.3d 1190 (9th Cir. 1994) (affirming

downward departure based on district court's finding that loss amount overstated the defendant's

culpability); *United States v. Costello*, 16 F. Supp. 2d 36, 39–40 (D. Mass. 2010) (holding that

loss figure substantially overstated defendant's culpability). Seeking to address the problem, the

Criminal Justice Section of the American Bar Association formed the Task Force on the Reform

of Federal Sentencing for Economic Crimes ("Task Force"). In 2013–2014, the Task Force

evaluated the reforms needed in the sentencing of federal economic crimes and drafted an

alternative sentencing guideline to effectuate those reforms. The alternative—endorsed by

numerous educators, practitioners, and judges—provides a more nuanced framework for

assessing culpability based on the motive for and nature of the offense conduct, the defendant's

gain, the degree of sophistication or organization involved, the duration of the offense,

extenuating circumstances, and any efforts the defendant made to mitigate the resulting harm.[3]

When applied to the facts of this case, the Task Force's proposed Guideline results in a

*maximum* sentencing range of 262 to 237 months—a range that is, by any measure, more

proportional to the underlying offense, though still higher than the kinds of sentences typically

imposed on fraud defendants with a similar criminal history. If the loss finding is corrected so

that the loss figure is between $2.5 million and $7 million,[4] Mr. Shapiro's maximum sentencing

range would be 168 to 210 months—roughly 16–20% of his current sentence of eighty-five

years.

---

[3] The Task Force's draft report was presented on behalf of the Criminal Justice Section and did not represent the
policy of the American Bar Association. *See* ABA Crim. Justice Section, "A Report on Behalf of the American Bar
Association Criminal Justice Task Force on the Reform of Federal Sentencing for Economic Crimes (Nov. 10, 2014)
[hereinafter "Final Report"]. The Final Report also made clear that the Task Force felt more strongly about the
structure of the proposal than it did about the tentative offense levels, which were assigned for demonstration
purposes. *Id.* at 9 ("We have performed no research and have no empirical basis for the levels we assigned in the
draft.").
[4] *See* Movant Mark Alan Shapiro's Reply Brief in Support of 28 U.S.C. § 2255 Motion to Vacate, Set Aside or
Correct Judgment and Sentence at 2, ECF No. 399 [hereinafter "Movant's Reply Br."].

A.       **The Loss Enhancement Overstates Mr. Shapiro's Culpability.**

Mr. Shapiro's eighty-five year sentence should be set aside because it is premised on a

flawed guideline that uses loss amount as a proxy for culpability while ignoring important indicia

of culpability, such as the gains to the defendant.

1.       **The Fraud Guideline Relies Too Heavily on Loss Amount and Ignores Other Factors Relevant to Culpability.**

Federal judges in the Southern District of New York and throughout the rest of the

country agree that the guideline applicable in this case, U.S.S.G. § 2B1.1, produces excessively

harsh sentencing ranges that bear little or no connection to the underlying offense or the

defendant's culpability. Some courts recognize that the guideline is "fundamentally flawed"

"because [it] no longer provide[s] a reasonable starting point for sentencing. Adjustments based

on the amount of loss lead to astronomical sentences that have little connection to criminality."

*United States v. Cursoy*, 723 F.3d 366, 378 (2d Cir. 2013) (Underhill, J., concurring); *accord*

*United States v. Spencer*, 700 F.3d 317, 326–27 (8th Cir. 2012) (Bright, J., dissenting). In *United*

*States v. Emmengger*, the court acknowledged that "the Guidelines' provision[ ] for . . . fraud

place[s] excessive weight" on the loss calculation and that loss is often "a relatively weak

indicator of moral seriousness of the offense or the need for deterrence." 329 F. Supp. 2d 416,

427 (S.D.N.Y. 2004).

The U.S. Court of Appeals for the Second Circuit has expressed the same concerns. In

one such case, the Second Circuit remanded a case *sua sponte* "to permit the sentencing judge to

consider whether the significant effect of the loss enhancement, in relation to the low base

offense level, should result in a non-Guidelines sentence." *United States v. Algahaim*, 842 F.3d

796, 800 (2d Cir. 2016). The *Algahaim* court took a hard look at the history of the fraud

guidelines and the "unusualness" of the Commission's approach—one that is "unknown to other

sentencing systems." *Id.* The court's chief criticism of the fraud guideline was that it relies almost solely on loss to determine the offense level. *Id.* (noting that the U.S. Sentencing Commission could have assigned an offense level to fraud that reflects the seriousness of the conduct but, instead, assigned a minimum base level that must be enhanced to account for loss). As in *Algahaim*, the adjusted offense level in this case is driven primarily by the § 2B1.1 loss table. Thus, under *Algahaim*, this Court must consider whether the loss amount in Mr. Shapiro's case overstates the seriousness of his offense. If so, the Court should vacate or set aside his sentence and impose a sentence that is sufficient but no greater than necessary to achieve the purposes of sentencing.

