UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

IRVING STITSKY,

                       Petitioner,

        -against-

UNITED STATES OF AMERICA,

                       Respondent.

-----------------------------------------------------------X

| USDS SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: _10/25/18_ |

15-CV-7889 (KMW)
06-CR-357 (KMW)

**ORDER**

KIMBA M. WOOD, United States District Judge:

      Irving Stitsky petitions, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his

judgment and sentence.   Stitsky advances three arguments for § 2255 relief: (1) his counsel,

Dennis Kelleher, rendered ineffective assistance at sentencing, during plea negotiations, and at

trial; (2) certain United States Sentencing Guidelines ("Guidelines") enhancements applied to

Stitsky's sentence were unconstitutionally vague; and (3) the disparity between the government's

plea offers and the post-trial sentence was an unconstitutional penalty for going to trial.   For the

reasons stated herein, the Petition is DENIED.

## I.    BACKGROUND[1]

###     A.    Indictment and Trial

      On April 24, 2006, a grand jury returned an indictment against Irving Stitsky, Mark Alan

Shapiro, and William B. Foster.   (ECF No. 16.)[2]   On August 31, 2009, the government filed a

superseding indictment that charged Stitsky, Shapiro, and Foster with substantive and

---

[1] This background section relies on this Court's August 7, 2018 Order in *United States v. Shapiro et al.*, 1:06-cr-00357-KMW (ECF No. 402), in which this Court denied the § 2255 petition of Mark Alan Shapiro, Stitsky's codefendant.   The relevant background is the same in both cases.

[2] Unless otherwise noted, all ECF citations refer to the criminal docket, *United States v. Shapiro et al.*, 1:06-cr-00357-KMW.

conspiratorial counts of securities fraud, mail fraud, and wire fraud. (ECF No. 198.) The superseding indictment alleged, among other things, that the defendants induced investors to purchase millions of dollars of securities (the "Units") in Cobalt Capital Partners I, LLC, and associated entities (collectively, "Cobalt"). (*Id.* ¶¶ 1–13.) According to the superseding indictment, the defendants then "fail[ed] to invest investors' funds as promised, and misappropriate[ed] and convert[ed] investors' funds to their own benefit and the benefit of others without the knowledge or authorization of the investors." (*Id.* ¶ 13.)

On November 23, 2009, after a 13-day trial, a jury found each defendant guilty of all counts in the superseding indictment.

## B.   Sentencing

On July 6, 2010, the Court sentenced Stitsky to eighty-five years of imprisonment. At sentencing, the Court rejected Stitsky's argument that he should not be liable for the full loss amount where Cobalt "owned properties that had been legitimately purchased with investors' money," because the investors "were left nothing of value when the fraud was uncovered." (July 6, 2010 Sentencing Tr., at 17:1–17:7.) Accordingly, the Court adopted the loss calculation of $23,152,235 in the Pre-Sentence Report, which was "the total amount of money invested by the 352 victims of defendants' fraudulent scheme." *United States v. Stitsky*, 536 F. App'x 98, 110 (2d Cir. 2013) (summary order). The Court added twenty-two levels to Stitsky's Guidelines offense level based on this loss calculation. (July 6, 2010 Sentencing Tr., at 14:24–15:01 (finding that "the offense involved a loss of more than $20 million but less than $50 million").)

On September 22, 2010, the Court sentenced Foster to three years of imprisonment.

On October 21, 2010, the Court sentenced Shapiro to eighty-five years of imprisonment. In advance of Shapiro's sentencing, his counsel submitted a memorandum joining and adopting

2

Stitsky's arguments with respect to loss calculation.  (ECF No. 311, at 1.)  At sentencing, the Court rejected those arguments again, and again adopted the PSR's loss calculation.  (October 21, 2010 Sentencing Tr., at 24:14–17.)

## C.        The Appeal

Shapiro and Stitsky appealed their sentences on numerous grounds.  On October 17, 2017, the Second Circuit affirmed this Court's judgment.  *Stitsky*, 536 F. App'x. at 98.  The loss calculation argument raised on appeal is relevant here.  Stitsky and Shapiro argued "that their fraud victims received securities with some value, i.e. the Units, in exchange for their investment in Cobalt, and thus the loss amount should be offset by the value of those securities."  *Id.* at 111. The Second Circuit disagreed, affirming this Court's finding that the investors were "left with nothing of value when the fraud was uncovered," and that "the Units conferred no value at all on the investors."  *Stitsky*, 536 F. App'x at 111 (quoting July 6, 2010 Sent. Tr., at 17:6–12).  The Second Circuit reasoned that, "even if some of Cobalt's properties retained value at the time the fraud was uncovered, . . . the district court reasonably concluded that the Cobalt securities had no value because there was no realistic possibility that Cobalt would be able to generate a positive return for investors."  *Id.*  Thus, the Second Circuit held, "because investors received nothing of value at the time the fraud was uncovered, the district court reasonably estimated the loss to be the principal amount invested by the victims."  *Id.* at 112.

