UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.:  06-CR-357-02 |
| | ) **Honorable Kimba M. Wood** |
| IRVING STITSKY et. al., | ) |
| | ) |
| Defendant. | |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT IRVING STITSKY'S MOTION
FOR A SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)

David M. Schwartz
Gerstman Schwartz LLP
1399 Franklin Avenue Ste 200
Garden City, New York 11530
Tel. No.: (516) 880-8170
Dschwartz@gerstmanschwartz.com

*Counsel for Defendant Irving Stitsky*

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES.......................................................................ii-v

I.      INTRODUCTION..........................................................................1

II.     FACTUAL BACKGROUND............................................................2

        A.      Mr. Stitsky's Fraud Convictions and Sentence ...............................2

        B.      Mr. Stitsky's Request for Compassionate Release / Home Confinement to
                FCI Otisville Warden ...................................................................2

        C.      Otisville Warden's Denial of Compassionate Release/Home
                Confinement............................................................................5

        D.      No BOP Regional Office Response to Mr. Stitsky's Appeal Through the
                Coronavirus Pandemic .................................................................6

III.    ARGUMENT.................................................................................6

        I.      The Court Has Section 3582 Jurisdiction to Reduce Mr. Stitsky's Sentence....6

        II.     Mr. Stitsky Presents Extraordinary and Compelling Reasons for
                Compassionate Release ...............................................................10

                A.    COVID-19 is spreading in federal prisons and causing deaths........10

                B.    Federal courts are releasing prisoners across the country.............13

                C.    Mr. Stitsky meets the COVID-19 release standards set by the
                      Courts ...........................................................................19

        III.    The Remaining Criteria for Reducing the Length of Mr. Stitsky's Sentence
                Weigh Strongly in Favor of a Sentence Reduction ...............................21

                1.    Mr. Stitsky Is Not a "Danger" ............................................21

                2.    The Relevant § 3553(a) Factors Weigh Strongly in Favor of
                      Relief...........................................................................23

IV.     CONCLUSION.......................................................................23-24

## TABLE OF AUTHORITIES

**Cases**                                                         **Page(s)**

*Helling v. McKinney,*
 509 U.S. 25 (1993) ............................................................................. 12

*Granberry v. Greer,*
 481 U.S. 129, 134 (1987) ................................................................... 9

*Hendricks v. Zenon,*
 993 F.2d 664, 672 (9th Cir. 1993 ...................................................... 9

*Henslee v. Union Planters Nat'l Bank & Tr. Co. ,*
 335 U.S. 595 (1949) .......................................................................... 23

*Riley v. Rhay,*
 407 F.2d 496 (9th Cir. 1969) ............................................................. 12

*U.S. v. Gonzalez,*
 2020 WL 1536155 (E.D. Wash. 2020) ....................................... 7,9,10

*U.S.A. v. Michaels*, No. SACR 16-76-JVS
 2020 U.S. Dist. LEXIS 56239 (C.D. Cal. Mar. 26, 2020) ................. 18

*United States v. Amarrah*, No. 17-20464,
 2020 WL 2220008 (E.D. Mich. May 7, 2020) ................................... 15

*United States v. Ardila, No. 3:03-cr-264,*
 2020 WL 2097736 (D. Conn. May 1, 2020) ...................................... 16

*United States v. Avenatti*, No. SACR 19-61-JVS,
 2020 U.S. Dist. LEXIS 56258 (C.D. Cal. Mar. 25, 2020) ................. 18

*United States v. Barkman*, No. 3:19-cr-0052-RCJ-WGC
 2020 U.S. Dist. LEXIS 45628 (D. Nev. Mar. 17, 2020) .................... 17

*United States v. Bolston,*
 Case No. 1:18-cr-382-MLB, Dkt. No. 20 (N.D. Ga. Mar. 30, 2020) .... 15

*United States v. Burrill*, No. 17-cr-0491-RS-1,
 ECF No. 308 (N.D. Calif. Apr. 10, 2020) ......................................... 17

*United States v. Campagna, 16-cr-78,*
 2020 WL 1489829 (S.D.N.Y. Mar. 27, 2020) ............................... 9-10

*United States v. Cantu*, CRIMINAL ACTION NO. 1:05-CR-458-1
 2019 WL 2498923 (S.D. Tex. June 17, 2019) ..................................... 7

*United States v. Cantu-Rivera*, No. H-89-204,
 2019 WL 2578272 (S.D. Tex. June 24, 2019) ..................................... 7

*United States v. Coles*, No. 00-cr-20051,
 2020 WL 1976296 (C.D. Ill. Apr. 24, 2020) ..................................... 17

*United States v. Colvin,*
    2020 WL 1613943 (D. Conn. Apr. 2, 2020) ............................................................... 14-15,17

*United States v. Copeland*, No. 2:05-cr-135,
    DCN (D.S.C. Mar. 24, 2020) ......................................................................................... 10

*United States v. Early*, No. 09 CR 282,
    2020 WL 2112371 (N.D. Ill. May 4, 2020) ................................................................... 16

*United States v. Echevarria,* No. 3:17-cr-44,
    2020 WL 2113604 (D. Conn. May 4, 2020) .................................................................. 16

*United States v. Edwards,* No. 6:17-cr-3-NKM,
    Dkt. No. 134 (Apr. 2, 2020) .......................................................................................... 14

*United States v. Foster,* No. 1:14-cr-324-02,
    Dkt. No. 191 (M.D. Pa. Apr. 3, 2020) ........................................................................... 14

*United States v. Hakim,* No. 4:05-cr-40025-LLP
    Dkt. No. 158 (D.S.D. Apr. 6, 2020) ............................................................................... 14

*United States v. Hansen*, No. 17-cr-50062,
    2020 WL 2219068 (N.D. Ill. May 7, 2020) ................................................................... 15

*United States v. Hansen,*
    2020 WL 1703672 (E.D.N.Y. Apr. 8, 2020) ................................................................. 14

*United States v. Harris*, No. 19-cr-356,
    2020 U.S. Dist. LEXIS 55339, *2 (D.D.C. Mar. 26, 2020) ........................................... 18

*United States v. Hasanoff*, Case 10-CR-162 (KMW) ............................................................ 13

*United States v. Howard*, No. 4:15-cr-00018-BR,
    2020 U.S. Dist. LEXIS 59091 (S.D.N.Y. Apr. 2, 2020) ............................................ 15-16

*United States v. Jaffee*, No. 19-cr-88 (D.D.C. Mar. 26, 2020) ................................................ 18

*United States v. Kelly*, No. 3:13-CR-59-CWR-LRA-2
    2020 WL 2104241 (S.D. Miss. May 1, 2020) ........................................................... 16-17

*United States v. Marin*, No. 15-cr-252,
    Dkt. No. 1326 (E.D.N.Y. Mar. 30, 2020) ...................................................................... 15

