# EXHIBIT C

# MARK J. MILLS, JD, MD

4727 Wedgewood St.
Raleigh, NC 27612
Phone (301) 310-2335
mjmillsjdmd@gmail.com

C O N F I D E N T I A L

October 17, 2019/Amended, June 10, 2020[1]

**Via Electronic Mail**

Gary Apfel, Esq.
Special Counsel
Pepper Hamilton, LLP
Two California Plaza
Suite 3400
Los Angeles, CA 90071-3427

    *Re: Psychiatric assessment of Irving ("Irv") Stitsky*

Dear Mr. Apfel:

**Introduction.** You asked[2] that I evaluate the above-referenced individual, Mr. Stitsky, who is presently serving time for a financial fraud (wire, mail and securities) that he maintains he did not commit. Since many convicted criminals maintain their innocence, I would not have been particularly moved by his statements; however, Moshe ("Mark") Shapiro separately confirmed to me that he had wrongly allowed his former business partner (and former co-defendant) to be convicted for a crime that he, Mr. Shapiro, had in fact committed.

---

[1] In this regard, Elan A. Ginzberg, J,D., of the firm Gerstman Schwartz, LLP, contacted me yesterday by phone and asked if I would be willing to correct a typographical error in footnote, number 4, and to clarify the initial paragraph in my discussion to indicate that Mr. Stitsky had not planned the criminal activity for which he was convicted. Because that was the case, I answered in the affirmative, and this amended version of my original letter reflects those minor corrections.

[2] Your request was transmitted through the Aleph Institute. The Institute is a nonprofit national education, humanitarian and advocacy organization founded in 1981. Its primary goal is to enhanced the dignity and humanity of individual involved in the criminal justice system by promoting rehabilitation programs, alternatives to incarceration and by preventing recidivism. The Institute's programs counsel offenders and their families to reduce necessary periods of incarceration, and to provide moral/ethical education.

## MARK J. MILLS, JD, MD

Gary Apfel, Esq.
Re: *Irving Stitsky*
October 15, 2019/Amended, June 10, 2020
Page 2 of 5

To assess Mr. Stitsky, I traveled to the Federal Correctional Institution at Otisville, NY and met with him for several hours, on September 15th and 23rd of this year. During that time, I assessed his mental status, gathered a detailed history, discussed the events leading to his conviction and administered one psychological test, the Minnesota Multiphasic Personality Inventory, Second Edition, Restructured Form (hereafter the MMPI).[3] The report attached here, was computer generated and provides Mr. Stitsky's individual responses as well as presenting his testing profiles. As you appreciate that the test scoring is automated, the results cannot be affected by potential evaluator bias. The test questions are proprietary and cannot be disclosed per the licensing agreement that I have signed with the test's developer, Pearson Education, Inc. However, the questions alone are of little interest by themselves as the essence of the tests are their clinical scales which represent the aggregation of test taker's responses into standardized scales.

**Interview.** Mr. Stitsky presented as a robust gentleman in prison attire, who appeared younger that his actual age of 65. He appeared well groomed and listened attentively to my many questions. During our interview, he was unfailingly cooperative, answering my questions in considerable detail, often with little prompting. As we began discussing his legal situation, he became reflective, discussing how he had transitioned from helping his father with his shoe business to passing his General Securities Representative Qualification Examination (Series 7) and other securities examinations and, at one point, earning over $2 million per year. His descriptions were tinged with embarrassment and amusement as

---

[3] The MMPI, including its newer versions, the MMPI-2 and the MMPI-2-RF, is the oldest comprehensive psychological test designed to assess psychopathology (euphemistically called "personality" by the creators of the test). It has been standardized on, literally, thousands of subjects and provides objective indications of significant psychological disorders. It is designed to measure traits, which are the long-term, relatively stable components of personality more than states, which are the short-term fluctuations in emotional condition that tend to occur with situational stress. The test not only measures personality but includes indices of validity that allow the interpreter to make assessments about the subject's test-taking approach. Those assessments include whether the individual was attempting to minimize or amplify his/her symptoms, whether the individual was answering randomly, and whether the individual was capable of understanding the items. The MMPI-2 included several new scales that not only increase the test's validity, but also better probe the test's core function of categorizing, mostly serious, psychopathology. The newest version, the Restructured Form or RF, introduced in 2008, adds new clinical scales, expands the important validity scales and adds meta-scales that distill certain socially useful clinical issues such as impulsivity or aggressiveness. The Restructured Form (which is substantially shorter and can be completed in about an hour) provides a better, more multidimensional overview of psychopathology than did the previous versions. The RF also has new scales designed to better probe the symptom exaggeration and minimization that sometimes occurs in personal-injury litigation. I used the RF in this evaluation.