Relatedly, "[m]any judges have criticized the Guidelines not only for their inflexibility, but also for their unnecessary harshness in many cases[.]" *United States v. Ranum*, 353 F. Supp. 2d 984, 986 n.1 (E.D. Wis. 2005). Judge Jed. R. Rakoff has noted "the utter travesty of justice that sometimes results from the guidelines' fetish with abstract arithmetic" and "the harm that the guideline calculations can visit on human beings if not cabined by common sense." *United States v. Adelson*, 441 F. Supp. 506, 512 (S.D.N.Y. 2005), *aff'd*, 301 Fed. App'x 93 (2d Cir. 2008) (unpublished). "[T]he numbers assigned by the Sentencing Commission to various sentencing factors appear to be more the product of speculation, whim, or abstract number-crunching than of any rigorous methodology—thus maximizing the risk of injustice[.]" *United States v. Gupta*, 904 F. Supp. 2d 349, 351 (S.D.N.Y. 2012) (Rakoff, J.). Additionally, Judge Rakoff has stated that where "the calculations under the guidelines have so run amok that they are patently absurd on their face, a Court is forced to place greater reliance on the more general considerations set forth in [18 U.S.C. §] 3553(a), as carefully applied to the particular circumstances of the case and of the human being who will bear the consequences." *Id.* at 515; *see also* Bowman, *Sentencing*

*High Loss Corporate Insider Frauds After Booker*, 20 Fed. Sent'g Rep. 167, 169 (2008) ("Since *Booker*, virtually every judge faced with a top-level corporate defendant in a very large fraud has found that sentences called for the by the Guidelines were too high.").

For that very reason, the court in *United States v. Ferguson* gave five defendants sentences ranging from one year and one day to four years for their role in a $500 million fraud, notwithstanding an advisory Guidelines range of life in prison. *See*, *e.g.*, J. Crim. Case, *United States v. Ferguson*, No. 06-cr-00137 (VLB) (D. Conn. Dec. 31, 2008), ECF No. 1199 (sentencing defendant Ronald Ferguson to concurrent sentences of twenty-four months on each of sixteen counts related to securities fraud). Likewise, in *United States v. Treacy*, the court imposed a sentence of twenty-four months on a defendant convicted on conspiracy and securities fraud charges involving losses of $6.3 million. *See* J. Crim. Case, *United States v. Treacy*, No. 1:08-cr-00366-JSR (S.D.N.Y. Sept. 3, 2009), ECF No. 130. Although the defendant had a guidelines range of 121 to 151 month, the court varied downward and imposed a sentence of two years. *Id.* The two-year sentence represented an 80% reduction to the lower bound of the recommended range and an 84% reduction to the upper bound of the range.

## 2.    The Fraud Guideline Is Not Premised on Empirical Sentencing Data.

Not only is the fraud guideline inflexible, it does not carry the same force as other guidelines because it is not tethered to any empirical connection between guidelines calculations and culpability. The Supreme Court has held that a district court is free to sentence below the Guideline range when a particular Guideline "do[es] not exemplify the Commission's exercise of its characteristic institutional role" of "tak[ing] account of 'empirical data and national experience'" and results in a sentence that is "'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Kimbrough v. United States*, 552 U.S. 85, 109–10 (2007). In the wake of *Kimbrough*, courts have rejected guidelines ranges in cases where the guidelines

calculation is not the product of empirical data or national experience. *See*, *e.g.*, *United States Herrera-Zuniga*, 571 F.3d 568 (6th Cir. 2009) (holding that courts may reject Guidelines based on absence of empirical data analyzed by the Sentencing Commission); *United States v. Dorvee*, 616 F.3d 174, 184–88 (3d Cir. 2010) (noting that Sentencing Commission "did not use this empirical approach" in formulating certain guidelines and encouraging district courts to "take seriously the broad discretion they possess in fashioning sentences . . . bearing in mind that they are dealing with an eccentric Guideline of results"); *United States v. Henderson*, 649 F.3d 955, 962–63 (9th Cir. 2011) (endorsing variances from guidelines range that "are, to a large extent, not the result of the Commission's 'exercise of its characteristic institutional role,' which requires that it base its determinations on 'empirical data and national experience,' but of frequent mandatory minimum legislation and specific congressional directives to the Commission to amend the Guidelines.") (citing *Kimbrough*, 552 U.S. at 109).