## D.        The Petition

On October 1, 2015, Stitsky moved for an order vacating, setting aside, or correcting his judgment and sentence pursuant to 28 U.S.C. § 2255.  (ECF No. 348.)  The Petition asserts that: (1) Stitsky's counsel rendered ineffective assistance at sentencing, during plea negotiations, and at trial; (2) certain Guidelines enhancements applied to Stitsky's sentence were unconstitutionally

3

vague; and (3) the disparity between the government's plea offers and the post-trial sentence was an unconstitutional penalty for going to trial.

## II.     Legal Standard

### A.      28 U.S.C. § 2255

A prisoner in federal custody may "move the court which imposed [his] sentence to vacate, set aside or correct the sentence" if the "sentence was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, . . . the sentence was in excess of the maximum authorized by law, or [the sentence] is otherwise subject to collateral attack."   28 U.S.C. § 2255(a).   To succeed, a § 2255 petitioner must establish "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"   *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*. 368 U.S. 424, 428 (1962)).   "The petitioner in a § 2255 proceeding bears the burden of proof by a preponderance of the evidence."   *Feliz v. United States*, No. 1-CV-5544 (JFK), 2002 WL 1964347, at *4 (S.D.N.Y. Aug. 22, 2002) (Keenan, J.) (citing *Triana v. United States*, 205 F.3d 40 (2d Cir. 2000)).

## III.    Discussion

### A.      Ineffective Assistance of Counsel (Grounds 1 and 3)

As set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), criminal defendants have a Sixth Amendment right to effective assistance from their attorneys "at all critical stages in the proceedings."   *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).   To make out a claim of ineffective assistance of counsel, a claimant must establish two elements.   First, he must show the performance of his counsel was "so deficient that, 'in light of all the circumstances, the

4

identified acts or omissions were outside the wide range of professionally competent assistance.'" *Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011) (quoting *Strickland*, 466 U.S. at 690)). Second, he must show that the deficient performance resulted in prejudice, "in the sense that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 690). In ruling on a claim of ineffective assistance counsel, a court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

Stitsky argues Kelleher's performance was deficient at sentencing, during plea negotiations, and at trial. His arguments, which are considered below, lack merit.

### 1.   Loss Calculation at Sentencing (Ground 1)

Stitsky argues he did not have effective assistance of counsel at sentencing in the determination of the loss resulting from the fraud. (Attach. Question 12 of Irving Stitsky § 2255 Pet. at 2, ECF No. 348-1 ("Pet'r's Attach.").) To this end, Stitsky incorporates the ineffective assistance of counsel arguments advanced in the § 2255 petition of codefendant Shapiro. (*Id.*) (Stitsky specifically adopts Grounds 1 through 4, which relate to the alleged deficiencies of counsel with respect to the calculation of loss at sentencing.) This Court previously considered and rejected these same ineffective assistance of counsel arguments in denying Shapiro's § 2255 petition. (ECF No. 402, at 7–10.)[3] The same result is warranted here, and this Court now rejects Stitsky's arguments as well.

_____

[3] Briefly, this Court concluded the ineffective assistance of counsel claims related to the loss calculation at sentencing were barred by the mandate rule. (ECF No. 402, at 7–10.) Because Shapiro and Stitsky raised the loss calculation arguments on direct appeal, they are precluded from re-litigating those arguments on collateral review. *See Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (holding the mandate rule bars "ineffective assistance claims in a Section 2255 proceeding when the factual predicates of those claims, while not explicitly raised on

5

2.      Plea Negotiations and Trial (Ground 3)

i.      Plea Negotiations

The right to effective assistance of counsel extends to the plea bargaining stage.  *See*
*Lafler v. Cooper*, 566 U.S. 156, 162 (2012).  "[A]s a general rule, defense counsel has the duty
to communicate formal offers from the prosecution to accept a plea on terms and conditions that
may be favorable to the accused."  *Missouri v. Frye*, 655 U.S. 134, 145 (2012).  Moreover, "[a]
defense lawyer in a criminal case has the duty to advise his client fully on whether a particular
plea to a charge appears to be desirable."  *Boria v. Keane*, 99 F.3d 492, 496 (2d Cir. 1996)
(quoting Model Code of Prof'l Responsibility, EC-7-7 (Am. Bar Ass'n 1992)) (emphasis
omitted); *see also Cullen v. United States* 194 F.3d 401, 404 (2d Cir. 1999) (concluding counsel
should apprise the defendant of the possible sentencing ranges upon a plea and upon conviction
after trial).  To be entitled to relief, the defendant must also show a reasonable probability that
but for the errors of defense counsel the outcome of plea negotiations would have been different.
*See Frye*, 566 U.S. at 148