*United States v. McCarthy,*
    2020 WL 1698732 (D. Conn. Apr. 8, 2020) .............................................................. 13-14

*United States v. McGraw*, No. 2:02-cr-00018-LJM-CMM-01,
    2019 WL 2059488 (S.D. Ind. May 9, 2019) .................................................................. 12

*United States v. Mclean*, No. 19-cr-380,
    Dkt. No. (D.D.C. Mar. 28, 2020) .................................................................................. 18

*United States v. Muniz*, CRIMINAL ACTION NO. 4:09-CR-0199-1,
    2020 WL 1540325 (S.D. Tex. Mar. 30, 2020) ............................................................ 9,17

*United States v. Pabon*, No. 17-165-1, 2020
    WL 2112265 (D. Mass. May 4, 2020) ........................................................................... 16

*United States v. Panton*,
  2020 WL 4505915 (S.D.N.Y. Aug. 4, 2020) ......................................................... 13

*United States v. Plunk*, Case No. 3:94-cr-36-TMB (D. Alaska Apr. 9, 2020)............................. 13

*United States v. Powell*, No. 1:94-cr-316-ESH,
  Dkt. No. 98 (D.D.C. Mar. 28, 2020)................................................................. 10,15

*United States v. Quintero*, No. 08-cr-6007L,
  2020 WL 2175171 (W.D.N.Y. May 6, 2020) ......................................................... 16

*United States v. Resnik*,
  2020 WL 1651508 (S.D.N.Y. Apr. 2, 2020) ......................................................7, 9,13

*United States v. Sawicz*, Case No. 08-cr-287,
  Dkt. No. 66 (E.D.N.Y. Apr. 10, 2020) ................................................................. 13

*United States v. Soto*, No. 1:18-cr-10086-IT,
  2020 WL 2104787 (D. Mass. May 1, 2020) ........................................................... 16

*United States v. Stephens*, No. 15-cr-95 (AJN),
  2020 WL 1295155 (S.D.N.Y. Mar. 18, 2020) ......................................................... 17

*United States v. Torres*,
  2020 WL 2815003 (S.D.N.Y. June 1, 2020) ...................................................... 13, 22

*United States v. Wilson Perez, 17-cr-513*,
  2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020) ......................................................... 7-9

*United States v. Zukerman* No. 1:16-cr-194-AT,
  Dkt. No. 116 (Apr. 3, 2020) ........................................................................... 14

## Statutes

18 U.S.C. § 3142 ............................................................................... 18, 21

18 U.S.C. § 3553 ............................................................................... 21, 23

18 U.S.C. § 3582 ......................................................................... 1-3, 6-8, 12, 23

28 U.S.C. § 2254................................................................................... 9

First Step Act of 2018, § 603 Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018) ................. 7

28 C.F.R. § 571.61(b) ............................................................................ 2, 8

## United States Sentencing Guidelines

U.S.S.G. § 1B1.1 .......................................................................... 1, 12, 20-21

**Other**

BOP Program Statement, 5050.50, Section 2(b)……………………………………..…...…2, 3, 8

https://covid19.who.int/?gclid=Cj0KCQjwreT8BRDTARIsAJLI0KK0PxYlPnMlNNvN0Bu2MJ
MqFUyCUGbFsqCtN6oUj44FfiGK_TBjRWAaAn4EEALw_wcB    ...................................... 10

https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html .................................. 11

https://www.nytimes.com/2020/03/16/opinion/coronavirus-in-jails.html ..................................11

http://sentencing.typepad.com/sentencing_law_and_policy/2020/03/nyc-board-of-correction-
calls-on-city-to-begin-the-process-of-releasing-certain-prisoners-asap-in-re.html; .....................11

https://www.businessinsider.com/la-county-releases-inmates-reduces-arrests-to-blunt-
coronavirus-spread-2020-3; https://www.turnto23.com/news/coronavirus/kcso-38-inmates-
released-in-response-to-covid-19 ...........................................................................................11

https://www.bop.gov/coronavirus/ ...........................................................................................11

https://www.who.int/westernpacific/emergencies/covid-19/information/high-risk-groups ..........20

https://www.politico.com/f/?id=00000171-4255-d6b1-a3f1-c6d51b810000 ...............................21

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-
publications/2017/20171207_Recidivism_Age.pdf ................................................... 22-23

https://www.bop.gov/policy/progstat/5050_050_EN.pdf………………………………....…2-3

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 06-CR-357-02 |
| | ) **Honorable Kimba M. Wood** |
| IRVING STITSKY et. al., | ) |
| | ) |
| Defendant. | ) |

## MOTION AND MEMORANDUM TO REDUCE SENTENCE
## PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

Defendant, IRVING STITSKY ("Mr. Stitsky"), respectfully moves this Court for an order reducing his sentence to time served based on the "extraordinary and compelling reasons" discussed below, pursuant to the newly amended 18 U.S.C. § 3582(c)(1)(A)(i) as well as the United States Sentencing Guidelines. U.S.S.G. § 1B1.13. In light of the Coronavirus pandemic—which in part prompts the requested relief—Mr. Stitsky's motion can and should be handled on an expedited basis so as to save his life.

### INTRODUCTION

Mr. Stitsky, 66, is a non-violent offender who has served over 10 years of his sentence, has developed into a mentor and model inmate, and is currently incarcerated at FCI Otisville. Mr. Stitsky has a projected release date in the year 2082 – an effective life sentence. Unfortunately, FCI Otisville is one of the federal prisons that has already seen a covid-19 outbreak, and cases are on the rise again. As the Court knows, prisoners are at heightened risk of contracting, and dying from, coronavirus. That public officials should be subtracting from, rather than adding to, prison population density during the crisis is perhaps the sole point of agreement uniting everyone all over the country to prison officials in Colombia and Israel, to judges in the United States, and even

1

U.S. Attorney General William Barr.  That's particularly true of inmates like Mr. Stitsky, placing him at greater risk to the coronavirus respiratory disease - especially when coupled with Mr. Stitsky's vulnerable age, and preexisting health conditions including, *inter alia*, diabetes, chronic kidney disease, high cholesterol, hyperglycemia, osteoarthrosis, and high blood pressure. Today, over a decade later, Mr. Stitsky is deserving of a "second look" and a reduced sentence. As detailed below, this Court is now authorized to take such a "second look" and is also empowered to reduce Mr. Stitsky's sentence to time served, or alternatively, release to home confinement.

## FACTUAL BACKGROUND

### A.      Mr. Stitsky's Fraud Convictions and Sentence

Mr. Stitsky was convicted by a jury in 2009 before Your Honor, on four counts of securities fraud, mail fraud, and wire fraud, and one count of conspiracy to commit these frauds.