**MARK J. MILLS, JD, MD**

Gary Apfel, Esq.
Re: *Irving Stitsky*
October 15, 2019/Amended, June 10, 2020
Page 3 of 5

he described having eight motor vehicles (for his wife and himself), something he now realizes was both grossly excessive and fundamentally unimportant. His affect accurately tracked the material about which we were speaking. Overall, there were some angry tones (at himself and prior counsel) when describing how he had failed to secure an appropriate plea, but there was also intelligence, maturity and forgiveness (for Mr. Shapiro). Despite some difficult topics (this was his second conviction), there was an evident warmth in his demeanor and his style of engagement. During the MMPI administration, he worked efficiently and without complaint.

**History.** You appreciate the events that underlie Mr. Stitsky's conviction, and they are well summarized in the discovery material that you forwarded to me. Additionally, Mr. Stitsky summarizes some of the difficulties experience with prior counsel in is Declaration of December 4, 2017. Recently, Judge Wood (SDNY) has rejected his motion to set aside or modify its sentence. So, Mr. Stitsky continues to face protracted incarceration the remaining time of his 85-year sentence.[4]

**Testing.** As footnote one discusses, the MMPI is primarily a test of psychopathology despite the incorporation of the anodyne term "personality" in its naming. As such, it focuses on the well-appreciated sources of serious psychopathology such as psychosis (particularly schizophrenia), major depression, mania (or Bipolar Disorder in the current psychiatric terminology), antisocial behavior and the other severe personality disorders. Mr. Stitsky's MMPI presents strong evidence that he is without psychopathology. His nine validity scales are within the normal range, so that his test is valid and interpretable. His clinical scales are without any elevation (elevated scales indicate potential psychopathology) with the exception of scale RC6 (page 3 of the attached report) where he is experiencing ideal of persecution.[5] His so-call PSY-5 scales (reported on page 6) reveal that his only character fault is being somewhat aggressive; explicitly however, he is *not* psychotic, disconstrained (impulsive), neurotic or introverted.

---

[4] Mr. Stitsky was sentenced by Judge Kimba Wood, a well-regarded judge from the Southern District of New York. Despite that fact, his sentence was considerably longer than those typically received for financial crimes. While I am not an expert in the Federal Sentencing Guidelines, an 85-year sentence imposed on a (then) 55-year old was tantamount to a life sentence, and as such would appear excessive by almost any standard, particularly for a non-violent offense.

[5] This is an almost universal finding among inmates of reasonable education and intelligence. In fact, through the office of the United States Attorney (SDNY), the government has been prosecuting him, which feels, of course, as persecution.

**MARK J. MILLS, JD, MD**

Gary Apfel, Esq.
Re: *Irving Stitsky*
October 15, 2019/Amended, June 10, 2020
Page 4 of 5

**Discussion.** As you well appreciate, the problem for forensic evaluators is to determine when purported remorse (and/or forgiveness) is genuine, in contrast to when it is simply being elaborated to further some desired benefit without regards to accuracy or truthfulness. In Mr. Stitsky's case there are some guideposts reflecting his truthfulness: first, the co-defendant explicitly related to me that Mr. Stitsky was "not in" on the planning of the frauds and that had he the opportunity for a "do over," he, Mr. Shapiro, would have made that fact known to the prosecutors and to the Court at trial (or before). In fact, Mr. Shapiro expressed remorse for having allowed his friend, Mr. Stitsky, to take the "fall" for behavior that he had neither planned nor initiated.

Second, his psychological testing is also strongly supportive of his being truthful: on all his validity scales he is open, neither exaggerating nor minimizing, and as noted above, he is without psychopathology, although he can be aggressive (a trait common to many successful businessmen).

A review of the letters from family and friends written at the time of his sentencing reveal that Mr. Stitsky was (and he remains) a family man who went out of his way to support his wife's children as well as his own, not just with gifts, but with time and effort. Despite his many vehicles and material acquisition, he never lost sight of his family. Since incarceration, he has become observant (there are multiple rabbis at Otisville, both as visitor and inmates) who have counseled patience, forgiveness and connection to the community.

Having practiced forensic psychiatry for more than thirty years, I appreciate my limitations and thus rarely describe people in other than professional terms. In this matter however, "free of psychopathology" does not due Mr. Stitsky justice: he truly has become that rare individual who has forgiven his codefendants, and who is ready to return to the community at large.

**Conclusions.** Mr. Stitsky is manifestly without psychopathology; he was open in his testing and in his conversations with me; he has become remorseful, forgiving and repentant. Thus, most unusually, he appears genuinely changed.

**Closing Caveats.** Please note that the opinions presented above are offered to a reasonable degree of medical/psychiatric probability/certainty. Should you wish me to review additional material, I would reserve the right to modify or otherwise qualify my conclusions. Of course, if you wish additional information, please let me know.

Sincerely,

MARK J. MILLS, JD, MD

Gary Apfel, Esq.
Re: *Irving Stitsky*
October 15, 2019/Amended, June 10, 2020
Page 5 of 5

*[signature]*

Mark J. Mills, JD, MD