The fraud guideline has never been rooted in empirical data as most other sentencing guidelines are. Justice Stephen Breyer was an original member of the U.S. Sentencing Commission. He has stated candidly that the Commission "abandon[ed] the touchstone of prior practice" when formulating the guidelines for white-collar offenses. Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises on Which They Rest*, 17 Hofstra L. Rev. 1, 7 (1988). Instead of formulating fraud guidelines based on a statistical analysis of pre-guidelines sentencing practice, *see* U.S.S.G. § 1A1.5, the Commission prescribed what it considered to be an appropriate sentencing range for fraud—in particular, a range that included at least some incarceration. The Commission believed that would-be offenders would be deterred by the certainty of *some* prison time. *See*, *e.g.*, U.S.S.G. ch. 1, intro., pt. 4(d) (1987). Thus, the first iteration of the fraud guideline required some form of confinement for all but the most

minor cases, and prescribed a maximum range of 30 to 37 months for defendants with *no*

criminal history. *See* U.S.S.G. § 2F1.1 (1987).

Since then, the Commission has ratcheted up the fraud guideline so it produces sentences

that are more severe and often more disproportional to the offense conduct. Notably, though, the

fraud guideline is still divorced from empirical data and historical sentencing practices.[5] The

Commission has amended the guideline in response to pressure from members of Congress, the

Department of Justice, and the media. *See* Frank O. Bowman III, *Pour Encourager Les Autres?*,

1 Ohio State J. Crim. L. 373, 431–40 (2004) (explaining that the 2003 increases were due to

intense pressure from the Department of Justice and Congress); Jeffrey S. Parker & Michael K.

Block, *The Sentencing Commission, P.M. (Post-Mistretta): Sunshine or Sunset*, 27 Am. Crim. L.

Rev. 289, 320 (1989) (describing 1989 increases as "overtly political and inexpert").

Over time, the chasm between the fraud guidelines and prior practice has only grown

wider. *See*, *e.g.*, *United States v. Watt*, 707 F. Supp. 2d 149, 154 (D. Mass. 2010) (observing that

prescriptions of fraud guideline are "entirely inconsistent with prior practice, and not at all based

on any real data or analysis"). The persistent introduction of new sentencing enhancements has

exacerbated the problem. *See* Bowman, *Sentencing High Loss Corporate Insider Frauds After*

*Booker* at 170. The result has been a draconian sentencing scheme in which "[a]ny case

involving a corporate officer and a multimillion-dollar fraud will almost always trigger

application of multiple offense-level enhancements that have the effect of punishing the

defendant over and over for the same basic thing—conducting a fraud in a corporate setting." *Id.*

Even the Government has acknowledged that the fraud guidelines "have lost the respect of a

---

[5] In 1989, the Commission increased at least four loss levels under § 2B1.1. Twelve years later, the Commission increased another five levels under § 2B1.1. In 2003, in the wake of Sarbanes-Oxley Act reforms, the base offense level was increased from 6 to 7 for certain fraud offenses and the loss table was extended to include larger loss amounts.

large number of judges" who have been disregarding the Guidelines "with increasing frequency." Letter from Jonathan Wroblewski, Dir., Dep't of Justice Office of Policy and Legislation, to Hon. William K. Sessions II, Chair of the Sent'g Comm'n, at 2, 4 (June 28, 2010). In fact, in 2016, only 42.7% of sentences for fraud were within the relevant guidelines range. *See* U.S. Sentencing Commission's 2016 Sourcebook of Federal Sentencing Statistics, Table 27 at 1. These data show that sentencing courts are continuing the years-long trend away from guidelines sentences for fraud. *See*, *e.g.*, Mark Allenbaugh, *"Drawn From Nowhere:" A Review of the U.S. Sentencing Commission's White-Collar Sentencing Guidelines and Loss Data*, 26 Fed. Sent'g Rep. 2 (Oct. 2013) (noting that 2013 marked the first year in which less than half of the sentences imposed for fraud were within the guidelines range).

### 3.  The Fraud Guideline Produces Sentences Comparable to or Greater Than Sentences for the Most Severe Crimes

The fraud guideline is irrational because it relies primarily on loss as a proxy for culpability, while ignoring other factors relevant to guilt. Moreover, the fraud guideline is not rooted in prior practice or a rigorous analysis of historical sentencing data; therefore, the guideline does not benefit from the U.S. Sentencing Commission's unique sentencing expertise. There can be little doubt that the guideline is flawed and often results in excessive and indefensible sentencing ranges. Should any question remain, it is put to rest by comparing the guidelines sentences for fraud with the guidelines ranges for more serious offenses.