With respect to plea negotiations, Stitsky makes two arguments in support of his claim of
ineffective assistance of counsel.  First, Stitsky contends Kelleher did not inform him as to
whether the government accepted a plea deal counteroffer of five to seven years.  (Pet'r's
Attach. at 8–9.)  Second, Stitsky argues Kelleher did not advise him that the best and final offer
from the government was seven to nine years and, had he known this fact, he "might have
pleaded guilty."  (*Id.*)

_____

appeal, were nonetheless impliedly rejected by the appellate court mandate" (citing *United States v. Pitcher*, 559
F.3d 120, 124 (2d Cir. 2009))).   Stitsky's claims—which simply incorporate Shapiro's arguments by reference—are
thus barred by the mandate rule.

Stitsky attached two exhibits to support his contention that Kelleher did not adequately communicate with him during plea negotiations. First, Stitsky provided an email from Kelleher dated October 20, 2008, which states the government "offer is now 110–135 months. They might be a little more flexible but not much. Let's discuss later." (ECF No. 348-2.) Second, Stitsky provided an affidavit from his sister, Ellen Hogan. (ECF No. 348-3.) Hogan states Stitsky discussed the plea negotiations with her in November or December 2008 and, during that discussion, Stitsky explained the government was offering him seven to nine years. (*Id.* ¶¶ 3, 5.) Additionally, Hogan recounts that Stitsky said he informed Kelleher he would take a plea bargain of five to seven years, but that she never heard from Stitsky regarding whether the government responded to his five to seven year counteroffer. (*Id.* ¶¶ 4–5.)

Stitsky has not demonstrated Kelleher offered ineffective assistance during plea negotiations. To start, Stitsky relies exclusively on his self-serving, post-conviction statements to support his argument. "[I]n most circumstances, a convicted felon's self-serving testimony is not likely to be credible." *Purdy v. Zeldes*, 337 F.3d 253, 259 (2d Cir. 2003). Although Stitsky provided two exhibits, they do not actually suggest Kelleher failed to communicate with him during plea discussions. The October 2008 email from Kelleher shows he was communicating with Stitsky as to the plea deal the government was offering (110–135 months), as well as advising him as to whether the government could be persuaded to offer an even more favorable deal. The Hogan affidavit evidences continued dialogue between Kelleher and Stitsky and continued advocacy by Kelleher on behalf of Stitsky—that is, Kelleher informed Stitsky the government offered an even better deal of seven to nine years. The exhibits do not suggest Kelleher failed to communicate the five to seven year counteroffer to the government or its rejection by the government to Stitsky. Nor do they suggest Kelleher failed to advise Stitsky as

7

to the desirability of the seven to nine year offer. Stitsky therefore provides little more than his own self-serving statements to support his claim of ineffective assistance of counsel.

This Court, moreover, finds Stitsky's self-serving assertions are not credible for two reasons. *See id.* (holding the habeas court has a "responsibility to actually make a credibility finding in each case"). First, the sequence of events Stitsky describes in his § 2255 petition strains believability. According to Stitsky, Kelleher was initially engaged in plea negotiations with the government and communicating with Stitsky as to their substance. Kelleher informed Stitsky in October 2008 that the government offer was 110–135 months and expressed doubts as to how much more flexible the government would be. Shortly thereafter, Kelleher informed Stitsky the government reduced the sentencing range to seven to nine years, and Stitsky asked Kelleher to seek five to seven years. At this point, Stitsky maintains all communication between himself and Kelleher related to plea negotiations simply ceased. (Pet'r's Attach. at 9 ("Stitsky says he received *no further communication* from Attorney Kelleher regarding plea negotiations, and the defendants went to trial on November 2, 2009.") (emphasis added).) Stitsky insists he "does not know today—and did not know before entry of [the] superseding indictment or before trial—whether his counter-proposal was communicated to the government and whether the prosecutors were ready to offer him the same plea bargain as they were offering Shapiro." (*Id.*) In this alleged scenario, after being actively engaged in plea negotiations with the government and advising Stitsky as to those negotiations, Kelleher inexplicably reversed course, and there was no further communication with Stitsky as to plea bargaining. This was so, despite the fact that Kelleher continued to represent Stitsky *for nearly a year* before the trial began in November 2009. Stitsky, furthermore, apparently never inquired as to the results of plea negotiations. This factual scenario is implausible, and this Court does not credit it.