As the Court will recall, in 2010 Mr. Stitsky was then sentenced to 85 years of imprisonment, consisting of four consecutive 20-year sentences and a fifth consecutive term of five years. At the time of his sentencing, Mr. Stitsky was 55 years old, meaning he would theoretically be incarcerated until the age of 140, effectively a life sentence.

### B.      Mr. Stitsky's Request for Compassionate Release and/or Home Confinement to FCI Otisville Warden

On April 13, 2020, this office submitted a compassionate release/reduction in sentence request to the warden of FCI Otisville on behalf of Mr. Stitsky.  Annexed hereto as **Exhibit A** is Mr. Stitsky's Petition.

Both 18 U.S.C. § 3582, and the implementing regulations and program statements of the Bureau of Prisons ("BOP"), allow compassionate relief/reduction in sentence requests to be made by third parties on behalf of inmates.  See 18 U.S.S. § 3582(d)(2)(B)(ii); 28 C.F.R. § 571.61(b); BOP Program Statement 5050.50, Section 2(b), available at: https://www.bop.gov/policy/

2

progstat/5050_050_EN.pdf. For example, BOP's Program Statement 5050.50 states that "The Bureau of Prisons processes a request made by another person on behalf on an inmate in the same manner as an inmate's request." Program Statement, 5050.50, Section 2(b). That is consistent with the statutory language from which the implementing Program Statement is drawn. See 18 U.S.C. § 3582(d)(2)(B)(ii) ("The Bureau of Prisons shall . . . accept and process a request for sentence reduction that has been prepared and submitted on the defendant's behalf by the defendant's attorney, partner, or family member.")

Mr. Stitsky's compassionate relief request was predicated on several factors. First, as is often the case with a man of his age, Mr. Stitsky's pre-existing health conditions have grown increasingly worse in the past ten years during his incarceration. His old age, diabetes, chronic kidney disease, high cholesterol, hyperglycemia, osteoarthrosis, and high blood pressure – of course mark him as a prime candidate for not surviving the Covid-19 pandemic. Annexed hereto as **Exhibit B** *and* C are recent medical records from FCI Otisville and a psychiatric assessment of Mr. Stitsky, respectively.[1]

Additionally, over the past several years, Mr. Stitsky presents with all the tell-tale signs of Parkinson's disease or a similar syndrome. At times, he can be seen visibly shaking uncontrollably. His ability to properly function on a day-to-day basis has progressively diminished as his motor skills have deteriorated, and simple everyday tasks have become exceedingly difficult and Mr. Stitsky is now sadly often confined to his bunk.

Second, during his incarceration, Mr. Stitsky has demonstrated an outstanding record of rehabilitation. Mr. Stitsky has not only participated, but has taken leadership roles in, a voluminous

---

[1] In Mr. Stitsky's psychiatric assessment, Dr. Mills highlights how "Moshe ("Mark") Shapiro separately to [him] that he had wrongly allowed his former business partner (and former co-defendant) [Mr. Stitsky] to be convicted for a crime that he, Mr. Shapiro, had in fact committed.

amount of positive and rehabilitative programs including but not limited to; facilitating the Victim Impact Panel for over 9 years, facilitating parenting programs to teach younger inmates how to be good and effective parents, and participating in and facilitating meetings for *Toast,* a public speaking program in the facility. Annexed hereto as **Exhibit D** is Mr. Stitsky's progress report, his most recent individualized reentry plan - program review, a recommendation letter from the previous Warden of FCI Otisville, and certifications of completion for many of the programs he has facilitated and/or participated in during his incarceration. As is noted in Mr. Stitsky's individualized program review, as of September 2020, he has continued to make the most productive use of his time by educating himself and is currently enrolled in an array of classes, including, "in cell digestive system, in cell intro to diabetes, in cell intro to hepatitis, history of ceramics, the civil war class, and the human muscular system." *See* Exhibit D. Mr. Stitsky's drive to better himself and determination to learn as much as he can while incarcerated is inspiring and has even had a positive effect on other inmates Mr. Stitsky is housed with.

Moreover, if Mr. Stitsky's request for compassionate release is granted, he would live with his sister Ellen Stitsky Hogan at her home located at █████████████████, Danbury CT 06810. Further, Mr. Stitsky has an extensive support system made up of both family and longtime friends. Annexed hereto as **Exhibit E** are letters from family and friends in support of Mr. Stitsky's release. Likewise, the words of Mr. Stitsky's family reflect his full, complete, and unconditional rehabilitation and remorse:

4

- "My father has become the most positive, spiritual person I know. . . [he] is always apologetic for missing out on those life experiences, and remains extremely positive that things will eventually fall into place and he will be able to come home to us. . . [although] it has been very difficult for all of us, especially with the passing of our mother this past February."

- Aliza Stitsky – Daughter<br>
(Exhibit E)

- "He has become religious over these past years and I think that has taught him to see the errors of his past. . . He has asked everyone for forgiveness, including friends and family. . ."

- Janyce Selkin – Sister<br>
(Exhibit E)

- "He would tell me if I was going to send him commissary money for holiday time or birthday, could I please send something to the grandchildren instead. Everything is with the thoughts of another person not for himself. He has found his belief in God over these past years and I think that has helped him to see the importance and the consequences of his actions. He has also spent time inside helping others to realize how their crimes impacted others."

- Ellen Hogan – Sister<br>
Exhibit E)

As such, Mr. Stitsky's entire family is ready, willing, and able to support him financially upon his return to society and assist him in retaining medical insurance and care for his sundry ailments.

### C.     FCI Otisville Warden's Denial of Compassionate Release and/or Release to Home Confinement

On June 8, 2020, 56 days after this office submitted its petition for compassionate release, Warden Petrucci of FCI Otisville denied Mr. Stitsky's Petition without any justification or substantive basis for said denial. Annexed hereto as **Exhibit F** is Warden Petrucci's Denial letter.[2]

---

[2] It should be noted that in Warden Petrucci's letter of denial, Mr. Stitsky is listed under the wrong inmate register number. *See* Exhibit F. This clerical error may have had a substantive effect as the register number listed for Mr. Stitsky belongs to a 55-year old inmate who does not meet the threshold criteria for compassionate release.

**D.      No BOP Regional Office Response to Mr. Stitsky's Appeal Through the Coronavirus Pandemic**

On June 26, 2020 pursuant to Warden Petrucci's denial letter, and within the time frame outlined by same, this office submitted an appeal to the BOP North East Regional Office in Philadelphia. Annexed hereto as **Exhibit G** is Mr. Stitsky's appeal to the BOP North East Regional Office (excluding attachments).

Unfortunately, over 135+ days have passed since Mr. Stitsky appealed his compassionate release denial to the BOP Regional Office. Now, well over 30 days have elapsed since the request was submitted, and to date, no decision has been rendered by the BOP. As such, there is an emergent need for Mr. Stitsky's request to be decided in light of his medical conditions, age, and extreme danger posed by the coronavirus pandemic, and for the reasons set forth in the argument below.