In this case, Mr. Shapiro was sentenced to a statutory maximum of eighty-five years based on an adjusted offense level of 43 and guidelines range of life in prison. The recommendation for life in prison resulted primarily from the Court's finding that the offense involved losses of $23 million. Without the loss enhancement, Mr. Shapiro's sentencing range would have been 46 to 57 months. Including the loss calculation resulted in a sentencing range at

least 18 times greater. On that basis, the guidelines recommended that Mr. Shapiro serve a prison

term for nonviolent financial offenses that is comparable to or longer than the punishment

recommended for:

- Assault with intent to commit murder, U.S.S.G. § 2A2.1 (offense level 27);

- Kidnapping, U.S.S.G. § 2A4.1 (offense level 32);

- Arson creating a serious risk of death or bodily injury, U.S.S.G. § 2K1.4 (offense level 24);

- Manslaughter, U.S.S.G. § 2A1.3 (offense level 29); and

- Unauthorized acquisition of and threat to use nuclear and biological weapons and other weapons of mass destruction, U.S.S.G. § 2M6.1 (offense level 30).[6]

It would be absurd in the extreme to accept the guidelines' proposition that Mr. Shapiro is

more culpable for his offense than someone who acquires and threatens to use a nuclear bomb.

The fraud guideline produces this irrational result because it focuses almost exclusively on the

loss calculation and does not take into account other important aspects of the offense, such as

Mr. Shapiro's intended gain. Given the lack of any empirical basis for the offense levels

prescribed under U.S.S.G. § 2B1.1 and the excessive result in this case, this Court should grant

Mr. Shapiro's motion for collateral relief, set aside Mr. Shapiro's sentence of eighty-five years,

and re-sentence him under a more rational framework, such as the one proposed by the Task

Force of the ABA's Criminal Justice Section.

>   **B.** **The ABA Task Force's Alternative Guideline Produces a Sentencing Range Proportional to the Underlying Offense.**

To fashion a sentence in this case that is sufficient but not greater than necessary to

achieve the purposes of sentencing, this Court should consider an alternative sentencing

framework, such as the alternative fraud guideline drafted by the ABA Criminal Justice Section

---

[6] A chart listing all offenses with comparable ranges is attached hereto as Exhibit A.

Task Force on the Reform of Federal Sentencing for Economic Crimes. *See* Final Report.[7] The

Task Force was formed in 2013 to evaluate the reform needed in the sentencing of federal

economic crimes and to draft a proposed federal sentencing guideline to effectuate those reforms.

*Id.* at 8. The Task Force consisted of professors, judges, and practitioners known for their

scholarship and insight, including Judge Gerard Lynch of the U.S. Court of Appeals for the

Second Circuit, The Honorable John Gleeson, former judge of the U.S. District Court for the

Eastern District of New York, and Judge Jed Rakoff, a Senior Judge of the U.S. District Court

for the Southern District of New York. *Id.*

      The Task Force recommendations are instructive in this case because they provide a more

rational, measured approach for the calculation of offense levels relating to fraud. The guideline

drafted by the Task Force mitigates U.S.S.G. § 2B1.1's over-reliance on loss enhancements by

(i) adjusting the increases due to loss and (ii) balancing loss with adjustments for culpability and

impact.

      The alternative or shadow guidelines include six different loss levels with loss

enhancements between 4 levels and 14 levels, as compared to U.S.S.G. § 2B1.1, which has

sixteen loss levels with enhancements from 2 levels to 30 levels. *Compare* Final Report at i *with*

U.S.S.G. § 2B1.1(b)(1). Moreover, the Task Force proposes an assessment of culpability that

takes into account the defendant's motive, whether the defendant initiated the offense or merely

joined in criminal conduct initiated by others, the correlation between the amount of loss and the

amount of the defendant's gain, the degree to which the offense and the defendant's contribution

to it was sophisticated or organized, the duration of the offense and the defendant's participation

---

[7] A copy of the Final Report is attached hereto as Exhibit B.

in it, extenuating circumstances, and efforts to mitigate harm caused by the offense. *See* Final

Report at 1–5.