8

Second, the factual scenario Stitsky describes in his initial § 2255 petition conflicts with the factual scenario Stitsky later describes in an affidavit attached to his reply brief. According to his § 2255 petition, after Stitsky asked Kelleher to propose five to seven years to the government in or around October 2008, Stitsky had no further communication with Kelleher related to plea negotiations. But, perhaps recognizing the unlikelihood of the scenario described in his petition, Stitsky states in his affidavit he did, in fact, have further discussions with Kelleher about plea negotiations and was told there were no longer any plea deals available due to the government's desire for a global settlement. In his affidavit, Stitsky states:

> I was never told by counsel that the government would not offer me a 5–7 year deal. I tried unsuccessfully to reach counsel to find out whether I could be given the same deal as Shapiro. I finally reached him after the first of the year and he said that 'there are no more pleas available.' He said that Shapiro had turned down a plea proposal, and the government 'wanted a global settlement.'"

(Aff. Irving Stitsky ¶ 6, ECF No. 396-1 ("Stitsky Aff.").) This newly alleged conversation attempts to account for the major logical weakness in the earlier factual assertions contained in Stitsky's § 2255 petition—that is, that Stitsky and Kelleher did not discuss plea negotiations at all after Stitsky asked Kelleher to seek a five to seven year offer, despite the fact that an entire year elapsed before the trial began. The conflicting accounts Stitsky offers, however, serve only to erode his credibility further.

Beyond their self-serving, improbable, and inconsistent nature, Stitsky's allegations are also contradicted by a credible affirmation from Kelleher. In his affirmation, Kelleher squarely rebuts Stitsky's allegations:

> Stitsky and I continually had conversations about plea bargaining over the years. When the government offered 110–137 months, I told Stitsky about it, and he rejected it. (I argued to the government his plea range should be 37–46 months. The

9

> government rejected that). My recollection is that government did
> convey another offer to Stitsky in the approximate range of 7–9
> years. I conveyed this to him again, and he again rejected it. My
> recollection is that the government may have offered co-defendant
> Mark Shapiro (Shapiro) a plea in the approximate range of 5–7 years
> around the same time Stitsky was offered approximately 7–9 years.
> Stitsky says he would have taken that; however, Stitsky was a CHC
> IV where I believe Shapiro was a CHC III. I asked the government
> for a plea offer in the range given to Shapiro, and the government
> refused. This was all communicated to Stitsky, and he rejected it.
> When Stitsky rejected 7–9 years, I also told him I thought he would
> be convicted at trial. I consistently told him I could not force him
> to plead guilty. Stitsky said that 7–9 years (as with 110-137
> months) was basically a "life sentence," and he rejected 7–9 years.
> He would also consistently say over our many years together that he
> would plead guilty if he had done something wrong, but he did not
> do anything wrong (at Cobalt).

(Aff. Dennis Kelleher ¶ 7, *Stitsky v. United States*, 1:15-cv-07889-KMW (S.D.N.Y. Feb. 26,

2016), ECF No. 27 ("Kelleher Aff.").) This Court finds Kelleher's affirmation to be credible.

Because Kelleher properly advised and represented Stitsky during plea negotiations, Stitsky is

not entitled to relief.[4]

Stitsky argues he is entitled to an evidentiary hearing because there are disputes of fact

presented by his and Kelleher's accounts of the plea bargaining stage. (Pet'r's Attach. at 10;

Reply Br. In Supp. Of Irving Stitsky § 2255 Pet. at 8, ECF No. 396 ("Pet'r's Reply").) Stitsky is

wrong. "Where, as here, a habeas court is faced with self-serving allegations that are

contradicted by a credible affirmation [from] a trial attorney, it may choose to credit the attorney

and dismiss the ineffective assistance of counsel claim without further hearings." *Castrillo v.*

---

[4] Stitsky also contends Kelleher did not inform him as to the extent of his sentencing exposure. (Pet'r's Reply at 7.)
Because Stitsky raises this argument for the first time in his reply brief, the argument is forfeited. *See Evangelista
v. Ashcroft*, 359 F.3d 145, n.4 (2d Cir. 2004) ("We do not consider the merits of [the habeas petitioner's] argument,
because '[w]e will not consider an argument raised for the first in a reply brief.'" (quoting *United States v. Yousef*,
327 F.3d 56, 115) (2d Cir. 2003))). Even if this argument were not forfeited, Stitsky offers only his own self-
serving statements as evidence. Additionally, Kelleher states in his affirmation that he warned Stitsky about the
potential for a harsh sentence, including the possibility of the counts running consecutively. (Kelleher Aff. ¶ 10.)