## ARGUMENT

**I.      The Court Has Section 3582 Jurisdiction to Reduce Mr. Stitsky's Sentence**

The compassionate release statute was first enacted as part of the Comprehensive Crime Control Act of 1984. It provided that a district court could not modify a final term of imprisonment except in four situations, one of which was the existence of "extraordinary and compelling reasons" warranting the reduction, as determined by the sentencing court. But although the courts have the final decision-making authority over whether a sentence would be reduced, the statute imposed a gatekeeper—that authority could be invoked only upon a motion by the Director of the BOP. Without such a motion, sentencing courts were powerless to reduce a prisoner's sentence, even if the court concluded that extraordinary and compelling reasons warranted the reduction. 18 U.S.C. § 3582(c)(1)(A)(i).

That changed when Congress enacted the First Step Act, which amended § 3582(c)(1)(A). *See* P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018). Under the amended statute, a court can now reduce a sentence for "extraordinary and compelling reasons" in two circumstances: (i) if the Director of the BOP files a motion requesting such relief; or (ii) "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). There is no requirement that an administrative appeal be disposed of before jurisdiction lies in the district court. *United States v. Resnik*, 2020 WL 1651508 (S.D.N.Y. Apr. 2, 2020) (Section 3582 jurisdiction exists if 30 days elapse with no BOP response to compassionate release request submitted to BOP counselor); *United States v. Wilson Perez*, 17-cr-513, 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020) (finding 30-day exhaustion rule futile where there is already a COVID-19 outbreak at facility and only several weeks remaining on sentence); *United States v. Teresa Ann Gonzalez*, 18-cr-232, 2020 WL 1536155 (E.D. Wash. Mar. 31, 2020) (same); *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *3 (S.D. Tex. June 17, 2019), *United States v. Cantu-Rivera*, No. CR H-89-204, 2019 WL 2578272, at *1 (S.D. Tex. June 24, 2019) (defendant's "petition . . . meets the requirement of a lapse of 30 days from the receipt by the warden of the defendant's facility . . . The court therefore has the authority to address the motion of the defendant.").

Here, jurisdiction exists because this office properly submitted a compassionate relief request on behalf of Mr. Stitsky to the FCI Otisville warden on April 13, 2020. Then, 56 days later, on June 8, 2020, the warden at FCI Otisville denied Mr. Stitsky's request for compassionate release. [3] *See* Exhibit F. Subsequently, pursuant to the denial by the warden of FCI Otisville, Mr.

---

[3] The BOP failed to issue a timely response to Mr. Stitsky's petition for compassionate release by responding almost 60 days later. *See* the First Step Act of 2018, §603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018)

Stitsky appealed his denial of Compassionate Release to the BOP North East Regional Office on June 26, 2020. Unfortunately, the BOP never moved for a sentence reduction, and to date, over 135+ days later, Mr. Stitsky has still not received a response to his appeal. See 18 U.S.C. § 3582(c)(1)(A); (d)(2)(B)(ii), (iii); 28 C.F.R. § 571.61(b); BOP Program Statement 5050.50, Section 2(b). Under the newly amended § 3582(c)(1)(A), Mr. Stitsky has standing to bring this motion because more than 30 days elapsed between his reduction-in-sentence appeal to the BOP Regional Office and a response.

Alternatively, even assuming, *arguendo*, that Mr. Stitsky has not exhausted the BOP's administrative remedies (although we emphasize that he has), there is an emergent need for Mr. Stitsky's request to be decided in light of his significant medical conditions and age and the extreme danger posed by the coronavirus pandemic. Other Courts are recognizing the time sensitivities associated with this virus ripping exponentially through our population, and overruling failure to exhaust objections from the Government and waiving the requirement. *See U.S. v. Perez*, Case 1:17-cr-00513-AT Document 98, filed 04/01/20:

> But the Government questions the Court's authority to act on Perez's application, arguing that he has not exhausted the administrative remedies under § 3582(c)(1)(A), which requires that a defendant seeking compassionate release present her application to the BOP and then either (1) administratively appeal an adverse result if the BOP does not agree that her sentence should be modified, or (2) wait for 30 days to pass. Gov't Letter at 3–4.
>
> On March 26, 2020, Perez submitted to the BOP her application for a sentence modification. ECF No. 96 at 4. To date, the BOP has not acted on that request. The Court holds, however, that Perez's exhaustion of the administrative process can be waived in light of the extraordinary threat posed—in her unique circumstances—by the COVID-19 pandemic. And the Court agrees with the parties that this threat also constitutes an extraordinary and compelling reason

---

(stating that courts have jurisdiction ". . . after the lapse of 30 days from the receipt of such a request by the Warden of the defendant's facility. . ."

to reduce Perez's sentence to time served. Accordingly, Perez's motion is GRANTED.

In *Perez*, the Court found all three bases for waiving exhaustion, and ruled to waive the requirement only six days into Perez's 30-day lapse period. Likewise, despite the exhaustion already undertaken by Mr. Stitsky, if the Court finds he has not fully exhausted the BOP's administrative remedies, he should nonetheless be excused.

In addition to waiver, there is a clear, wholly applicable exception to the exhaustion requirement. As noted in *Hendricks v. Zenon*, this Court can dispense with the administrative exhaustion requirement where there are "exceptional circumstances of peculiar urgency...." *Hendricks v. Zenon*, 993 F.2d 664, 672 (9th Cir. 1993) (quoting *Granberry v. Greer*, 481 U.S. 129, 134 (1987); *see also* 28 U.S.C. § 2254(b) (authorizing application for writ of habeas corpus in the absence of exhaustion of state remedies where "circumstances exist that render such process ineffective to protect the rights of the applicant."). The instant case is precisely what *Hendricks* anticipated. Mr. Stitsky presents "exceptional" circumstances of peculiar urgency given his underlying medical conditions cited *supra*, age, and vulnerability to the coronavirus.

Courts are recognizing that in the context of this emergency, strict application of exhaustion requirements, thus exposing people to heightened risk for the virus, is unwarranted, and are granting compassionate release requests. *See, e.g.*, *U.S. v. Gonzalez*, 2020 WL 1536155 (E.D. Washington); *U.S. v. Muniz*, Case 4:09-cr-00199 Document 578, filed 03/30/20 (S.D. Tex.) (reducing a 188-month sentence to time served); *Resnik*, 14-cr-810, Dkt. No. 461 (S.D.N.Y. Apr. 2, 2020) (Judge McMahon reducing six-year sentence to time served for 65-year-old man with diabetes); *Perez*, 17-cr-513, 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020) (Judge Torres reducing sentence to time served for man at MDC with medical complications); *United States v. Campagna*, 16-cr-78, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) (granting motion for COVID-19

compassionate release, substituting outstanding term of incarceration with home confinement for man with compromised immune system); *United States v. Teresa Ann Gonzalez*, 18-cr-232, 2020 WL 1536155 (E.D. Wash. Mar. 31, 2020) (reducing 10-month sentence to time served for 64-year-old defendant with chronic obstructive pulmonary disease); *United States v. Copeland*, No. 2:05-cr-135-DCN (D.S.C. Mar. 24, 2020) (granting compassionate release to defendant in part due to "Congress's desire for courts to release individuals the age defendant is, with the ailments that defendant has during this current pandemic"); *United States v. Powell*, No. 1:94-cr-316-ESH (Mar. 28, 2020) (granting unopposed motion for compassionate release in light of COVID-19 and finding it "would be futile" to require defendant to first exhaust administrative remedies).]