Under the Task Force's proposed guideline, the maximum guidelines range applicable to

Mr. Shapiro's offense would be 262–327 months, far less than the current guidelines range of

life in prison and far less than the eighty-five-year sentence he is currently serving. Indeed, if this

Court applied the maximum enhancement for each factor set forth in the Task Force's proposed

guideline, Mr. Shapiro would be—at most—a level 37.

|  | Proposed Guideline for Economic Offenses |
|---|---|
| Base Offense Level | 7 |
| Loss | +12 |
| Culpability | +10 |
| Victim Impact | +6 |
| Enhancement for Specific Offense Consideration | +2 |
| **Total Adjusted Offense Level** | **37** |

As a level 37 and Criminal History Category III, Mr. Shapiro would have a guidelines

range of 262 months (*i.e.*, 21 years and 10 months) to 327 months (*i.e.*, 27 years and 3 months).

If the Court were to adopt a corrected loss figure between $2.5 million and $7 million—as Mr.

Shapiro argues, *see generally* Movant's Reply Br.—Mr. Shapiro's loss enhancement would be

18 levels, rather than 22 levels, and his total adjusted offense level would be reduced from 37 to

33, giving him a sentencing range of 168 months (*i.e.*, 14 years) to 210 months (*i.e.*, 17 ½ years).

The 10-level reduction to Mr. Shapiro's initial adjusted level of 43 would considerably mitigate

§ 2B1.1's excessive reliance on loss, though other courts have gone even further. *See*, *e.g.*, *United States v. Koczuk*, 166 F. Supp. 2d 757 (E.D.N.Y. 2001) (departing fifteen levels downward from level 29 to level 14). A sentence within the range of 14–17 ½ years is sufficient but not greater than necessary to achieve the purposes of sentence—retribution, deterrence, and incapacitation. *Seer United States v. Park*, 758 F.3d 193, 200 (2d Cir. 2014).

Notably, judges have been receptive to the ABA Task Force proposal and have endorsed its approach. *See*, *e.g.*, *United States v. Faibish*, No. 12-cr-265 (ENV), 2015 WL 4637013 (E.D.N.Y. Aug. 3, 2015) (unpublished) ("Considering these alternate models, and applying common sense, the Court finds that a strict application of the existing guidelines derived from the existing loss table in this case would unfairly balloon Faibish's sentencing range beyond any reasonable proportion to his crimes"); *see also* Tr. Sent'g Hr'g 212:5–14, *United States v. Rivernider*, No. 10-cr-222 (RNC) (D. Conn. Dec. 18, 2013) ("I took a look at the ABA Task Force report on this guideline . . . I found that the total offense level that emerged from the analysis was quite a bit lower than the one that emerges from this guideline . . . I think that there is much in the Task Force report that is helpful and I think that the guideline provided by their approach is preferable to what emerges from the existing guideline.").

Without question, securities fraud is a serious offense. But the offense level that results from application of U.S.S.G. § 2B1.1 grossly overstates Mr. Shapiro's culpability because the guideline focuses almost exclusively on estimated loss and downplays or ignores other factors material to sentencing. By contrast, the Task Force's proposed guideline provides a more reasonable approach to sentencing and results in a sentence that is sufficient but not greater than necessary to achieve the purposes of sentencing.

## CONCLUSION

For the reasons stated above, we respectfully submit that Mr. Shapiro's sentence of eighty-five years should be set aside so that this Court may impose a proportional sentence, such as a sentence within the range recommended by the Task's Force alternative guideline.

Dated: February 9, 2018

Respectfully submitted,

IFRAH PLLC

*A. Jeff Ifrah /s/*
A. Jeff Ifrah (N.Y. State Bar No. 2563575)

*Counsel for Amici Curiae*

Paul G. Cassell
Ronald N. Boyce Presidential Professor of Criminal Law and University Distinguished Professor of Law
The University of Utah
Former U.S. District Judge for the District of Utah
Former Associate Deputy Attorney General, U.S. Department of Justice
Salt Lake City, UT

Bennett L. Gershman
Professor of Law
Elisabeth Haub School of Law
Pace University
White Plains, NY

Harold J. Krent
Dean and Professor of Law
Chicago-Kent College of Law
Illinois Institute of Technology
Chicago, IL

Arnold H. Loewy
George R. Killam Jr. Chair of Criminal Law
Texas Tech University School of Law
Lubbock, TX

17

James H. Reynolds
Former U.S. Attorney for the Northern
District of Iowa
Naples, FL

Ronald D. Rotunda
Professor, Day and Dee Henley Chair and
Distinguished Professor of Jurisprudence
Dale E. Fowler School of Law
Chapman University
Orange, CA

Brett L. Tolman
Shareholder, Ray Quinney & Nebeker P.C.
Chair, White Collar, Corporate Compliance,
and Government Investigations Section
Former U.S. Attorney for the District of
Utah
Salt Lake City, UT

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 9, 2018, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/a/ A. Jeff Ifrah*
A. Jeff Ifrah