*Breslin*, No. 01-CV-11284 GBD GWG, 2005 WL 2792399, at \*13–14 (S.D.N.Y. Oct. 26 2005)

(Gorenstein, M.J.) (collecting cases); *see also Chang v. United States*, 250 F.3d 79, 85–86 (2d

Cir. 2001) (concluding an evidentiary hearing was not required where the district court

supplemented the record with a credible affidavit from trial counsel that contradicted the § 2255

petitioner's self-serving, post-conviction statements).   Stitsky is therefore not entitled to an

evidentiary hearing.

   Even if Stitsky had proven Kelleher's performance during plea negotiations was

defective, Stitsky has not demonstrated prejudice, because there is compelling evidence in the

record suggesting Stitsky would not have accepted the seven to nine year plea offer.   Assuming

Kelleher did not communicate the government's rejection of the five to seven year counteroffer,

Stitsky would still need to show a reasonable probability that but for Kelleher's error the

outcome of the plea process would have been different.   *See Frye*, 566 U.S. at 148.   That is,

Stitsky must show a reasonable probability he would have accepted the seven to nine year offer

had he known the government rejected the five to seven year counteroffer.   Stitsky avers he

would have accepted the seven to nine year plea offer if Kelleher had informed him it was the

best deal he could get from the government.   (Stitsky Aff. ¶ 6.)   This statement is not sufficient

to demonstrate prejudice, however, because Stitsky must present "objective evidence other than

[his] self-serving assertions to establish that [he] would have pled guilty had he received

constitutionally effective assistance of counsel."   *Melo v. United States*, 825 F. Supp. 2d 457,

463 (S.D.N.Y. 2011) (Marrero, J.) (quoting *Crisci v. United States*, F. App'x 25, 27–28 (2d Cir.

2004)) (alternation in *Melo*).   The only objective evidence in the record that supports Stitsky's

claim is the disparity between the plea offer of seven to nine years and the actual sentence of

eighty-five years.   *See Osorio v. Conway*, 496 F. Supp. 2d 285, 303 (S.D.N.Y. 2007) (Chin, J.)

11

("Objective evidence may include a disparity between the plea offers and the actual sentence.").
In *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003), the Second Circuit held a significant
sentencing disparity—coupled with a statement from the petitioner that he would have accepted
the plea deal—was sufficient to demonstrate prejudice.  This case, however, is distinguishable
from *Pham*, because there is strong countervailing evidence that Stitsky would not have accepted
the seven to nine year plea deal, notwithstanding his post-conviction statement to the contrary
and the sentencing disparity.

     First, Kelleher presented the seven to nine year plea offer to Stitsky on multiple occasions
and Stitsky repeatedly rejected the offer because he felt it was a "life sentence" at his age.
(Kelleher Aff. ¶ 7.)  Second, Stitsky consistently maintained his absolute innocence and
expressed his unwillingness to accept a plea deal.  (*See id.* ("[Stitsky] would also consistently
say over our many years together he would plead guilty if he had done something wrong, but he
did not do anything wrong."); *see also id.* ¶ 11 ("Prior to Stitsky's sentencing, Stitsky gave me a
handwritten letter that he wanted to read at his sentencing.  Among other things he wrote: 'My
family said how could you take a plea, so I counted on the justice system to prove my
inno[c]ence and now I'm subjected to jail time.'").)  Third, according to his own§ 2255 petition,
Stitsky and Kelleher did not discuss plea negotiations for the entire year leading to trial.  (Pet'r's
Attach. at 9.)[5]  Stitsky was thus apparently willing to go to trial without inquiring at all about the
continued availability of the seven to nine year offer he previously rejected.  Because Stitsky
repeatedly rejected the 7-to-9 year offer as a "life sentence," continually maintained his

---

[5] The Court also notes that if the allegations in the affidavit attached to Stitsky's reply were credited, Stitsky could
not show prejudice.  In his affidavit, Stitsky states that Kelleher informed him there were no pleas available because
the government desired a global settlement, and Shapiro did not plead guilty.  (Stitsky Aff. ¶ 6.)  If this account
were correct, there would seemingly be no plea deal Stitsky could have accepted, and so Stitsky could not have been
prejudiced.

innocence and expressed an unwillingness to accept a plea deal, and proceeded to trial without even discussing the seven to nine year offer again with Kelleher, this Court concludes Stitsky has not demonstrated a reasonable probability he would have accepted the seven to nine year offer.