## II.     Mr. Stitsky Presents Extraordinary and Compelling Reasons for Compassionate Release

### A.     COVID-19 is spreading in federal prisons and causing deaths

As of this filing—and as the Court well knows—the COVID-19 respiratory disease has exponentially spread to over 200 countries, infecting more than forty-three million people around the globe, with more than 1.1 million deaths. *See* World Health Organization, Coronavirus disease Dashboard Report, *available at*:https://covid19.who.int/?gclid=Cj0KCQjwreT8BRD TARIsAJLI0KK0PxYlPnMlNNvN0Bu2MJMqFUyCUGbFsqCtN6oUj44FfiGK_TBjRWAaAn4 EEALw_wcB

As the Court also knows, medical and legal experts, judges, lawyers, and others have sounded increasingly shrill alarms about the heightened contagion risk associated with prisons, both to inmates and to society at large. This is due to prison population density, inability to social-distance while incarcerated, the use of shared communal areas for eating and bathing, and hand sanitizer's classification as contraband.

10

Already, cities and counties like Los Angeles, New York, and Baltimore have released thousands of prisoners. *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times, Mar. 31, 2020, available at: https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *See also An Epicenter of the Pandemic Will Be Jails and Prisons, If Inaction Continues*, N.Y. Times, Mar. 16, 2020, available at https://www.nytimes.com/2020/03/16/opinion /coronavirus-in-jails.html; *NYC Board of Correction Calls on City to Begin Process of Releasing Certain Prisoners in Response to COVID-19*, Sentencing Law and Policy blog, available at: http://sentencing.typepad.com/sentencing_law_and_policy/2020/03/nyc-board-of-correction-calls-on-city-to-begin-the-process-of-releasing-certain-prisoners-asap-in-re.html;https://www.businessinsider.com/la-county-releases-inmates-reduces-arrests-to-blunt-coronavirus-spread-2020-3;https://www.turnto23.com/news/coronavirus/kcso-38-inmates-released-in-response-to-covid-19.

On May 4, a three-judge panel of the Sixth Circuit Court of Appeals ruled unanimously to affirm a district court order requiring the transfer and release of 837 medically vulnerable prisoners from Elkton FCI in Ohio, refusing a Bureau of Prisons request to stay enforcement of the order.

As of November 1, 2020, 2,003 federal inmates have officially tested positive for the virus, as have 873 BOP staff. *See* Federal Bureau of Prisons, Covid-19 Coronavirus, available at: https://www.bop.gov/coronavirus/. Due to under testing, among other factors, this data is almost surely underreported. At least 129 federal prisoners have died of the virus. *Id.*

With such broad agreement about the untenable risk to prisoners, and evidence of the actual impact, it stands to reason that prisoners particularly susceptible to the virus should be released on compassionate grounds expeditiously.

11

Moreover, the terrifying and dangerous situation that Mr. Stitsky faces poses Eighth Amendment and Due Process issues. *See Helling v. McKinney*, 509 U.S. 25 (1993); *Riley v. Rhay*, 407 F.2d 496, 497 (9th Cir. 1969). This Court should ensure that Mr. Stitsky is not subjected to the egregious cruelty of the virus by granting his compassionate release. In this case in particular, denying Mr. Stitsky appropriate medical care for his health conditions and exposing him to an additional dangerous disease poses enormous Fourteenth Amendment concerns as well.

As previously mentioned, the instant motion is sought also in accordance with section 1B1.13 of the U.S. Sentencing Guidelines. (U.S. Sentencing Guidelines Manual § 1B1.13(2) (U.S. Sentencing Comm'n 2018). Specifically, as outlined in section 1B1, another extraordinary and compelling reason for compassionate release exists when; (1) a prisoner is at least 65 years old, and (2) is experiencing a serious deterioration in physical or mental health because of the aging process, and (3) has served at least 10 years or 75% of his or her term of imprisonment, whichever is less. Furthermore, in  *United States v. McGraw*, Case No. 02-CR-00018, 2019 WL 2059488 (S.D. Ind. May 9, 2019) the court stated that the First Step Act's modification of 18 U.S.C. § 3582(c)(1)(A) "now provides an avenue for a defendant to seek a [sentence reduction directly] Case 1:89-cr-00346-LAP Document 910 Filed 05/26/20 Page 29 of 49 22 from the Court" and that "courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." *Id.* at *1. It then reduced that defendant's life sentence (for possession with intent to distribute methamphetamine) to time-served (after service of more than 17 years imprisonment) based principally on "his serious medical conditions," even though he had a long criminal history and had occupied a "leadership" position in the Diablos motorcycle gang. *Id.* at 2-6.

### B.    Federal courts are releasing prisoners across the country

Compassionate release is a form of relief courts are granting to address, *inter alia*, prison Covid-19 exposure. Courts across our nation have granted compassionate release undertaking a case by case analysis that in some cases appear to have provided compassionate release to inmates who might arguably present a far greater risk to the community, then your Defendant herein. By analyzing Mr. Stitsky's case under the case-by-case approach, justice and mercy so call for his compassionate release. In fact, just last month, as Your Honor will recall, this Court granted compassionate release to Defendant Sabirhan Hasanoff, an inmate who pled guilty of attempting to provide a terrorist organization with material support and resources. *United States v. Hasanoff*, Case No. 10-CR-162 (KMW) (granting compassionate relief / time served to defendant who pled guilty to aiding a terrorist organization). *See also Resnik*, 2020 WL 1651508 (S.D.N.Y. Apr. 2, 2020) ("Releasing a prisoner who is for all practical purposes not deserving of compassionate release during normal times is all but mandated in the age of COVID-19"); *United States v. Panton* 2020 WL 4505915 (S.D.N.Y. Aug 4, 2020) (granting compassionate release for defendant with a life sentence and finding that extraordinary and compelling reasons existed despite defendant [*not]* at the highest risk categories for Covid-19) *United States v. Torres*, 2020 WL 2815003 (S.D.N.Y. June 1, 2020) (reducing a life sentence to time served for defendant who is at serious risk from Covid-19) *United States v. Sawicz*, Case No. 08-cr-287, Dkt. No. 66 (E.D.N.Y. Apr. 10, 2020) (releasing child pornography offender based on "[t]he COVID-19 outbreak at FCI Danbury, combined with the fact that the defendant is at risk of suffering severe complications if he were to contract COVID-19 because of his hypertension"); *United States v. Plunk*, Case No. 3:94-cr-36-TMB (D. Alaska Apr. 9, 2020) (*reducing two concurrent life terms to time served* in light of COVID-19); *United States v. McCarthy*, 2020 WL 1698732 (D. Conn. Apr. 8, 2020) (granting