In sum, Stitsky has not shown Kelleher was ineffective during plea negotiations and, even if Stitsky had shown Kelleher was ineffective, Stitsky failed to show any resulting prejudice.

        ii.     Trial

In evaluating an attorney's performance, the reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance." *Strickland*, 466 U.S. at 689. "Actions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance." *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) (quoting *Strickland*, 466 U.S. at 689). "Counsel's election to forgo an unsupported argument plainly falls into this category. Similarly, counsel's decision as to 'whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation.'" *Id.* (quoting *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1999). "Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are similarly strategic in nature." *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992) (quoting *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987)). Finally, to be entitled to relief, the defendant must show there was a "reasonable probability . . . the result of the proceeding would have been different" if defense counsel had provided competent representation. *Strickland*, 466 U.S. at 694.

Stitsky effectively sets forth four arguments to support his claim that Kelleher's representation was ineffective at trial: (1) Kelleher did not call any witnesses even though Stitsky provided names of witnesses ready to testify; (2) Kelleher did not "seriously discuss" with

13

Stitsky whether he should testify at trial, even though arguably the most prejudicial evidence against Stitsky was already known to the jury; (3) Kelleher was unprepared to cross-examine and impeach the government's witnesses; (4) Kelleher did not emphasize Stitsky's "minor role" at Cobalt as compared to codefendants Shapiro and Foster, including that Stitsky was not a "partner" and received far less in proceeds from the company. (Pet'r's Attach. at 10–11.)

Stitsky's arguments are not persuasive. As an initial matter, Stitsky does not argue Kelleher's alleged deficiencies actually affected the outcome of the case. Stitsky nowhere alleges—not his in § 2255 petition, his reply, or the affidavit attached to his reply—that but for Kelleher's ineffective assistance at trial there is a reasonable the result of the proceeding would have been different. Even if Stitsky had attempted to show prejudice, he would not have succeeded. The evidence against Stitsky at trial was so overwhelming that, even absent the alleged unprofessional conduct, the outcome of the case would have been unquestionably the same. *See United States v. Reiter* 897 F.2d 639, 645 (2d Cir. 1990) (concluding a habeas petitioner was not entitled to relief even though defense counsel's representation was ineffective because there was overwhelming evidence of petitioner's guilt in the record). Because Stitsky does not allege prejudice, his ineffectiveness of counsel claim fails. Even if Stitsky had alleged prejudice, his claim would nevertheless fail because none of the alleged errors would have altered the outcome of the case.

Beyond his failure to allege or demonstrate prejudice, Stitsky has also not shown Kelleher's conduct fell below the constitutional minimum.

a. The decision not to call defense witnesses

Stitsky contends Kelleher did not call any defense witnesses even though Stitsky provided names of witnesses willing to testify. (Pet'r's Attach. at 10–11.) The decision to call or not call

14

specific witnesses is usually a product of reasonable trial strategy and thus does not constitute

ineffective assistance of counsel. *See Best*, 219 F.3d at 201. In his affirmation, Kelleher

explains at length his decision not to call any witnesses, despite "interview[ing] numerous

witnesses over the years." (Kelleher Aff. ¶ 16). Kelleher believed "these witnesses could do

more harm than help" because they either had "checkered pasts" or presented other problems,

such as highlighting the "the government's theory that the failure to disclose Stitsky's two

securities fraud convictions was a material omission." (*Id.*) Kelleher states he discussed his

reasons for not calling any defense witnesses with Stitsky, and Stitsky agreed with the strategic

determination. (*Id.*) Kelleher's decision not to call defense witnesses was "surely a tactical

decision that cannot be second-guessed." *Best*, 219 F.3d at 202.

### b. Advising Stitsky not to testify

Stitsky next argues Kelleher did not "seriously discuss" with him whether Stitsky should

testify. (Pet'r's Attach. at 10.) Stitsky further insists he asked Kelleher to place him on the

stand to testify. (*Id.* at 11.) "It is true that a defendant's right to testify may not be waived by

his counsel, and that the trial counsel's duty of effective assistance includes the responsibility of

advising the defendant concerning his right to testify." *United States v. Murray*, 414 F. App'x

318, 321 (2d Cir. 2011) (citing *Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1997)). But Stitsky

offers only his own self-serving statements as evidence that Kelleher failed to advise Stitsky as to

his right to testify or actually prevented him from testifying. These self-serving statements are

not sufficient to shown a deficiency in representation. *See Chang*, 250 F.3d at 84 (holding the

defendant's "own blanket statements" that his attorney prevented him from testifying were not

enough to establish ineffective assistance (quoting *Chang v. United States*, No. 98-CV-7354 ILG,

1999 WL 439097)); *United States v. Montilla*, 85 F. App'x 227, 230 (2d Cir. 2003) (concluding

15

the "defendant's bald assertions fail to overcome the presumption that counsel did advise him of his right to testify").