13

compassionate release and waiving exhaustion requirement for defendant at serious risk from COVID-19); *United States v. Hansen*, 2020 WL 1703672 (E.D.N.Y. Apr. 8, 2020) (COVID-19 pandemic and medical problems justifies 7-month reduction in sentence); *United States v. Hakim*, No. 4:05-cr-40025-LLP, Dkt. No. 158 (D.S.D. Apr. 6, 2020) (reducing sentence by an extra 40 months under the First Step Act in light of the extreme danger posed by COVID-19); *United States v. Zukerman*, No. 1:16-cr-194-AT, Dkt. No. 116 (Apr. 3, 2020) (waiving exhaustion and granting immediate compassionate release in light of COVID-19 to defendant convicted in multimillion-dollar fraud scheme motivated by greed; "The severity of Zukerman's conduct remains unchanged. What has changed, however, is the environment where Zukerman is serving his sentence. When the Court sentenced Zukerman, the Court did not intend for that sentence to 'include a great and unforeseen risk of severe illness or death' brought on by a global pandemic"); *United States v. Foster*, No. 1:14-cr-324-02, Dkt. No. 191 (M.D. Pa. Apr. 3, 2020) (noting the "unprecedented" circumstances facing "our prison system" and finding that COVID-19 is an extraordinary and compelling basis for release; indeed, "[n]o rationale is more compelling or extraordinary"); *United States v. Edwards*, No. 6:17-cr-3-NKM, Dkt. No. 134 (Apr. 2, 2020) (granting compassionate release; "[h]ad the Court known when it sentenced Defendant in 2018 that the final 18 months of his term in federal prison would expose him to a heightened and substantial risk presented by the COVID-19 pandemic on account of Defendant's compromised immune system, the Court would not have sentenced him to the latter 18 months"); *United States v. Colvin*, 2020 WL 1613943 (D. Conn. Apr. 2, 2020) (noting defendant's multiple health conditions and inability to social-distance in prison and concluding that "[i]n light of the expectation that the COVID-19 pandemic will continue to grow and spread over the next several weeks, the Court concludes that the risks faced by Defendant will be minimized by her immediate

release to home"); *United States v. Marin*, No. 15-cr-252, Dkt. No. 1326 (E.D.N.Y. Mar. 30, 2020)

("[F]or the reasons stated in his motion, including his advanced age, significantly deteriorating

health, elevated risk of dire health consequences due to the current COVID-19 outbreak, status as

a non-violent offender, and service of 80% of his original sentence…"); *United States v. Bolston*,

Case No. 1:18-cr-382-MLB, Dkt. No. 20 (N.D. Ga. Mar. 30, 2020) (releasing defendant in part

because "the danger inherent in his continued incarceration at the R.A. Deyton Detention Facility

. . . during the COVID-19 outbreak justif[y] his immediate release from custody"); *United States

v. Powell*, No. 1:94-cr-316-ESH, Dkt. No. 98 (D.D.C. Mar. 28, 2020) (granting unopposed motion

for compassionate release in light of COVID-19 and finding it "would be futile" to require

defendant to first exhaust in light of open misdemeanor case); *United States v. Hansen,* No. 17-cr-

50062, 2020 WL 2219068 (N.D. Ill. May 7, 2020) ("[T]he Court cannot discount the risk to Hansen

if he contracts coronavirus, as reliable information places him in a higher-risk category.

Specifically, the presentence report documents that he suffers from diabetes, hypertension, high

cholesterol, kidney disease, and chronic obstructive pulmonary disease, all of which are confirmed

risk factors for serious illness if one contracts coronavirus."); *United States v. Amarrah*, No. 17-

20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020) (shortening 60-month sentence after only 21

months because Amarrah's "Type II diabetes, hypertensive heart disease, cardiac arrhythmia,

obstructive sleep apnea, and asthma" put him a substantial risk should he contract COVID-19 even

though facility had no reported cases); *United States v. Howard*, No. 4:15-cr-00018-BR, 2020 WL

2200855 (E.D.N.C. May 6, 2020) (finding 52-year-old with "chronic obstructive pulmonary

disease ('COPD'), Type II diabetes, obesity, Stage 3 kidney disease, edema, open wounds on his

legs, and a diaphragmatic hernia" demonstrated extraordinary and compelling circumstances due

to COVID-19 even though his conditions neither constituted terminal illness nor prevented him

15

from engaging in most of his daily activities without assistance); *United States v. Quintero*, No. 08-cr-6007L, 2020 WL 2175171 (W.D.N.Y. May 6, 2020) (granting compassionate release to man who "suffers from diabetes, a compromised immune system, obesity, and hypertension... which make him more susceptible than another to contract the virus."); *United States v. Pabon*, No. 17-165-1, 2020 WL 2112265, at *1 (D Mass. May 4, 2020) (holding that for the 54-year-old defendant who suffers from "diabetes, hypertension, hemophilia, atopic dermatitis, gastroesophageal reflux disease, peptic ulcer, and diverticulitis" "nothing could be more extraordinary and compelling than this pandemic"); *United States v. Echevarria,* No. 3:17-cr-44 (MPS), 2020 WL 2113604 (D Conn. May 4, 2020) (finding 49-year-old with pre-existing respiratory condition—a history of bronchial asthma—combined with the increased risk of COVID-19 in prisons had demonstrated extraordinary and compelling reasons for relief); *United States v. Early*, No. 09 CR 282, 2020 WL 2112371, at *2 (N.D. Ill. May 4, 2020) ("the Court cannot discount the risk to Mr. Early if he contracts coronavirus, as reliable information places him in a higher-risk category [62, diabetes and hypertension]. This, in the Court's view, qualifies as an extraordinary reason warranting consideration of a reduction of Mr. Early's sentence."); *United States v. Ardila,* No. 3:03-cr-264 (SRU), 2020 WL 2097736, at *2 (D Conn. May 1, 2020) (finding 71-year-old's medical conditions (diabetes, cardiovascular disease, hypertension, asthma, and obesity) and "current conditions of confinement constitute extraordinary and compelling reasons to reduce his sentence"); *United States v. Soto*, No. 1:18-cr-10086-IT, 2020 WL 2104787 (D. Mass. May 1, 2020) (finding inmate with hypertension at facility with COVID-19 cases located in New York had shown extraordinary and compelling reasons for relief); *United States v. Kelly*, No. 3:13-CR-59-CWR-LRA-2, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (granting compassionate release to young man without health issues at Oakdale I because "it has become increasingly apparent that the BOP has