Kelleher states in his affirmation that he informed Stitsky of his right to testify, but advised him not to do so. (Kelleher Aff. ¶ 18 ("[W]e discussed his right to testify at trial . . . . In my opinion, Stitsky was completely incredible on a number of topics and would have made a terrible witness. I said as much to him.").) Kelleher further states, "Stitsky completely agreed with me that he should not testify, and in fact, he knew he could not testify based on his extensive criminal and regulatory history because he would have been subjected to withering cross-examination." (*Id.*) Finally, Kelleher states it is "absolutely not true" Stitsky asked to be put on the stand. (*Id.* ¶ 19.) This Court credits Kelleher's statements.

Stitsky has not shown Kelleher failed to advise him as to his right to testify or interfered with this right in any way.

c. Preparedness to cross-examine and impeach witnesses

Stitsky next argues Kelleher was "unprepared to cross-examine the government's witnesses with prior statements and other impeaching material." (Pet'r's Attach. at 11.) This is the extent of Stitsky's argument on this point—he does not attempt to show even one example in the trial transcript that suggests Kelleher was unprepared. In any event, the manner in which defense counsel chooses to cross-examine witnesses is strategic and does not evince unprofessional conduct. *See Eisen*, 974 F.2d at 265. Kelleher, moreover, says he thoroughly prepared for each witness and read 3500 material extensively in preparation for his cross-examinations. (Kelleher Aff. ¶ 20.) Stitsky's argument is conclusory, self-serving, and contradicted by Kelleher's affirmation.

d. Stitsky's "minor role" at Cobalt

16

Finally, Stitsky contends Kelleher did not "aggressively" emphasize his "minor role" at Cobalt, including the fact that he was not a partner in the venture and received far less in proceeds. (Pet'r's Attach. at 10–11). This argument fails for two reasons. First, whether and to what extent Kelleher should have emphasized Stitsky's role at Cobalt are questions committed to trial strategy. *See Best*, 219 F.3d at 201. This is particularly so in Stitsky's case, given the evidence in the record. For example, Stitsky argues Kelleher should have conveyed to the jury that he was not a "partner" at Cobalt. (Pet'r's Attach. at 10.) But, as Kelleher explains in his affirmation, there was ample evidence in the record, including testimony from multiple witnesses, that Stitsky represented himself as partner while at Cobalt. (Kelleher Aff. ¶¶ 13–14). Kelleher's decision was plainly strategic: "[t]o suggest that these witnesses were lying about Stitsky's statements to them would have been absurd in my opinion, and I chose not to do so." (*Id.* ¶ 14.) Kelleher's decision concerning how to emphasize the fact that Stitsky realized "only" a half a million dollars in salary and bonuses from the fraudulent scheme he helped perpetuate was also strategic.

Second, Kelleher did, in fact, attempt to highlight Stitsky's comparatively minor role at Cobalt:

> Through the cross-examination of witnesses and in my summation, I sought to affix blame on Shapiro and [show] that Stitsky could not [] have conspired with Shapiro since he was lied to by Shapiro, and therefore, Stitsky lacked intent. For example, Shapiro did not let Stitsky see the financials of Cobalt as I established and stated in summation. I also urged the jury in summation to follow the money: "Look at the numbers ... just a small portion of it goes to Mr. Stitsky." [] I also argued based upon the actual division of money there was no 40-40-20 split between Shapiro, Stitsky and Foster as the government had stressed was the agreement between the three defendants. I established that Stitsky had no signatory authority; thus, he could not and did not write checks. I argued that all the false information in the marketing materials came from the

17

> Springfield office, and therefore, Stitsky had no knowledge of those
> false statements.

(*Id.* ¶ 15.) Stitsky does not meaningfully contest Kelleher's assertions beyond stating in
conclusory fashion there were "many opportunities" Kelleher missed to emphasize Stitsky's
allegedly minor role. (Stitsky Aff. ¶ 10.)

In sum, Stitsky has not shown Kelleher's representation at trial was ineffective. Nor has
Stitsky shown—or even alleged—any resulting prejudice based on Kelleher's supposed
constitutional errors at trial.

***

Because Kelleher competently represented Stitsky at sentencing, during plea negotiations,
and at trial, Stitsky's ineffective assistance of counsel claims fail.