16

failed to control the outbreak at Oakdale I. … Given the steadily growing death toll and the apparent continued spread of the disease at Oakdale I, COVID-19 creates an 'extraordinary and compelling reason' potentially warranting a reduced sentence."); *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296 (C.D. Ill. Apr. 24, 2020) (granting compassionate release to inmate who had served 19 years of 24-year sentence based on his vulnerability to COVID-19 because of hypertension, prostate issues, bladder issues, and a dental infection and because he is prediabetic); *United States v. Burrill*, No. 17-cr-0491-RS-1, ECF No. 308 (N.D. Calif. Apr. 10, 2020) (granting compassionate release because defendant, 75, "suffers from asthma, high blood pressure, high cholesterol, diabetes, diverticulosis, blood clots, hearing loss, glaucoma, cataracts, and lower back nerve pain," placing him at a "heightened risk of becoming severely ill from COVID-19"); *United States v. Colvin*, No. 3:19-cr-179 (JBA), 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020) (citing COVID-19 and defendant's medical conditions and "conclud[ing] that Defendant has demonstrated extraordinary and compelling reasons justifying her immediate release"); *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020) ("Because Defendant is at high-risk for severe illness from COVID-19 and because inmates in detention facilities are particularly vulnerable to infection, the Court finds that Defendant has demonstrated an extraordinary and compelling reason for compassionate release.").

It's not only compassionate release; courts across the nation are relaxing pre- and post-trial detention decisions across the board to account for the pandemic. See *United States v. Stephens*, 2020 WL 1295155, *2 (S.D.N.Y. Mar. 18, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic"); *United States v. Barkman*, Case No. 19-cr-00052, 2020 U.S. Dist. LEXIS 45628, *10-11 (D. Nev. Mar. 17, 2020) (order granting emergency motion to modify intermittent confinement as a condition of probation);

17

*United States v. Avenatti*, No. 8:19-cr-61, 2020 U.S. Dist. LEXIS 56258, *1(C.D. Cal. Mar. 25, 2020) (sua sponte inviting Avenatti to reapply for release after denying his motion for the release, stating, "[i]n light of the evolving nature of the Covid-19 pandemic, particularly in the greater New York City area, the Court invites Avenatti to apply ex parte for reconsideration of the Court's order" denying release); *United States v. Michaels*, 8:16-cr-76, 2020 U.S. Dist. LEXIS 56239, *1 (C.D. Cal. Mar. 26, 2020) (finding that Covid-19 is a "compelling reason" for release and that "Michaels has demonstrated that the COVID-19 virus and its effects in California constitute 'another compelling reason'" justifying temporary release under § 3142(i)); *United States v. Harris*, 19-cr-356, 2020 U.S. Dist. LEXIS 55339, *2 (D.D.C. Mar. 26, 2020) ("The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by Defendant's release to home confinement on . . . strict conditions."); *United States v. Jaffee*, No. 19-cr-88 (D.D.C. Mar. 26, 2020) (releasing defendant with criminal history in gun and drug case, citing "palpable" risk of spread in jail and "real" risk of "overburdening the jail's healthcare resources" . . . "[T]he Court is . . . convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement."); *United States v. Mclean,* No. 19-cr-380, Dkt. No. (D.D.C. Mar. 28, 2020) ("As counsel for the Defendant candidly concedes, the facts and evidence that the Court previously weighed in concluding that Defendant posed a danger to the community have not changed – with one exception. That one exception – COVID-19 – however, not only rebuts the statutory presumption of dangerousness, *see* 18 U.S.C. § 3142(e), but tilts the balance in favor of release.").

### C.     Mr. Stitsky meets the COVID-19 release standards set by the courts

At 66 years old, Mr. Stitsky is incarcerated at a facility where there is a current outbreak

of a deadly respiratory disease, with cases on the rise once again. Not only is Mr. Stitsky in a

vulnerable age group, but he also suffers from diabetes, chronic kidney disease, high cholesterol,

hyperglycemia, osteoarthrosis, high blood pressure, and has been experiencing the early onset

stages of what appears to be Parkinson's disease, all of which place him at a far greater risk for

contracting coronavirus, and not surviving the pandemic.   In fact, just earlier this year, Dr.

Alphonso Linley of FCI Otisville, in response to an alarmingly high blood sugar level, "placed

[Mr. Stitsky] on metformin after his HbA1C was found to be 6.3. . ." *See* Exhibit B. This, however,

is not the only medications Mr. Stitsky must take to survive. As also noted in his medical records,

in March of this year, Dr. Linley provided Mr. Stitsky with renewed prescriptions for, *inter alia*;

"Atorvastatin," used to treat his high cholesterol; "Cholecalciferol," used to treat his vitamin D

deficiency as Mr. Stitsky does not produce enough to maintain adequate health; and

"Acetaminophen,: used to treat his severe "chronic pain" caused by his Osteoarthrosis. *Id.*

Additionally, in May of this year, Dr. Linley highlighted, again, that Mr. Stitsky has had a

"chronic kidney problem" since 2018. *Id.* Dr. Linley goes on to emphasize "[Mr. Stitsky's] kidney

function started deteriorating. . ." once he began his nsaid use. *Id.*

Under the compassionate release case law cited *supra*, the aforementioned, alone, would

qualify as an extraordinary and compelling reason warranting a reduction in sentence.

Indeed, the World Health Organization has stated that Covid-19 is often more severe in

people who are older than 60 years of age *or* who have underlying health conditions such as heart

disease and diabetes.[4] Mr. Stitsky, unfortunately, exceeds all criteria as he is 66 years old, and suffers from an array of medical conditions, all of which have been recited *supra*. *See* Exhibit B.

Mr. Stitsky also meets the criteria for "extraordinary and compelling" release under § 1B1.13 of the U.S. Sentencing Guidelines Manual. Mr. Stitsky is now 66 years old, is experiencing a serious deterioration in physical health because of the aging process (namely Parkinson's disease in addition to his underlying health complications), and has served over 10 years of his sentence. Therefore, Mr. Stitsky clearly satisfies the criteria as outlined by the BOP.