## B.   Vagueness of Enhancements under the Guidelines (Ground 2)

Stitsky contends his eighty-five year prison sentence is unconstitutional under *Johnson v.
United States*, 135 S. Ct. 2551 (2015), because the purported vagueness and unpredictability of
the Guidelines permits arbitrary enforcement and denied him fair notice. (Pet'r's Attach. at 3.)
In *Johnson*, the Supreme Court held "the indeterminacy of the wide-ranging inquiry required by
the residual clause [of the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e)(2)(B)] both
denies fair notice to the defendants and invites arbitrary enforcement by judges." *Johnson*, 135
S. Ct. at 2557. Stitsky argues "the Sentencing Guidelines provisions that resulted in significant
enhancements in the length of [his] imprisonment . . . are subject to similar and comparable
vagueness challenges as . . . in *Johnson*." (Pet'r's Attach. at 2.)

18

This argument is foreclosed by *Beckles v. United States*, 137 S. Ct. 886 (2017).[6]   In *Beckles*, the Supreme Court concluded the Guidelines "are not amenable to a vagueness challenge," primarily because "they merely guide the district courts' discretion."   *Id.* at 894. Perhaps recognizing the obstacle *Beckles* presents, Stitsky further argues "*Beckles* does not foreclose a vagueness challenge to a sentence imposed before the Supreme Court held in *United States v. Booker*, 543 U.S. 220 (2005), that the Guidelines were advisory only."   (Pet'r's Reply at 3–4.)   But Stitsky was sentenced five years after *Booker*, and so this argument, even if correct, cannot salvage his vagueness challenge.   *See Apostolopuos v. United States*, No. 04-CR-1220 (CM), 2017 WL 6034158, at *3 (S.D.N.Y. Nov. 21, 2017) (McMahon, J.) (holding *Beckles* precluded a vagueness challenge to the Sentencing Guidelines, where the petitioner was sentenced in 2006, one year after the Supreme Court issued its decision in *Booker*).   This argument therefore fails.

## C.   Disparity between Plea Offers and Sentence

In his last argument for relief, Stitsky contends the difference between the plea deals offered by the government and his actual sentence represents "a constitutionally impermissible penalty for going to trial."   (Pet'r's Attach. at 11.)[7]   This argument fails for two reasons.   First, because Stitsky raises this argument for the first time in his habeas petition and has not shown

---

[6] This Court previously held *Beckles* foreclosed the same vagueness challenge in denying Shapiro's § 2255 petition. (ECF No. 402, at 11–12.)

[7] Stitsky advances a different argument in his reply brief, arguing his sentence is substantively unreasonable under "current" Second Circuit standards.   (Pet'r's Reply at 5–6.)   Although Stitsky cites several recent cases where the Second Circuit has held sentences to be substantively unreasonable on direct appeal, he cites to no decision that changed the standard for evaluating the substantive reasonableness of a sentence.   The Second Circuit, moreover, has already upheld Stitsky's sentence on direct appeal.   *See Stitsky*, 536 F. App'x at 110 ("Again, while the district court's sentence is severe, the facts it identified in support of its within-Guidelines sentence adequately bear the weight assigned to them.   Through the Cobalt scheme, which he helped create, Stitsky caused significant harm to hundreds of people, and he posed a particularly high risk of recidivism on release.   In these circumstances, Stitsky has not shown that the challenged sentence is substantively unreasonable.")

19

cause or prejudice, this claim is procedurally defaulted. *See Massaro v. United States*, 538 U.S. 500, 503–04 (2003) (reaffirming "the general rule that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice"). Second, on the merits, Stitsky cites no authority for the proposition that a post-trial sentence within the Guidelines range is an unconstitutional penalty for going to trial simply because the sentence exceeded the proposed sentencing range of earlier plea offers from the government. To the contrary, although "confronting a defendant with the risk of more severe punishment may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'" *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973)). "[T]he mere fact that the sentence imposed following trial is greater than the offer made during plea negotiations[] does not indicate that a petitioner has been punished for exercising his right to proceed to trial." *Walker v. Walker*, 259 F. Supp. 2d 221, 226 (E.D.N.Y. 2003) (citing *United States v. Araujo*, 539 F.2d 287, 292 (2d Cir. 1976)). Stitsky has not shown he was punished for going to trial, and therefore he is not entitled to relief.

## IV.   Conclusion

For the reasons stated above, the Petition is DENIED. A certificate of appealability will not issue, because Stitsky failed to make a substantial showing of a denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

20

The Clerk of Court is directed to terminate the motion at ECF No. 348.

SO ORDERED.

Dated: New York, New York
      October 25, 2018

                                             KIMBA M. WOOD
                                  United States District Judge

21