Mr. Stitsky also satisfies Attorney General Barr's criteria for prisoner release to home confinement as set forth in his directives to the BOP, dated March 26 and April 3. Specifically, Mr. Stitsky substantially satisfies the criteria in the Attorney General's March 26 memorandum because:

- At 66 years old, he is at increased risk of contracting Covid-19 in prison;
- FCI Otisville is a medium security facility linked to a camp;
- He has not engaged in violent or gang-related activity in prison;
- Although his PATTERN score reflects the amount of money in his white collar case in conjunction with the convictions, he is clearly not a recidivist risk, has engaged in intense rehabilitation during his incarceration, and as the Attorney General stated, each individual case should be decided in totality of the circumstances on a case by case basis;
- His crimes of conviction were nonviolent and economic;
- Lastly, Mr. Stitsky has a "demonstrated and verifiable reentry plan." Specifically, as previously mentioned, if Mr. Stitsky were granted compassionate release, he would live with his sister Ellen Stitsky Hogan at her home located at ⬛⬛⬛⬛ Danbury, CT 06810 (⬛⬛⬛⬛ who would pick him up from FCI Otisville upon his release. Furthermore, Mr. Stitsky has an extensive support system made up of both family and longtime friends who are willing to support him financially, and assist him with retaining medical insurance and care for his ailments. Additionally, subject to Mr. Stitsky's health constraints, he has offers of employment from multiple employers ready, willing and able to accommodate his health related issues.

---

[4] Covid-19: Vulnerable and High Risk Groups, available at: https://www.who.int/westernpacific/emergencies/covid-19/information/high-risk-groups

In his memorandum dated April 3, Attorney General Barr implemented his new authority under the CARES Act to direct the BOP to "immediately" transfer to home confinement those prisoners incarcerated at facilities where COVID-19 is "materially affecting operations," provided the prisoner has a "suitable confinement plan." *See* Memorandum of U.S. Attorney General William Barr, dated Apr. 3, 2020, *available at*:  https://www.politico.com/f/?id=00000171-4255-d6b1-a3f1-c6d51b810000.  As explained *supra*, COVID-19 is "materially affecting operations" at FCI Otisville, the prison where Mr. Stitsky is currently incarcerated.  And, as Mr. Stitsky has shown, he has a "demonstrated and verifiable reentry plan."

If the Court is so inclined, it could impose conditions on Mr. Stitsky's compassionate release, including remaining in-home confinement for a period of time; allowing Mr. Stitsky to leave the home only for essential reasons such as grocery shopping, medical appointments, and other essential caretaking. The Court could also impose a form of post release supervision to monitor Mr. Stitsky's progress by having him file periodic status reports with the Court.

## III.    The Remaining Criteria for Reducing the Length of Mr. Stitsky's Sentence Weigh Strongly in Favor of a Sentence Reduction

In determining whether Mr. Stitsky's sentence should be reduced, the Court must decide, *inter alia*, whether he presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).  U.S.S.G. § 1B1.13 (2).  If he does not, the Court looks to the factors outlined in 18 U.S.C. § 3553(a).  All these factors weigh strongly in favor of relief in Mr. Stitsky's case.

### 1.    *Mr. Stitsky Is Not a "Danger"*

Mr. Stitsky is not a danger to the community. He was convicted of nonviolent, financial crimes. In the recommendation letter from the previous warden of FCI Otisville, Warden Recktenwald made it a point to express Mr. Stitsky's "commitment to change and desire to

21

successfully re-enter society." *See* Exhibit D. During his 10+ years of incarceration, he has dedicated himself to becoming a mentor to the younger population and the proverbial model inmate. Mr. Stitsky has engaged in and facilitated an extensive list of rehabilitative programs offered by the BOP. *See* Exhibit D. At 66 years old. Mr. Stitsky has experienced a deep-seated personal change, has developed a love for helping his fellow man achieve their own personal goals, and as such does not pose a danger to any other person or the community.

Although Congress provided that rehabilitation alone could not serve as an "extraordinary and compelling reason" for a sentence reduction, Mr. Stitsky's rehabilitative accomplishments are significant and noteworthy because he engaged in all of them without any tangible incentive other than self-improvement, given that his *effective* life sentence meant that he could neither earn any "good-time" credit, nor receive any other sentence reduction benefit. To be clear, Mr. Stitsky, in the face of an *effective* life sentence, maintained a positive outlook and attitude, sought to improve himself and was motivated to do so notwithstanding his circumstances.

Further, although rehabilitation alone is not usually considered an extraordinary and compelling reason, courts have recognized that rehabilitation, when coupled with other factors, can constitute, collectively, extraordinary and compelling circumstances. *Torres*, 2020 WL 2815003. Therefore, Mr. Stitsky's underlying health conditions, his vulnerability to the covid-19 pandemic, and his extensive record of rehabilitation, when combined, present extraordinary and compelling circumstances, warranting compassionate release, or in the alternative, at least release to home confinement.

The Sentencing Commission's empirical research underscores the aforementioned point as well. As age increases, recidivism by every measure decreases. *See* United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders*, p. 30 (December

2017), *available at* https://www.ussc.gov/sites/default/files/pdf/research-andpublications/research publications/2017/20171207_Recidivism-Age.pdf ("Among offenders released younger than age 21, 67.6 percent were rearrested *compared to 13.4 percent of those released age 65 or older*. The pattern is consistent across age groups, as age increases recidivism by any measure declined. Older offenders who do recidivate do so later in the follow-up period, do so less frequently, and have less serious recidivism offenses on average.") (emphasis added).

2.      *The Relevant § 3553(a) Factors Weigh Strongly in Favor of Relief*

Mr. Stitsky has accepted responsibility for his crime. Because he will die in prison if not granted compassionate release, and lives every day in fear of how his family will cope in hard times, the punishment he has received is sufficient to deter future misconduct.   18 U.S.C. § 3553(a)(2)(B).  He is ashamed of the pain he has caused to the fraud's victims and to his family.

### CONCLUSION

Given Mr. Stitsky's capacity for change and his demonstrated rehabilitation, there is little reason – particularly given the Covid-19 pandemic and the risk posed by same to inmates like Mr. Stitsky, who are housed in crowded BOP facilities that are breeding grounds for infection and disease and who suffer from a number of medical conditions that increase his covid-19 risk – for continuing to warehouse people like Mr. Stitsky, who have been adequately punished, who have paid their "debt to society" and who no longer pose a danger to any individual or society. As Justice Felix Frankfurter put it roughly 70 years ago, "[w]isdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters Nat'l Bank & Trust Co.*, 335 U.S. 595 (1949) *Frankfurter, K., dissenting).

Accordingly and for all the foregoing reasons, we respectfully submit that this Court should enter an Order, pursuant to 18 U.S.C. § 3582(c)(1)(A), granting Mr. Stitsky Compassionate

Release, reducing his 85-year sentence to time served, or alternatively, granting him release to home confinement,  and for all other relief that his Court deems just and proper.

Date:          November 11, 2020
               Garden City, New York                    Respectfully submitted,

                                                        /s/ David M. Schwartz
                                                        David M. Schwartz
                                                        Gerstman Schwartz LLP
                                                        1399 Franklin Avenue Ste 200
                                                        Garden City, New York 11530
                                                        Tel. No.: (516) 880-8170
                                                        Dschwartz@gerstmanschwartz.com

                                                        *Counsel for Defendant Irving Stitsky*